# EXHIBIT A



# IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA
### 136 PRYOR STREET, ROOM C-103, ATLANTA, GEORGIA 30303
## SUMMONS

2019CV330376

| | |
|---|---|
| JAMESON TAYLOR ANDERSON; | ) Case |
| DEAN ANDERSON; and | ) No.:_____ |
| ROGER MALDONADO | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) |
| | ) |
| USI ADVANTAGE CORP. | ) |
| | ) |
| | ) |
| | ) |
| **Defendant** | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**TO THE ABOVE NAMED DEFENDANT(S):**

You are hereby summoned and required to file electronically with the Clerk of said Court at https://efilega.tylerhost.net/ofsweb and serve upon plaintiff's attorney, whose name and address is:

WARREN R. HALL, Jr.

HALL GILLIGAN ROBERTS & SHANLEVER, LLP

3340 PEACHTREE ROAD, SUITE 1900

ATLANTA, GEORGIA 30326

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service; unless proof of service of this complaint is not filed within five (5) business days of such service. Then time to answer shall not commence until such proof of service has been filed. **IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

This _____ day of _____, 20 _____
        12/10/2019

Honorable Cathelene "Tina" Robinson
Clerk of Superior Court
By_____
                        Deputy Clerk

To defendant upon whom this petition is served:
This copy of complaint and summons was served upon you _____, 20_____

_____
                Deputy Sherriff

**Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum is used**



# IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA
### 136 PRYOR STREET, ROOM C-103, ATLANTA, GEORGIA 30303
### SUMMONS

2019CV330376

JAMESON TAYLOR ANNDERSON;    ) Case
DEAN ANDERSON; and    ) No.:_____
ROGER MALDONADO    )
         **Plaintiff,**    )
   )
     **vs.**    )
   )
USI INSURANCE SERVICES, LLC    )
   )
_____    )
        **Defendant**    )
   )
   )
   )
   )

TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file electronically with the Clerk of said Court at
https://efilega.tylerhost.net/ofsweb and serve upon plaintiff's attorney, whose name and address is:
WARREN R. HALL, Jr.
HALL GILLIGAN ROBERST & SHANLEVER, LLP
3340 PEACHTREE ROAD, SUITE 1900
ATLANTA, GEORGIA 30326
An answer to the complaint which is herewith served upon you, within 30 days after service of this
summons upon you, exclusive of the day of service; unless proof of service of this complaint is not filed
within five (5) business days of such service. Then time to answer shall not commence until such proof
of service has been filed. **IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU
FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

12/10/2019
This _____ day of _____, 20 _____

Honorable Cathelene "Tina" Robinson
Clerk of Superior Court
By_____
               Deputy Clerk

To defendant upon whom this petition is served:
This copy of complaint and summons was served upon you    _____, 20_____

_____
               Deputy Sherriff

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum is used

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| JAMESON TAYLOR ANDERSON; DEAN ANDERSON; and ROGER MALDONADO | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 2019CV330376 |
| USI ADVANTAGE CORP. and USI INSURANCE SERVICES, LLC | ) ) ) | |
| Defendants. | ) ) ) | |

## VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

COME NOW Plaintiffs Jameson Taylor Anderson ("Taylor Anderson"); Dean Anderson

("Dean Anderson"); and Roger Maldonado ("Maldonado") (collectively, the "Plaintiffs") by and

through undersigned counsel, and respectfully submit this Verified Complaint for Declaratory

Judgment and Injunctive Relief against Defendants USI Advantage Corp. ("USI Advantage")

and USI Services, LLC (DE) ("USI") (USI Advantage and USI, collectively, the "USI entities"

or "Defendants").

## NATURE OF ACTION

1.

This action arises in the context of a former employment relationship between Plaintiffs

and USI and seeks a declaratory judgment and injunctive relief relating to certain restrictive

covenants contained within Taylor Anderson's "Employment Agreement" ("TA Employment

Agreement"), Taylor Anderson's "Restricted Stock Award Agreement" (the "Stock

Agreement"), Dean Anderson's "Employment Agreement" ("DA Employment Agreement"), and

Maldonado's "Confidentiality, Non-Solicitation & Non-Interference Agreement" ("Maldonado's Confidentiality Agreement").  Plaintiffs now seek declaratory relief that certain restrictive covenants in the agreements are unenforceable as a matter of law and an injunction enjoining Defendants from attempting to enforce the restrictive covenants.  True and accurate copies of the agreements are attached hereto as Exhibits A-D, respectively.

<u>PARTIES, JURISDICTION, VENUE</u>

2.

Taylor Anderson is a resident of Dekalb County, Georgia and was formerly employed by USI in Fulton County, Georgia.

3.

Dean Anderson is a resident of Gwinnett County, Georgia and was formerly employed by USI in Fulton County, Georgia.

4.

Maldonado is a resident of DeKalb County, Georgia and was formerly employed by USI in Fulton County, Georgia.

5.

USI Advantage is a Delaware Corporation.  Pursuant to O.C.G.A. § 9-10-94, it may be served with process by and through its Registered Agent, The Corporation Trust Company, at Corporation Trust Center, 1290 Orange St., Wilmington, Delaware, 19801.

6.

USI Advantage transacts business in the State of Georgia.

7.

USI Advantage is subject to the Court's personal jurisdiction pursuant to O.C.G.A. § 9-10-91(1).

8.

This matter arises from business transacted by USI Advantage in Fulton County.

9.

Venue is proper in Fulton County, as to USI Advantage, pursuant to O.C.G.A. § 9-10-93.

10.

USI is a Delaware Corporation.  Pursuant to O.C.G. A. § 14-2-1510, it may be served with process by and through its Registered Agent, C T Corporation System, at 289 S. Culver St., Lawrenceville, Georgia, 30046.

11.

Upon information and belief, USI is an affiliate or predecessor company of USI Advantage.

12.

USI transacts business in the state of Georgia and the contracts from which this matter arise were made and were to be performed in Fulton County, Georgia.

13.

USI is subject to the Court's personal jurisdiction pursuant to O.C.G.A. § 14-2-1501

14.

Venue is proper in Fulton County, as to USI, pursuant to O.C.G.A. § 14-2-510(b)(2).

15.

This Court has jurisdiction over the subject matter of this case because Plaintiffs seek declaratory relief pursuant to O.C.G.A. § 9-4-2.

GENERAL ALLEGATIONS

Plaintiffs' Employment with USI

16.

USI is an insurance brokerage firm engaged in providing various types of commercial insurance products and services.  USI has an office and transacts business in Fulton County, where Plaintiffs were employed.

17.

USI employs more than 7,000 professionals and operates approximately 200 offices serving every state in the United States.

18.

Plaintiffs began working for USI in or about 2017 when USI acquired their former employer, Wells Fargo Insurance Services, Inc. ("WFIS").

19.

Upon information and belief, USI's acquisition of WFIS resulted in a combined entity that effectively doubled the client base of WFIS.

20.

Throughout their employment at USI, Plaintiffs worked in the USI office located at 3475 Piedmont Rd. NE, Atlanta, Fulton County, Georgia.

Taylor Anderson's Employment with USI

21.

Prior to and during his employment with USI, Taylor Anderson worked as a client executive advising government, defense, aerospace and other commercial entities on how to

identify risks, develop risk management strategies, structure insurance programs, and obtain insurance coverage appropriate to their needs.

22.

Taylor Anderson's insurance business is focused on the aviation sector. Taylor Anderson provides insurance products and services to his clients for their aviation and other insurance needs.

23.

Taylor Anderson's clients include entities which work with agencies of the United States government engaged in secret and sensitive activities related to national security and defense. Certain clients have sponsored Taylor Anderson to obtain security clearance from the government which allows him to provide these insurance services.

24.

Any restrictions prohibiting Taylor Anderson from providing insurance services to these clients, could undermine, delay, or thwart government missions or operations which cannot proceed unless and until insurance coverage has been confirmed.

25.

The process of obtaining the required security clearance to provide these insurance services takes approximately a year, if clearance can be obtained at all. The client, not USI, pays for any expenses in connection with Taylor Anderson's security clearance.

26.

On information and belief, USI is not authorized to provide, and thus cannot provide, the insurance services that Taylor Anderson provides to the clients whose insurance needs require security clearance.

~ 5 ~

27.

On information and belief, no other individual employed by USI possesses security

clearance sufficient to allow USI to provide the insurance services that Taylor Anderson

provides to clients whose insurance needs require such security clearance.  Thus, USI can not

retain and service these clients now that Taylor Anderson is no longer employed with USI.

### Dean Anderson's Employment with USI

28.

Prior to and during his employment with USI, Dean Anderson worked as USI's National

Aviation Practice Leader.

29.

The National Aviation Practice provided aviation insurance for clients in a wide range  of

sectors including Municipal, Government and Private Airports, Ground Service Operations,

Maintenance/Repair/Modification Companies, Products Manufacturers, Department of Defense,

Aerospace Service Firms, Workers Compensation, Defense Base Act Insurance, Unmanned

Aerial Vehicles (UAV's), Corporate Aviation/Aircraft Management Companies, and Regional,

National and International Air Carriers, as well as Individual Aircraft Owners.

30.

As the Practice Leader, Dean Anderson developed great respect for his team members

and valued their contributions to ensuring that all client needs were met.

31.

At the time of his resignation, Dean Anderson led a team of approximately ten Aviation

Insurance/Risk professionals working in the National Aviation Practice.

Maldonado's Employment with USI

32.

Prior to and during his employment with USI, Maldonado worked as a Practice Leader in the National Aviation Practice.

33.

Maldonado was responsible for developing and maintaining new and existing customers relationships on a national level.

TA Employment Agreement

34.

Taylor Anderson was required to execute the TA Employment Agreement as a condition of his employment with WFIS and to remain employed with USI following its purchase of WFIS. The TA Employment Agreement became effective on the date of the closing of the transaction pursuant to which USI purchased WFIS.

35.

The TA Employment Agreement purports to place severe restrictions on Taylor Anderson's post-employment activities.

36.

The TA Employment Agreement contains restrictive covenants in Section 7 titled "Covenants" and Section 8 titled "Termination." Specifically, it contains, in relevant part, the following restrictive covenants: "Non-Solicitation of Clients and Active Prospective Clients" (Section 7.5), "Non-Competition With Respect to Client Accounts and Active Prospective Clients" (Section 7.6), "Non-Interference With Employees" (Section 7.7), and Notice of Termination (8.2).

~ 7 ~

37.

The "Non-Solicitation" covenant states:

> ***Non-Solicitation of Clients and Active Prospective Clients.*** In consideration of Producer's employment hereunder, and for other good and valuable consideration, Producer agrees that:
>
> (a) During the Term and for two (2) years after Producer is no longer employed hereunder, for any reason, Producer shall not, without the Company's prior written consent, directly or indirectly, on behalf of any Competitive Business in any capacity: (i) solicit or attempt to solicit services in competition with the Company to any Client Account; (ii) divert or attempt to divert services away from the Company with respect to any Client Account; (iii) consult for any Client Account with respect to services in competition with the Company; (iv) sign a broker of record letter with any Client Account to provide services in competition with the Company; or (v) induce the termination, cancellation or non-renewal of any Client Account; in each case with respect to any Client Account that Producer managed or regularly serviced and/or about which Producer obtained Confidential Information on behalf of the Company within the last two (2) years of Producer's employment hereunder.
>
> (b) During the Term and for six (6) months after Producer is no longer employed hereunder, for any reason, Producer shall not, without the Company's prior written consent, directly or indirectly, on behalf of any Competitive Business in any capacity: (i) solicit or attempt to solicit services in competition with the Company to any Active Prospective Client; (ii) divert or attempt to divert services away from the Company with respect to any Active Prospective Client; (iii) consult for any Active Prospective Client with respect to services in competition with the Company; or (iv) sign a broker of record letter with any Active Prospective Client to provide services in competition with the Company; in each case with respect to any Active Prospective Client that Producer solicited and/or about which Producer obtained Confidential Information on behalf of the Company within the last six (6) months of Producer's employment hereunder.

38.

The "Non-Competition" covenant states:

> ***Non-Competition With Respect to Client Accounts and Active Prospective Clients.*** In consideration of Producer's employment hereunder, and for other good and valuable consideration, Producer agrees that, during the Term and for two (2) years after Producer is no longer employed hereunder, for any

reason, Producer will refrain from carrying on any business in competition with the Company, directly or indirectly, with respect to any Client Account or Active Prospective Client in the Geographic Area. "Carrying on any business in competition with the Company" shall mean the sale of or providing any product or service that competes, or is reasonably anticipated to compete, in the same markets, with a product or service of the Company as to which Producer had a role in the sale, marketing, distribution, or development in the last two (2) years of Producer's employment hereunder, or about which Producer acquired Confidential Information. For purposes of this Section 7.6, the term "Geographic Area" shall include any territory within a one hundred (100) mile radius of any Company facility in which Producer maintained an office during the last twelve (12) months of Producer's employment hereunder, including any counties in the Geographic Area in which Producer conducted business or where Client Accounts or Active Prospective Clients with whom Producer had material contact in the two (2) years prior to termination of Producer's employment hereunder are present. It is expressly agreed that this Section 7.6 is not intended to restrict or prohibit the ownership by Producer of stock or other securities of a publicly-held corporation in which Producer (a) does not possess beneficial ownership of more than five percent (5%) of the voting capital stock of such corporation and (b) does not participate in any management or advisory capacity.

39.

The "Non-Interference With Employees" restrictive covenant states:

*Non-Interference With Employees.* In consideration of Producer's employment with the Company, and for other good and valuable consideration, Producer agrees, during the Term and for two (2) years after Producer is no longer employed hereunder, for any reason, Producer shall not, directly or indirectly, on behalf of any Competitive Business in any capacity: (a) solicit the employment, consulting or other services of, or hire, any other employee of the Company; or (b) otherwise induce any such employee to leave the Company's employment or breach an employment agreement herewith; in each case with respect to any employee of the Company with whom Producer worked or obtained knowledge about as a result of Producer's employment with the Company.

40.

The Notice of Termination restrictive covenant states:

> **Termination by Producer.** Producer may terminate Producer's employment
> hereunder by giving at least sixty (60) days written notice to the Company. The
> termination of employment shall be effective on the date specified in such notice;
> provided, however, at any time following receipt of such notice, the Company may:
> (a) accept Producer's termination of employment hereunder effective on such earlier
> date specified by the Company; and/or (b) require Producer to cease performing any
> services hereunder until the termination of employment.

The Stock Agreement

41.

Taylor Anderson and USI Advantage also entered into the Stock Agreement effective on

May 8, 2019.  The Stock Agreement conditionally granted certain restricted stock to Taylor

Anderson and was drafted by USI Advantage.

42.

Under the terms of the Stock Agreement, the equity grant would not "vest," defined as

becoming nonforfeitable in case of termination, unless and until Taylor Anderson remained

continually employed by USI, or a related entity, through May 19, 2023.

43.

Taylor Anderson's stock grants under the Stock Agreement did not vest prior to his

separation from employment with USI.

44.

The Stock Agreement purports to place several restrictions on Taylor Anderson's post-

employment activities.

45.

Specifically, Paragraph 11 of the Stock Agreement incorporates an Appendix A which

contains, in relevant part, the following two restrictive covenants: "Non-Solicitation" and "No

Hiring."

46.

The "Non-Solicitation" covenant states:

> **Non-Solicitation.** Except in the normal course of business on behalf of the
> Company or any of its Affiliates, the Participant will not, directly or
> indirectly, (x) solicit, sell, provide or accept any request to provide, or induce
> the termination, cancellation or non-renewal of, any USI Business from or by
> any person, corporation, firm or other entity whose account constituted a
> Client Account of a USI Company, at any time within the 24 months
> preceding the earlier of the date of such act or the date of termination of the
> Participant's employment with the Company and its subsidiaries, or (y) solicit,
> offer, negotiate or otherwise seek to acquire any interest in any Active
> Prospective Acquisition of a USI Company, determined as of the earlier of the
> date of such act or the effective date of termination of the Participant's
> employment with the Company and its subsidiaries. The restrictions contained
> in this Paragraph (a) shall apply throughout the Participant's employment with
> the Company and its subsidiaries and thereafter until two (2) years after the
> effective date on which the Participant's employment with the Company and
> its subsidiaries, or their respective successors in interest, terminates.

47.

The "No Hiring" covenant states:

> **No Hiring.** The Participant will not, directly or indirectly, solicit the employment or
> other services of any employee or independent producer of any USI Company or
> otherwise induce any of such employees to leave any USI Company's employment or
> to breach an employment or independent producer agreement therewith. The
> restrictions contained in this Paragraph ( c) shall apply during the Participant's
> employment with the Company and its subsidiaries and thereafter until two (2) years
> following the date on which the Participant's employment with the Company and its
> subsidiaries, or their respective successors in interest, terminates.

48.

In the Stock Agreement, "USI Company" is defined to include USI Advantage and all of its subsidiaries, affiliates, associates, successors, and assigns.

DA Employment Agreement

49.

Dean Anderson was required to execute the DA Employment Agreement as a condition of his employment with WFIS and to remain employed with USI following its purchase of WFIS. DA Employment Agreement became effective on the date of the closing of the transaction pursuant to which USI purchased WFIS.

50.

The DA Employment Agreement purports to place severe restrictions on Dean Anderson's post-employment activities.

51.

The DA Employment Agreement contains restrictive covenants in Section 7 titled "Covenants" and Section 8 titled "Termination." Specifically, it contains, in relevant part, the following restrictive covenants: "Non-Competition" (Section 7.5); "Non-Competition of Client Accounts" (Section 7.6), "Non-Solicitation of Clients and Active Prospective Clients" (Section 7.7), "Non-Interference With Employees" (Section 7.7), and Notice of Termination (8.2).

52.

The "Non-Competition" covenant states:

> ***Non-Competition.*** In consideration of Executive's employment hereunder, and for other good and valuable consideration, Executive agrees, during the Term and for six (6) months after Executive is no longer employed hereunder, for any reason, Executive shall not, directly or indirectly, compete with the Company within the Restricted Geographic Area by: (a) acting in Executive's same or similar capacity, which Executive acted for the Company, on behalf of any Competitive Business; (b)

performing Executive's same or similar functions, which Executive performed for the Company, on behalf of any Competitive Business; or (c) otherwise taking, facilitating or encouraging any action to evade or attempt to evade the intent of this Section. **"Restricted Geographic Area"** means each of the following separate and divisible geographic areas: (a) the state in which Executive maintained his/her principal office for the Company during the last twelve (12) months of Executive's employment hereunder; (b) a one hundred (100) mile radius from any Company facility in which Executive maintained an office during the last twelve (12) months of Executive's employment hereunder; (c) any territory to which Executive has been assigned during the last twelve (12) months of Executive's employment hereunder; and (d) any area in the United States where the Company has conducted USI Business during the last twelve (12) months of Executive's employment hereunder. Notwithstanding the foregoing, in the event that (i) Executive terminates Executive's employment hereunder pursuant to Section 8.2 (Termination by Executive) within twelve (12) months following the Effective Date (a **"Voluntary Termination Event"**) and (ii) the Company does not, within fifteen (15) business days of the Company's receipt of Executive's notice of termination (the **"Election Period"**), notify Executive of the Company's election to enforce this Section 7.5 (Non-Competition), then, following the later of (1) the effective date of such Voluntary Termination Event or (2) the end of the Election Period, this Section 7.5 (Non-Competition) shall be void and of no further force or effect. For the avoidance of doubt, any such election shall be made at the Company's sole discretion and in the event the Company elects, within the Election Period, to enforce this Section 7.5 (Non-Competition) (such election, the **"Non-Compete Election"**), then this Section 7.5 (Non-Competition) shall remain fully enforceable against Executive and Executive shall be entitled to the payments set forth in Section 8.3(e). Also, for the avoidance of doubt, the covenants set forth in this Section 7.5 shall remain in force for any termination hereunder, except as expressly stated in this Section 7.5.

53.

The "Non-Competition of Client Accounts" covenant states:

**Non-Competition of Client Accounts.** During the Term and for (2) years after Executive is no longer employed hereunder, for any reason, Executive shall refrain from carrying on any business in competition with the Company, directly or indirectly, with respect to any Client Account or Active Prospective Client in the Restricted Geographic Area. **"Carrying on any business in competition with the Company"** shall mean the sale of or providing any product or service that competes, or is reasonably anticipated to compete, in the same markets, with a product or service of the Company as to which Executive had a role in the sale, marketing, distribution, or development in the last two (2) years of Executive's employment with the Company or about which Executive acquired Confidential Information. It is expressly agreed that this Section 7.6 is not intended to restrict or prohibit the ownership by Executive of stock or other securities of a publicly-held corporation in which Executive (a) does not possess beneficial ownership of more than five percent

~ 13 ~

(5%) of the voting capital stock of such corporation and (b) does not participate in any management or advisory capacity.

54.

The "Non-Solicitation of Clients and Active Prospective Clients" restrictive covenant

states:

**Non-Solicitation of Clients and Active Prospective Clients.** In consideration of Executive's employment hereunder, and for other good and valuable consideration, Executive agrees that:

(a) During the Term and for two (2) years after Executive is no longer employed hereunder, for any reason, Executive shall not, without the Company's prior written consent, directly or indirectly, on behalf of any Competitive Business in any capacity: (i) solicit or attempt to solicit services in competition with the Company to any Client Account; (ii) divert or attempt to divert services away from the Company with respect to any Client Account; (iii) consult for any Client Account with respect to services in competition with the Company; (iv) sign a broker of record letter with any Client Account to provide services in competition with the Company; or (v) induce the termination, cancellation or non-renewal of any Client Account; in each case with respect to any Client Account that Executive managed or regularly serviced and/or about which Executive obtained Confidential Information on behalf of the Company within the last two (2) years of Executive's employment hereunder.

(b) During the Term and for six (6) months after Executive is no longer employed hereunder, for any reason, Executive shall not, without the Company's prior written consent, directly or indirectly, on behalf of any Competitive Business in any capacity: (i) solicit or attempt to solicit services in competition with the Company to any Active Prospective Client; (ii) divert or attempt to divert services away from the Company with respect to any Active Prospective Client; (iii) consult for any Active Prospective Client with respect to services in competition with the Company; or (iv) sign a broker of record letter with any Active Prospective Client to provide services in competition with the Company; in each case with respect to any Active Prospective Client that Executive solicited and/or about which Executive obtained Confidential information on behalf of the Company within the last six (6) months of Executive's employment hereunder.

55.

The "Non-Interference with Employees" restrictive covenant states:

> ***Non-Interference With Employees.*** In consideration of Executive's employment with the Company, and for other good and valuable consideration, Executive agrees, during the Term and for two (2) years after Executive is no longer employed hereunder, for any reason, Executive shall not, directly or indirectly, on behalf of any Competitive Business in any capacity: (a) solicit the employment, consulting or other services of, or hire, any other employee of the Company; or (b) otherwise induce any such employee to leave the Company's employment or breach an employment agreement therewith; in each case with respect to any employee of the Company with whom Executive worked or obtained knowledge about as a result of Executive's employment with the Company.

56.

The Notice of Termination restrictive covenant states:

> ***Termination by Executive.*** Executive may terminate Executive's employment hereunder by giving at least sixty (60) days written notice to the Company. The termination of employment shall be effective on the date specified in such notice; provided, however, at any time following receipt of such notice, the Company may: (a) accept Executive's termination of employment hereunder effective on such earlier date specified by the Company; and/or (b) require Executive to cease performing any services hereunder until the termination of employment.

### Maldonado's Confidentiality Agreement

57.

Maldonado was required to execute Maldonado's Confidentiality Agreement as a condition of his employment with WFIS and to remain employed with USI following its purchase of WFIS. Maldonado's Confidentiality Agreement became effective on the date of the closing of the transaction pursuant to which USI purchased WFIS.

58.

Maldonado's Confidentiality Agreement purports to place severe restrictions on Maldonado's post-employment activities.

59.

Maldonado's Confidentiality Agreement contains restrictive covenants in Section 4 titled

"Covenants." Specifically, it contains, in relevant part, the following restrictive covenants:

"Non-Solicitation of Clients and Active Prospective Clients" (Section 4.5), "Non-Competition

with Respect to Client Accounts and Active Prospective Clients" (Section 4.6), and Non-

Interference with Employees (Section 4.7).

60.

The "Non-Solicitation of Clients and Active Prospective Clients" covenant states:

**_Non-Solicitation of Clients and Active Prospective Clients._** In consideration of
Employee's employment with the Company, and for other good and valuable
consideration, Employee agrees that:

(a) During Employee's employment with the Company and for two (2) years after
Employee is no longer employed with the Company, for any reason, Employee
shall not, without the Company's prior written consent, directly or indirectly, on
behalf of any Competitive Business in any capacity: (i) solicit or attempt to solicit
services in competition with the Company to any Client Account; (ii) divert or
attempt to divert services away from the Company with respect to any Client
Account; (iii) consult for any Client Account with respect to services in
competition with the Company; (iv) sign a broker of record letter with any Client
Account to provide services in competition with the Company; or (v) induce the
termination, cancellation or non-renewal of any Client Account; in each case with
respect to any Client Account that Employee managed or regularly serviced
and/or about which Employee obtained Confidential Information on behalf of the
Company within the last two (2) years of Employee's employment with the
Company.

(b) During Employee's employment with the Company and for six (6) months after
Employee is no longer employed with the Company, for any reason, Employee
shall not, without the Company's prior written consent, directly or indirectly, on
behalf of any Competitive Business in any capacity: (i) solicit or attempt to solicit
services in competition with the Company to any Active Prospective Client; (ii)
divert or attempt to divert services away from the Company with respect to any
Active Prospective Client; (iii) consult for any Active Prospective Client with
respect to services in competition with the Company; or (iv) sign a broker of
record letter with any Active Prospective Client to provide services in competition
with the Company; in each case with respect to any Active Prospective Client that
Employee solicited and/or about which Employee obtained Confidential

~ 16 ~

Information on behalf of the Company within the last six (6) months of Employee's employment with the Company.

61.

The "Non-Competition With Respect to Client Accounts and Active Prospective Clients"

covenant states:

*Non-Competition With Respect to Client Accounts and Active Prospective Clients.* In consideration of Employee's employment hereunder, and for other good and valuable consideration, Employee agrees that, during Employee's employment with the Company and for two (2) years after Employee is no longer employed with the Company, for any reason, Employee will refrain from carrying on any business in competition with the Company, directly or indirectly, with respect to any Client Account or Active Prospective Client in the Geographic Area. **"Carrying on any business in competition with the Company"** shall mean the sale of or providing any product or service that competes, or is reasonably anticipated to compete, in the same markets, with a product or service of the Company as to which Employee had a role in the sale, marketing, distribution, or development in the last two (2) years of Employee's employment with the Company, or about which Employee acquired Confidential Information. For purposes of this Section 4.6, the term **"Geographic Area"** shall include any territory within a one hundred (100) mile radius of any Company facility in which Employee maintained an office during the last twelve (12) months of Employee's employment hereunder, including any counties in the Geographic Area in which Employee conducted business or where Client Accounts or Active Prospective Clients with whom Employee had material contact in the two (2) years prior to termination of Employee's employment with the Company are present. It is expressly agreed that this Section 4.6 is not intended to restrict or prohibit the ownership by Employee of stock or other securities of a publicly-held corporation in which Employee (a) does not possess beneficial ownership of more than five percent (5%} of the voting capital stock of such corporation and (bl does not participate in any management or advisory capacity.

62.

The "Non-Interference with Employees" restrictive covenant states:

*Non-Interference With Employees.* In consideration of Employee's employment with the Company, and for other good and valuable consideration, Employee agrees, during Employee's employment with the Company and for two (2) years after Employee is no longer employed with the Company, for any reason, Employee shall not, directly or indirectly, on behalf of any Competitive Business in any capacity: (a) solicit the employment, consulting or other services of, or hire, any other employee of the Company; or (b) otherwise induce any such employee to leave the Company's employment or breach an employment agreement therewith; in each case with respect

~ 17 ~

to any employee of the Company with whom Employee worked or obtained knowledge about as a result of Employee's employment with the Company.

<u>Plaintiffs' Separation from Employment with USI</u>.

63.

During Plaintiffs' Employment, USI maintained a national aviation insurance group. Dean Anderson and Maldonado were leaders in the group and Taylor Anderson worked closely with the group to provide specialized aviation services to clients across the country.

64.

During the summer and fall of 2019, USI indicated that it would be significantly reducing and altering the National Aviation Practice's size and nature, leaving it largely dismantled. Under the proposed changes, clients' aviation insurance needs would largely be handled locally by individual USI offices around the country instead of as currently by the national aviation insurance group.

65.

Additionally, USI intended to make significant staff reductions in the national aviation insurance group, eliminating long-term and valued employees.

66.

As a result of USI's communication of its decision to dismantle or diminish the National Aviation Practice, Plaintiffs believed that clients' aviation insurance needs would no longer be adequately serviced.

67.

Dean Anderson also felt it was unfair to terminate employees who had contributed significant value to aviation clients for many years.

68.

In the days prior to Plaintiffs' resignations and in response to several departures by personnel in the national aviation insurance group to other brokers, USI suddenly indicated to Dean Anderson that it might not dismantle the National Aviation Practice.  USI indicated, instead, that it might just reorganize the practice in some ways without significant layoffs of employees.  USI's lack of a coherent and definite plan for the National Aviation Practice continued to undermine the Plaintiffs' confidence and trust in USI.  One day the plan was to eliminate the national group; another day the plan was just diminishing the size of the group; then yet another day, once personnel were departing due to the plans to diminish the group, the plan suddenly shifted to retain the group in a reorganization, but without any details of when, how, or what kind of reorganization it would be.

69.

Due to these issues, Plaintiffs resigned their employment with USI on December 9, 2019.

70.

Plaintiffs subsequently became affiliated with the Southeast Series of Lockton Companies, LLC.

71.

Now that Plaintiffs have resigned their employment with USI, they are fearful and uncertain that USI and/or USI Advantage may attempt to enforce or pursue legal claims related to one or more of the unlawful restrictive covenants contained in the agreements detailed above.

72.

Enforcement of these illegal covenants would impose unlawful restrictions on Plaintiffs'

ability to engage in commerce, trade, enjoy the fruits of their labors, and to earn a livelihood and

provide for their family's well-being.

73.

Plaintiffs are fearful and uncertain regarding their legal rights to solicit business

opportunities and to accept business opportunities with regard to current and former clients of the

USI entities and their related companies.

74.

Plaintiffs are also fearful and uncertain regarding their ability to assist or participate in

the hiring of USI entity employees who may desire to separate from USI and obtain new

employment with another company.

Unenforceable Customer Non-Solicitation Covenant (TA Employment Agreement)

75.

The Customer Non-Solicitation covenant in the TA Employment Agreement is

unenforceable because at Section 7.5(a)(iii), (iv), and (v) it purports to prohibit the mere

acceptance of unsolicited business.  Such a covenant is invalid and unenforceable as a matter of

law.  *See Singer v. Habif, Arogeti & Wynne, P.C.*, 250 Ga. 376, 377, 297 S.E.2d 473, 475

(1982); *Fine v. Commc'ns Trends, Inc.*, 305 Ga. App. 298, 306-07, 699 S.E.2d 623, 632 (2010)

(holding non-solicitation provision unenforceable because it prevented former employee "from

merely accepting business without solicitation").

76.

The Customer Non-Solicitation covenant in the TA Employment Agreement also

prohibits servicing or accepting unsolicited business from prospective clients of any USI entity.

(TA Employment Agreement, Section 7.5(b)(iii), (iv).)  Such a covenant is illegal and invalid as

a matter of law.  Covenants which go beyond prohibitions against active solicitation of clients

and prohibit mere acceptance of business are unenforceable.  *See Singer v. Habif, Arogeti &*

*Wynne, P.C.*, 250 Ga. 376, 377, 297 S.E.2d 473, 475 (1982); *Fine v. Commc'ns Trends, Inc.*, 305

Ga. App. 298, 306-07, 699 S.E.2d 623, 632 (2010) (holding non-solicitation provision

unenforceable because it prevented former employee "from merely accepting business without

solicitation").

77.

The Customer Non-Solicitation covenant is also unenforceable because it is too vague

and ambiguous.  First, Client Account and Active Prospective Client are both defined with

reference to the "Company" (WFIS) and not USI.  Similarly, the provision prohibits actions

adverse to the "Company" (WFIS) and not USI.  As a result, Taylor Anderson is uncertain if the

prohibitions apply only to clients he had contact with as a WFIS employee or only to clients he

had contact with as an USI employee or both.  Non-Solicitation covenants which are too vague,

ambiguous, or indefinite are invalid.  See *Jack Boutwell, C.P.A., P.C. v. Stone-Benton*, 2013 Ga.

Super. LEXIS 441, at *8 (finding non-solicit unenforceable because it was "overbroad, vague,

and ambiguous"); *World Micro Components, Inc. v. Crestwood Tech. Grp. Corp.*, 2014 Ga.

Super. LEXIS 2520, at *26 (invalidating non-solicitation covenant because its terms were " ill-

defined, ambiguous and wide-ranging"); *Matthew Focht Enters. v. Lepore*, No. 1:12-cv-04479-

WSD, 2013 U.S. Dist. LEXIS 127894, at *15 (N.D. Ga. Sep. 9, 2013) (same).

<u>Unenforceable Non-Compete Covenant (TA Employment Agreement)</u>

78.

The Non-Compete covenant at Section 7.6 of the TA Employment Agreement purports to prohibit Taylor Anderson from providing insurance services to any client or prospective client of any WFIS if the client or prospect is located within 100 miles of Taylor Anderson's former office at WFIS. The 100-mile radius is not a geographical term defining where the prohibition applies but is a description of clients or prospects to which the restriction applies. Thus, The Non-Compete covenant is unenforceable because it lacks any territorial restriction in violation of O.C.G.A. § 13-8-53. *See also CCmulti, LLC v. Carle*, 2017 Ga. Super. LEXIS 588, *8 (finding a non-compete clause that lacked any geographical area but instead prohibited a subset of customers unenforceable). The

79.

The Non-Compete covenant at Section 7.6 of the TA Employment Agreement also is invalid and unenforceable because it purports to apply to all clients and prospects in a territory, regardless of whether Taylor Anderson ever had any contact with the client or prospect. The covenant is thus unreasonable and unenforceable because there is no way for Taylor Anderson to know whether or not he would be in violation of the covenant since it applies to clients and prospects with whom he never had contact and thus would not know if they are WFIS or USI clients or prospects. Without a limitation on the scope of the covenant that requires that Taylor Anderson have material contact with the client or prospect, the covenant is unenforceable.

80.

The Non-Compete covenant at Section 7.6 of the TA Employment Agreement also is invalid and unenforceable because the territory used to define the prohibited clients and

~ 22 ~

prospects purports to include entire counties, and thus all clients and prospects within the entire

county are off limits, if Taylor Anderson had even one client in that county. The covenant is

unreasonable to prohibit Taylor Anderson from doing any work with clients and prospects if they

happen to reside in a county in which Taylor Anderson had contact with another client or

prospect. Again, without a limitation of the scope of the covenant that requires that Taylor

Anderson have material contact with the client or prospect, the covenant is unenforceable.

81.

The Non-Compete covenant is also unenforceable because it is too vague and ambiguous.

Client Account and Active Prospective Client are both defined with reference to the "Company"

(WFIS) and not USI. Similarly, the provision prohibits actions adverse to the "Company"

(WFIS) and not USI. As a result, Taylor Anderson is uncertain if the prohibitions apply only to

clients he had contact with as a WFIS employee or only to clients he had contact with as an USI

employee or both. Non-Solicitation covenants which are too vague, ambiguous, or indefinite are

invalid. See *Jack Boutwell, C.P.A., P.C. v. Stone-Benton*, 2013 Ga. Super. LEXIS 441, at *8

(finding non-solicit unenforceable because it was "overbroad, vague, and ambiguous"); *World

Micro Components, Inc. v. Crestwood Tech. Grp. Corp.*, 2014 Ga. Super. LEXIS 2520, at *26

(invalidating non-solicitation covenant because its terms were " ill-defined, ambiguous and wide-

ranging"); *Matthew Focht Enters. v. Lepore*, No. 1:12-cv-04479-WSD, 2013 U.S. Dist. LEXIS

127894, at *15 (N.D. Ga. Sep. 9, 2013) (same).

Unenforceable Employee Interference Covenant (TA Employment Agreement)

82.

The Employee Interference covenant at Section 7.7 purports to prohibit Taylor Anderson

from hiring any employee of WFIS. Such a covenant is illegal and unenforceable because it

~ 23 ~

prohibits Taylor Anderson from merely hiring any WFIS employee. *Cox v. Altus Healthcare &*

*Hospice, Inc.,* 308 Ga. App. 28, 32 706 S.E.2d 660 (2011), *Wetherington v. Ameripath, Inc.*, 566

Fed. App'x. 850 (11th Cir. 2014) (affirming district court's decision finding "blanket

prohibition" against hiring former employer's employees is an "unreasonable restraint on

competition under Georgia law.").

<u>Unenforceable Notice of Termination (TA Employment Agreement)</u>

83.

The Notice of Termination provision in TA Employment Agreement purports to require

Taylor Anderson to provide notice 60 days prior to his resignation and allows USI to prevent

Taylor Anderson from performing any work for any other company during the notice period.

This covenant is illegal and unenforceable as a matter of law on multiple grounds.

84.

First, Georgia law is clear that an employer cannot obtain injunctive relief to enforce a

Notice of Termination provision. *Capricorn Sys. v. Pednekar*, 248 Ga. App. 424, 425, 546

S.E.2d 554, 557 (2001) (holding that notice termination provisions were **only** enforceable

through "special damages [and]... nominal damages.")

85.

Second, the Notice of Termination provision is a non-competition covenant with no

territorial restriction as it prohibits Taylor Anderson from working for any other company

anywhere for 60-days following his termination. Thus, the is an unenforceable world-wide non-

competition covenant in violation of O.C.G.A. § 13-8-53. *See also  CCmulti, LLC v. Carle*, 2017

Ga. Super. LEXIS 588, at *8 (finding a non-compete clause that lacked any geographical area

unenforceable).

~ 24 ~

86.

The extent to which the covenants in the TA Employment Agreement are in violation of

Georgia's Restrictive Covenant Act (the "RCA") make it impossible to modify the covenants

into compliance with Georgia law without this Court "supplying new and material terms from

whole cloth." *Lifebrite Labs., LLC v. Cooksey*, No. 1:15-CV-4309-TWT, 2016 U.S. Dist. LEXIS

181823, at *19 (N.D. Ga. Dec. 9, 2016). Therefore, the Court should exercise its discretion

pursuant to O.C.G.A. § 13-8-54(b) and refuse to modify the covenants. *Id*. As such, the

covenants must be held unenforceable in their entirety.

<u>Unenforceable New York Forum Selection and Choice of Law (Stock Agreement)</u>

87.

Taylor Anderson received no benefit under the Stock Agreement other than eligibility for

certain equity in the event he remained employed at USI until 2023. Because Taylor Anderson's

employment with USI was at will (TA Employment Agreement, § 2.1, § 8.1), he received no

actual benefit from the Stock Agreement as of the date of his resignation.

88.

At Section 9 of the Stock Agreement is a clause that requires disputes regarding the

restrictive covenants to be resolved in New York courts and under New York law. These

requirements are invalid and unenforceable under Georgia law. See *Barnes Group, Inc. v.*

*Harper*, 653 F.2d 175,178 (5th Cir. 1981) (applying Georgia law over Ohio law); *Becham v.*

*Synthes (U.S.A.)*, No. 5:11-CV-73 (MTT), 2011 U.S. Dist. LEXIS 103841, at *2 (M.D. Ga. Sep.

14, 2011) (applying Georgia law over Pennsylvania law) *aff'd,* 482 F. App'x. 387; *Boone v.*

*Corestaff Support Services, Inc.*, 2011 WL 3418382, at *3-4 (applying Georgia law over Texas

law); *Nasco*, 239 Ga. at 676 (applying Georgia law over Tennessee law); *Enron Capital & Trade*

~ 25 ~

*Resources Corp. v. Pokalsky*, 227 Ga. App. 727, 729 (1997) (applying Georgia law over Texas law); and *Davis v. Oasis Legal Fin. Operating Co., LLC*, 936 F.3d 1174 (11th Cir. 2019) (invalidating forum selection clause used by out-of-state lenders to avoid litigation in Georgia courts as contravening Georgia public policy).  As such, this Court should apply Georgia law and should decide this case, including whether the covenants in the Stock Agreement are enforceable.

<u>Unenforceable Non-Solicitation Covenant (Stock Agreement)</u>

89.

The Non-Solicitation covenant in the Stock Agreement purports to prohibit Taylor Anderson from soliciting or accepting business from clients of any "USI Company."  This covenant is illegal and invalid as a matter of law on multiple grounds.

90.

First, the covenant is unlawful because it applies to all clients of any USI Company.  The term USI Company is defined in the Stock Agreement to include USI Advantage, and all of its subsidiaries, affiliates, associates, successors, and assigns.  Taylor Anderson has never been employed with a USI Company other than USI.  As such, the covenant applies to all clients of entities for which Taylor Anderson never worked and with which he has never been employed.

91.

Thus, as written, the covenant purports to prohibit Taylor Anderson from soliciting clients with whom he never had any contact, much less material contact as required by law. Without a limitation on the scope of the covenant that requires that Taylor Anderson have material contact with a client, the covenant is unenforceable.  O.C.G.A. § 13-8-53(b) (limiting customers covered by a non-solicitation agreement to those "whom the employee had material

contact during his or her employment.") *See also W. R. Grace & Co., Dearborn Div. v. Mouyal*,

262 Ga. 464, 467-68, 422 S.E.2d 529, 533 (1992) (customer non-solicitation provision must

contain geographic restriction or be limited to those customers with whom employee had

contact); *Carson v. Obor Holding Co., LLC*, 318 Ga. App. 645, 650, 734 S.E.2d 477, 482 (2012)

("Georgia law is clear that unless the non-solicit covenant pertains only to those clients with

whom the employee had a business relationship during the term of the agreement, the nonsolicit

covenant must contain a territorial restriction").

92.

Second, the covenant is unenforceable as a result of its overbroad scope which would not

allow Taylor Anderson to accept any request from an USI Company customer to provide them

with insurance services. *Singer v. Habif, Arogeti & Wynne, P.C.*, 250 Ga. 376, 377, 297 S.E.2d

473, 475 (1982) (holding non-solicitation provision unenforceable because by prohibiting

acceptance, it "prohibit[ed] more than the active solicitation or diversion of clients"); *Fine v.*

*Commc'ns Trends, Inc.*, 305 Ga. App. 298, 306-07, 699 S.E.2d 623, 632 (2010) (holding non-

solicitation provision unenforceable because it prevented former employee "from merely

accepting business without solicitation").

93.

Third, the covenant is invalid because its scope is not reasonable. Taylor Anderson

would have no way to know which entities might, or might not, be covered by the scope of the

covenant. Because the covenant applies to all clients of any USI Company, it purports to bar

Taylor Anderson from soliciting entities despite the fact that he would have no way to know

which entities are/were clients of a USI Company for whom Taylor Anderson has never been

employed.  The restrictions imposed by the covenant are unreasonable and thus not in

compliance with O.C.G.A. § 13-8-53, and thus cannot be enforced under Georgia law.

94.

Fourth, the covenant in the Stock Agreement is invalid and unenforceable on the grounds

that it prohibits solicitation of a "Client Account" of a USI Company and the term "Client

Account" is overly broad in that it applies to any entity that was a client at unspecified point in

time, even if such entity is no longer a client of a USI Company.  *See Gill v. Poe & Brown of*

*Ga.*, 241 Ga. App. 580, 583, (1999) (finding non-solicit covenant which applied to clients who

had previously "severed their relationship" with the employer unreasonable); *Smith Adcock &*

*Co. v. Rosenbohm*, 238 Ga. App. 281, 284-285 (518 S.E.2d 708) (1999) (finding similar

covenant, applying to all "former company clients," was "an unreasonable partial restraint of

trade").

Unenforceable No Hiring Covenant (Stock Agreement)

95.

The No Hiring covenant is unenforceable because it is neither limited to a geographic

territory nor limited to only co-workers with whom Taylor Anderson previously had a

relationship.  *Capricorn Sys., Inc. v. Pednekar*, 248 Ga. App. 424, 427 (2001) ("[S]uch

restrictive covenant had no definite geographic area limitations as to competition, solicitation of

clients, or recruiting of employees, which also renders the covenant unenforceable for being

overbroad."); *Becham v. Synthes USA*, 482 F. App'x 387, 393 (11th Cir. 2012) ("[T]he non

solicitation-of-employees covenant fails because it lacks any territorial limitation."); *Hulcher*

*Servs. v. R.J. Corman R.R. Co. L.L.C.*, 247 Ga. App. 486, 492, 543 S.E.2d 461, 467 (2000)

(finding covenant not to solicit customers or employees unreasonable when former employee

~ 28 ~

"had no contact with customers or employees outside his work area sufficient to establish a relationship"); *MacGinnitie v. Hobbs Grp., LLC*, 420 F.3d 1234, 1242 (11ᵗʰ Cir. 2005) ("[T]he employee non-solicitation provision, which sets no geographical or relationship restriction, but rather prohibits . . . soliciting any . . . employee, regardless of place or prior relationship . . .. The Georgia courts have refused to enforce such provisions."); *Wetherington v. Ameripath, Inc.*, 566 F. App'x 850, 852 (11ᵗʰ Cir. 2014) (covenant impermissibly barred former employee from hiring even such former employees with whom he had no relationship during his employment with the former employer); *ALW Mktg. Corp. v. Drunasky*, 1991 U.S. Dist. LEXIS 20326, at *18 (N.D. Ga. Dec. 30, 1991) (non-recruitment covenant in Georgia must contain a territorial restriction to be enforceable and is overbroad because it "covers not only general agents of the employer but also covers the administrative staff, which presumably includes even clerical and janitorial employees").

96.

The extent to which the covenants in the Stock Agreement violate the RCA make it impossible to modify the covenants into compliance with Georgia law without this Court "supplying new and material terms from whole cloth." *Lifebrite Labs., LLC v. Cooksey*, No. 1:15-CV-4309-TWT, 2016 U.S. Dist. LEXIS 181823, at *19 (N.D. Ga. Dec. 9, 2016). Therefore, the Court should exercise its discretion pursuant to O.C.G.A. § 13-8-54(b) and refuse to modify the covenants. *Id.* As such, the covenants must be held unenforceable in their entirety.

Unenforceable Non-Competition Covenants (DA Employment Agreement)

97.

The Non-Competition covenants in the DA Employment Agreement are unenforceable

because Sections 7.5 and 7.6 purport to prohibit Dean Anderson from working anywhere "in the

United States where the Company has conducted USI Business during the last twelve (12)

months of the Executive's employment hereunder" (Section 7.5(d)).  Dean Anderson never

worked in an office at USI other than the Atlanta office, consequently this nationwide

prohibition does not protect any legitimate business interest and is not properly limited to the

geographic areas actually involved in his work.  Further, the purported nationwide territory is

overly broad and unreasonable.  Thus, these covenants are in violation of O.C.G.A. § 13-8-53(c).

*See also Wiley v. Royal Cup, Inc.*, 258 Ga. 357, 370 S.E.2d 744 (1988) (finding a non-compete

covenant which applied in the geographic areas in which the employee never worked for or

represented the employer unreasonable).

98.

Dean Anderson was never assigned a territory by USI during his employment, much less

during the last 12 months of his employment as referenced at Section 7.5(c) of the DA

Employment Agreement.

99.

The Non-Compete covenants at Sections 7.5 and 7.6 of the DA Employment Agreement

also are invalid and unenforceable because they purport to apply to all clients and prospects in a

territory, regardless of whether Dean Anderson ever had any contact with the client or prospect.

The covenants are thus unreasonable and unenforceable because there is no way for Dean

Anderson to know whether or not he would be in violation of the covenants since it applied to

clients/prospects with whom he never had contact and thus would not know if they are WFIS or USI clients.

100.

The Non-Compete covenants are also unenforceable because they are too vague and ambiguous. Client Account and Active Prospective Client are both defined with reference to the "Company" (WFIS) and not USI. Similarly, the provision prohibits actions adverse to the "Company" (WFIS) and not USI. As a result, Dean Anderson is uncertain if the prohibitions apply only to clients he had contact with as a WFIS employee or only to clients he had contact with as an USI employee or both. Covenants which are too vague, ambiguous, or indefinite are invalid. See *Jack Boutwell, C.P.A., P.C. v. Stone-Benton*, 2013 Ga. Super. LEXIS 441, at *8 (finding non-solicit unenforceable because it was "overbroad, vague, and ambiguous"); *World Micro Components, Inc. v. Crestwood Tech. Grp. Corp.*, 2014 Ga. Super. LEXIS 2520, at *26 (invalidating non-solicitation covenant because its terms were "ill-defined, ambiguous and wide-ranging"); *Matthew Focht Enters. v. Lepore*, No. 1:12-cv-04479-WSD, 2013 U.S. Dist. LEXIS 127894, at *15 (N.D. Ga. Sep. 9, 2013) (same).

101.

The Non-Compete covenant at Section 7.5 of the DA Employment Agreement is invalid and unreasonable on the grounds that is not a reasonable restriction on Dean Anderson's employment in light of the fact that he was never assigned to the territories of either the state of Georgia or 100 miles from his Atlanta office. Further, the covenant is unreasonably redundant in light of the restrictions purportedly imposed by the covenant at Section 7.6.

~ 31 ~

<u>Unenforceable Non-Solicitation Covenant (DA Employment Agreement)</u>

102.

The Non-Solicitation covenants in Section 7.7 of DA Employment Agreement are unenforceable because their overbroad scope would not allow Dean Anderson to accept any request from a Client Account or Active Prospective Client to provide them services. Covenants which go beyond prohibitions against active solicitation of clients and prohibits mere acceptance of business are unenforceable. *Singer v. Habif, Arogeti & Wynne, P.C.*, 250 Ga. 376, 377, 297 S.E.2d 473, 475 (1982) (holding non-solicitation provision unenforceable because by prohibiting acceptance, it "prohibit[ed] more than the active solicitation or diversion of clients"); *Fine v. Commc'ns Trends, Inc.*, 305 Ga. App. 298, 306-07, 699 S.E.2d 623, 632 (2010) (holding non-solicitation provision unenforceable because it prevented former employee "from merely accepting business without solicitation").

103.

The Non-Solicitation covenant is also unenforceable because it is too vague and ambiguous. First, Client Account and Active Prospective Client are both defined with reference to the "Company" (WFIS) and not USI. Similarly, the provision prohibits actions adverse to the "Company" (WFIS) and not USI. As a result, Dean Anderson is uncertain if the prohibitions apply only to clients he had contact with as a WFIS employee or only to clients he had contact with as an USI employee or both or apply to no clients or prospects as WFIS no longer has any clients or prospects. Non-Solicitation covenants which are too vague, ambiguous, or indefinite are invalid. *See Jack Boutwell, C.P.A., P.C. v. Stone-Benton*, 2013 Ga. Super. LEXIS 441, at *8 (finding non-solicit unenforceable because it was "overbroad, vague, and ambiguous"); *World Micro Components, Inc. v. Crestwood Tech. Grp. Corp.*, 2014 Ga. Super. LEXIS 2520, at *26

(invalidating non-solicitation covenant because its terms were " ill-defined, ambiguous and wide-ranging"); *Matthew Focht Enters. v. Lepore*, No. 1:12-cv-04479-WSD, 2013 U.S. Dist. LEXIS 127894, at *15 (N.D. Ga. Sep. 9, 2013)

<u>Unenforceable Non-Interference With Employee Covenant</u>
<u>(DA Employment Agreement)</u>

104.

The Non-Interference with Employee covenant at Section 7.8 purports to prohibit Dean Anderson from hiring any employee of WFIS. Such a covenant is illegal and unenforceable because it prohibits Dean Anderson from merely hiring any WFIS employee. *Cox v. Altus Healthcare & Hospice, Inc.*, 308 Ga. App. 28, 32 706 S.E.2d 660 (2011), *Wetherington v. Ameripath, Inc.*, 566 Fed. App'x. 850 (11th Cir. 2014) (affirming district court's decision finding "blanket prohibition" against hiring former employer's employees is an "unreasonable restraint on competition under Georgia law.").

105.

This covenant is too vague and ambiguous because it is unclear if the prohibitions apply only to employees who were previously WFIS employees, apply to no one because there are no longer WFIS employees or apply to all USI employees. *See Jack Boutwell, C.P.A., P.C. v. Stone-Benton*, 2013 Ga. Super. LEXIS 441, at *8 (finding non-solicit unenforceable because it was "overbroad, vague, and ambiguous"); *World Micro Components, Inc. v. Crestwood Tech. Grp. Corp.*, 2014 Ga. Super. LEXIS 2520, at *26 (invalidating non-solicitation covenant because its terms were " ill-defined, ambiguous and wide-ranging"); *Matthew Focht Enters. v. Lepore*, No. 1:12-cv-04479-WSD, 2013 U.S. Dist. LEXIS 127894, at *15 (N.D. Ga. Sep. 9, 2013)

Unenforceable Notice of Termination (DA Employment Agreement)

106.

The Notice of Termination provision in DA Employment Agreement at Section 8.2 purports to require Dean Anderson to provide notice 60 days prior to his resignation and allows USI to prevent Dean Anderson from performing any work for any other company during the notice period.  This covenant is illegal and unenforceable as a matter of law on multiple grounds.

107.

First, Georgia law is clear that an employer cannot obtain injunctive relief to enforce a Notice of Termination provision.  *Capricorn Sys. v. Pednekar*, 248 Ga. App. 424, 425, 546 S.E.2d 554, 557 (2001) (holding that notice termination provisions were **only** enforceable through "special damages [and]… nominal damages.")

108.

Second, the Notice of Termination provision is a non-competition covenant with no territorial restriction as it prohibits Dean Anderson from working for any other company anywhere, and thus it is in violation of O.C.G.A. § 13-8-53.  *See also  CCmulti, LLC v. Carle*, 2017 Ga. Super. LEXIS 588, *8 (finding a non-compete clause that lacked any geographical area unenforceable).

109.

The extent to which the covenants in the DA Employment Agreement violate the RCA make it impossible to modify the covenants into compliance with Georgia law without this Court "supplying new and material terms from whole cloth." *Lifebrite Labs., LLC v. Cooksey*, No. 1:15-CV-4309-TWT, 2016 U.S. Dist. LEXIS 181823, at *19 (N.D. Ga. Dec. 9, 2016). Therefore, this Court should exercise its discretion pursuant to O.C.G.A. § 13-8-54(b) and refuse

~ 34 ~

to modify the covenants. *Id.* As such, the covenants must be held unenforceable in their
entirety.

<u>Unenforceable Non-Solicitation Covenant (Maldonado's Confidentiality Agreement)</u>

110.

The Non-Solicitation covenants in Section 4.5 of Maldonado's Confidentiality
Agreement are unenforceable because their overbroad scope would not allow Maldonado to
accept any request to provide services to both current and prospective clients. Covenants which
go beyond prohibitions against active solicitation of clients and prohibit mere acceptance of
business are unenforceable. *Singer v. Habif, Arogeti &* Wynne, P.C., 250 Ga. 376, 377, 297
S.E.2d 473, 475 (1982) (holding non-solicitation provision unenforceable because by prohibiting
acceptance, it "prohibit[ed] more than the active solicitation or diversion of clients"); *Fine v.
Commc'ns Trends, Inc.*, 305 Ga. App. 298, 306-07, 699 S.E.2d 623, 632 (2010) (holding non-
solicitation provision unenforceable because it prevented former employee "from merely
accepting business without solicitation").

111.

The Non-Solicitation covenant is also unenforceable because it is too vague and
ambiguous. First, Client Account and Active Prospective Client are both defined with reference
to the "Company" (WFIS) and not USI. Similarly, the provision prohibits actions adverse to the
"Company" (WFIS) and not USI. As a result, Maldonado is uncertain if the prohibitions apply
only to clients he had contact with as a WFIS employee or only to clients he had contact with as
an USI employee or both or to no clients because there are no longer clients of WFIS. Non-
Solicitation covenants which are too vague, ambiguous, or indefinite are invalid. See *Jack
Boutwell, C.P.A., P.C. v. Stone-Benton*, 2013 Ga. Super. LEXIS 441, at *8 (finding non-solicit

unenforceable because it was "overbroad, vague, and ambiguous"); *World Micro Components, Inc. v. Crestwood Tech. Grp. Corp.*, 2014 Ga. Super. LEXIS 2520, at *26 (invalidating non-solicitation covenant because its terms were " ill-defined, ambiguous and wide-ranging"); *Matthew Focht Enters. v. Lepore*, No. 1:12-cv-04479-WSD, 2013 U.S. Dist. LEXIS 127894, at *15 (N.D. Ga. Sep. 9, 2013)

<u>Unenforceable Non-Competition Covenant (Maldonado's Confidentiality Agreement)</u>

112.

The Non-Competition covenant in Maldonado's Confidentiality Agreement is unenforceable because Section 4.6 purports to prohibit Maldonado from providing insurance services to any client or prospective client of any WFIS if the client or prospect is located within 100 miles of Maldonado's former office at WFIS. The 100-mile radius is not a geographical term defining where the prohibition applies but is a description of clients or prospects to which the restriction applies. Thus, the Non-Compete covenant is unenforceable because it lacks any geographical restriction in violation of O.C.G.A. § 13-8-53. *See also CCmulti, LLC v. Carle*, 2017 Ga. Super. LEXIS 588, at *8 (finding a non-compete clause that lacked any geographical area but instead prohibited a subset of customers unenforceable).

113.

The Non-Compete covenant at Section 4.6 of the Maldonado Employment Agreement also is invalid and unenforceable because the territory used to define the prohibited clients and prospects purports to include entire counties, and thus all clients and prospects within the entire county, if Maldonado had even one client in that county. The covenant is unreasonable to prohibit Maldonado from doing any work with clients and prospects if they happen to reside in a county in which Maldonado had contact with another client or prospect.

~ 36 ~

114.

The Non-Compete covenant is also unenforceable because it is too vague and ambiguous. Client Account and Active Prospective Client are both defined with reference to the "Company" (WFIS) and not USI.  Similarly, the provision prohibits actions adverse to the "Company" (WFIS) and not USI.  As a result, Maldonado is uncertain if the prohibitions apply only to clients he had contact with as a WFIS employee or only to clients he had contact with as an USI employee or both or no clients because there are no longer clients of WFIS.  Covenants which are too vague, ambiguous, or indefinite are invalid.  See *Jack Boutwell, C.P.A., P.C. v. Stone-Benton*, 2013 Ga. Super. LEXIS 441, at *8 (finding non-solicit unenforceable because it was "overbroad, vague, and ambiguous"); *World Micro Components, Inc. v. Crestwood Tech. Grp. Corp.*, 2014 Ga. Super. LEXIS 2520, at *26 (invalidating non-solicitation covenant because its terms were " ill-defined, ambiguous and wide-ranging"); *Matthew Focht Enters. v. Lepore*, No. 1:12-cv-04479-WSD, 2013 U.S. Dist. LEXIS 127894, at *15 (N.D. Ga. Sep. 9, 2013) (same).

### Unenforceable Non-Interference With Employee Covenant
### (Maldonado's Confidentiality Agreement)

115.

The Non-Interference with Employee covenant purports to prohibit Maldonado from hiring any employee of WFIS.  Such a covenant is illegal and unenforceable because it prohibits Maldonado from merely hiring any WFIS employee.  *Cox v. Altus Healthcare & Hospice, Inc.*, 308 Ga. App. 28, 32 706 S.E.2d 660 (2011); *Wetherington v. Ameripath, Inc.*, 566 Fed. App'x. 850 (11th Cir. 2014) (affirming district court's decision finding "blanket prohibition" against hiring former employer's employees is an "unreasonable restraint on competition under Georgia law.").

116.

This covenant is too vague and ambiguous because it is unclear if the prohibitions apply

only to employees who were previously WFIS employees, apply to no one because there are no

longer WFIS employees or apply to all USI employees. *See Jack Boutwell, C.P.A., P.C. v.*

*Stone-Benton*, 2013 Ga. Super. LEXIS 441, at \*8 (finding non-solicit unenforceable because it

was "overbroad, vague, and ambiguous"); *World Micro Components, Inc. v. Crestwood Tech.*

*Grp. Corp.*, 2014 Ga. Super. LEXIS 2520, at \*26 (invalidating non-solicitation covenant because

its terms were " ill-defined, ambiguous and wide-ranging"); *Matthew Focht Enters. v. Lepore*,

No. 1:12-cv-04479-WSD, 2013 U.S. Dist. LEXIS 127894, at \*15 (N.D. Ga. Sep. 9, 2013)

117.

The extent to which the covenants in Maldonado's Confidentiality Agreement violate the

RCA make it impossible to modify the covenants into compliance with Georgia law without this

Court "supplying new and material terms from whole cloth." *Lifebrite Labs., LLC v. Cooksey*,

No. 1:15-CV-4309-TWT, 2016 U.S. Dist. LEXIS 181823, at \*19 (N.D. Ga. Dec. 9, 2016).

Therefore, this Court should exercise its discretion pursuant to O.C.G.A. § 13-8-54(b) and refuse

to modify the covenants. *Id.* As such, the covenants must be held unenforceable in their entirety.

<u>The Unlawful Covenants Cannot be Salvaged by Judicial Modification</u>

118.

The covenants contained in the TA Employment Agreement, the "Stock Agreement, the

DA Employment Agreement, and Maldonado's Confidentiality Agreement cannot be modified

into compliance with Georgia law without this Court "supplying new and material terms from

whole cloth." *Lifebrite Labs., LLC v. Cooksey*, No. 1:15-CV-4309-TWT, 2016 U.S. Dist. LEXIS

181823, at \*19 (N.D. Ga. Dec. 9, 2016). Therefore, this Court should exercise its discretion

pursuant to O.C.G.A. § 13-8-54(b) and refuse to modify the covenants. *Id.* As such, the covenants must be held unenforceable in their entirety.

## COUNT I. – DECLARATORY JUDGMENT

119.

Plaintiffs re-alleges and incorporates paragraphs 1-118 of this Verified Complaint as if fully restated herein.

120.

There exists a substantial and justiciable actual controversy between Plaintiffs and Defendants concerning the enforceability and the legality of the restrictive covenants described above.

121.

The controversy involves the legal relations of the parties, having adverse interests with respect to which the declaration is sought.

122.

Plaintiffs are in a position of uncertainty and insecurity because of the significant likelihood that they will be hindered in their ability to continue in their chosen profession absent the requested declaratory judgment. While Plaintiffs believe that the relevant restrictive covenants are unenforceable against them, they respectfully request this Court settle and afford them relief from the uncertainty and insecurity they have with respect to rights, status, and other legal relations arising in relation to the covenants.

123.

The ends of justice require that this Court should take such requested action for the guidance and protection of Plaintiffs. Accordingly, there exists an actual, practical and present need for a declaration pursuant to O.C.G.A. § 9-4-2.

124.

Plaintiffs thus pray that the Court enter a final declaratory judgment that the relevant restrictive covenants are void and unenforceable as against them both facially and as applied to the underlying facts and circumstances associated with this matter.

## COUNT II. – TEMPORARY AND PERMANENT INJUNCTION

125.

Plaintiffs re-allege and incorporates Paragraphs 1-118 of this Verified Complaint as if fully restated herein.

126.

Plaintiffs will be irreparably harmed if the USI entities are allowed to take any legal or other action against them related to the enforcement of the unlawful restrictive covenants.

127.

Unless enjoined and restrained, Defendants may seek to enforce the unlawful covenants against Plaintiffs, to preclude them from being able to accept insurance business from their clients, and to otherwise bar Plaintiffs from engaging in otherwise lawful competitive activities within Georgia and elsewhere.

128.

Given the unenforceability of the restrictive covenants at issue, the likelihood of irreparable harm that will befall Plaintiffs if the USI entities are allowed to pursue enforcement

of the covenants far outweighs the potential harm to the USI entities if this Court were to grant the injunctive relief requested herein.

### 129.

The public policy of the State of Georgia would not be adversely affected and, in fact, would be upheld if this Court grants the requested injunctive relief in favor of Plaintiffs and against the USI entities in that Plaintiffs only seek to prevent Defendants from doing what they have no right to do – take action to enforce the illegal restrictive covenants.

### 130.

Plaintiffs are without an adequate remedy at law to prevent legal action against them by the USI entities based on the unenforceable restrictive covenants at issue which violate the public policy of the State of Georgia.

### 131.

Due to the unenforceability of the restrictive covenants at issue, there is a substantial likelihood that Plaintiffs will prevail on the merits of their claim for declaratory relief in this matter.

### 132.

Because of the threat of irreparable harm from the Defendants' attempts to enforce the unlawful covenants, Plaintiffs urge the Court to immediately preserve the status quo and enter a temporary restraining order to enjoin and restrain the Defendants from (a) taking any actions to enforce or seek to enforce the challenged covenants against Plaintiffs, (b) seeking to recover from Plaintiffs any damages or other remedies based upon any alleged violation of the terms contained in the unlawful covenants, and (c) taking any action to preclude or disrupt Plaintiffs'

ability to accept insurance business from clients or be affiliated with the Southeast Series of Lockton Companies, LLC.

133.

Plaintiffs further request that the Court preliminarily enjoin the Defendants during the pendency of this action from (a) taking any actions to enforce or seek to enforce the challenged covenants against Plaintiffs, (b) seeking to recover from Plaintiffs any damages or other remedies based upon any alleged violation of the terms contained in the unlawful covenants, and (c) taking any action to preclude or disrupt Plaintiffs' ability to accept insurance business from clients or be affiliated with the Southeast Series of Lockton Companies, LLC.

134.

Plaintiffs further request that the Court enter a permanent injunction consistent with the terms of the requested TRO and Preliminary Injunction.

WHEREFORE, Plaintiffs respectfully pray as follows:

(a)    That the Court immediately hear their request for temporary injunctive relief and advance the trial on the merits of this action and consolidate such trial with an interlocutory injunction hearing pursuant to O.C.G.A. Sec. 9-11-65(a)(2);

(b)    That the Court temporarily and permanently enjoin Defendants, and any associated person or entity acting on their behalf, from attempting or threatening, in any way, and in any forum or jurisdiction:

      (i)    to enforce the unenforceable restrictive covenants against Plaintiffs;

      (ii)    to seek to recover damages or other remedies based upon any alleged violation of the restrictive covenants; and,

~ 42 ~

(iii)    to take any action to preclude or disrupt Plaintiffs' ability to accept

insurance business from clients or be affiliated with the Southeast Series

of Lockton Companies, LLC;

(c)    That the Court grant Plaintiffs' requested declaratory relief; and,

(d)    That the Court award Plaintiffs any further relief it deems just and proper.

Respectfully submitted this 9th day of December 2019.

*/s/Warren R. Hall, Jr.*
Warren R. Hall, Jr.
Georgia Bar No. 319405
whall@hgrslaw.com
Wayne M. Cartwright
Georgia Bar No. 257328
wcartwright@hgrslaw.com

Hall, Gilligan,
Roberts & Shanlever, LLP
3340 Peachtree Road – Suite 1900
Atlanta, Georgia 30326
T: 404-442-8776
F: 404-537-5555

*Counsel for Plaintiffs*

~ 43 ~

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

JAMESON TAYLOR                    )
ANDERSON; DEAN ANDERSON;          )
and ROGER MALDONADO               )
                                  )
        Plaintiffs,               )
                                  )         CIVIL ACTION NO.
v.                                )
                                  )         _____
                                  )
USI ADVANTAGE CORP. and           )
USI INSURANCE SERVICES, LLC       )
                                  )
        Defendants.               )
_____  )

## <u>VERIFICATION</u>

PERSONALLY APPEARED before me, the undersigned officer duly authorized to

administer oaths, Dean Anderson, who, upon being duly sworn, deposes and states on oath that

the facts and information contained in the Verified Complaint for Declaratory Judgment and

Injunctive Relief filed in this action are true to the best of his personal knowledge, information,

and belief.



_____
Dean Anderson

Sworn and subscribed before me

This __6__ day of December, 2019.

_____
Notary Public
My Commission Expires:

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| JAMESON TAYLOR<br>ANDERSON; DEAN ANDERSON;<br>and ROGER MALDONADO | ) )<br>) )<br>) ) | |
| Plaintiffs, | ) )<br>) ) | CIVIL ACTION NO. |
| v. | )<br>) ) | _____ |
| USI ADVANTAGE CORP. and<br>USI INSURANCE SERVICES, LLC | ) )<br>) )<br>) ) | |
| Defendants. | ) ) | |

## **VERIFICATION**

PERSONALLY APPEARED before me, the undersigned officer duly authorized to

administer oaths, Roger Maldonado, who, upon being duly sworn, deposes and states on oath

that the facts and information contained in the Verified Complaint for Declaratory Judgment and

Injunctive Relief filed in this action are true to the best of his personal knowledge, information,

and belief.



_____
Roger Maldonado

Sworn and subscribed before me

This ___5___ day of December, 2019.

_____
Notary Public
My Commission Expires:

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

|  |  |  |
|---|---|---|
| JAMESON TAYLOR ANDERSON; DEAN ANDERSON; and ROGER MALDONADO | ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. |
| v. | ) ) ) | _____ |
| USI ADVANTAGE CORP. and USI INSURANCE SERVICES, LLC | ) ) ) ) | |
| Defendants. | ) ) | |

## **VERIFICATION**

PERSONALLY APPEARED before me, the undersigned officer duly authorized to

administer oaths, Jameson Taylor Anderson, who, upon being duly sworn, deposes and states on

oath that the facts and information contained in the Verified Complaint for Declaratory Judgment

and Injunctive Relief filed in this action are true to the best of his personal knowledge,

information and belief.



_____
Jameson Taylor Anderson

Sworn and subscribed before me

This __5__ day of December, 2019.

_____
Notary Public
My Commission Expires:

Fulton County Superior Court
***EFILED***JT
Date: 12/10/2019 2:20 PM
Cathelene Robinson, Clerk

**General Civil and Domestic Relations Case Filing Information Form**

■ Superior or □ State Court of <u>FULTON</u> County

| For Clerk Use Only | | |
|---|---|---|
| Date Filed <u>12/10/2019</u> | Case Number | <u>2019CV330376</u> |
| **MM-DD-YYYY** | | |

**Plaintiff(s)**
ANDERSON   JAMESON   T

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| ANDERSON | DEAN | | | |

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| MALDONADO | ROGER | | | |

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| | | | | |

**Defendant(s)**
USI ADVANTAGE   CORP.

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| USI INSUARNCE | SERVICES, LLC | | | |

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| | | | | |

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| | | | | |

**Plaintiff's Attorney** WARREN R. HALL, Jr    **State Bar Number** 319405    **Self-Represented** □

**Check one case type and one sub-type in the same box (if a sub-type applies):**

**General Civil Cases**
- □ Automobile Tort
- □ Civil Appeal
- □ Contempt/Modification/Other Post-Judgment
- □ Contract
- □ Garnishment
- □ General Tort
- □ Habeas Corpus
- □ Injunction/Mandamus/Other Writ
- □ Landlord/Tenant
- □ Medical Malpractice Tort
- □ Product Liability Tort
- □ Real Property
- □ Restraining Petition
- ☑ Other General Civil

**Domestic Relations Cases**
- □ Adoption
- □ Contempt
  - □ Non-payment of child support, medical support, or alimony
- □ Dissolution/Divorce/Separate Maintenance/Alimony
- □ Family Violence Petition
- □ Modification
  - □ Custody/Parenting Time/Visitation
- □ Paternity/Legitimation
- □ Support – IV-D
- □ Support – Private (non-IV-D)
- □ Other Domestic Relations

□ Check if the action is related to another action pending or previously pending in this court involving some or all of the same: parties, subject matter, or factual issues. If so, provide a case number for each.

_____    _____
    **Case Number**                **Case Number**

☑ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in OCGA § 9-11-7.1.

□ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____ **Language(s) Required**

□ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

Version 1.1.20