UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JAMESON TAYLOR ANDERSON, ROBERT DEAN ANDERSON, and ROGER MALDONADO, <br><br>Plaintiffs,<br><br>v.<br><br>USI ADVANTAGE CORP. and USI INSURANCE SERVICES, LLC,<br><br>Defendants. | Civil Action File No.<br><br>1:19-cv-05582-SCJ |

**DEFENDANT USI INSURANCE SERVICES LLC'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**

The Court should grant Defendant USI Insurance Services LLC's ("USI") Motion for Preliminary Injunction (the "Motion") (Doc. 7) and issue an injunction enforcing the notice provisions and restrictive covenants at issue.[1]

### I.   INTRODUCTION

In their Response (Doc. 24), Plaintiffs erroneously start from the premise that restrictive covenants are disfavored under Georgia public policy. However, as

---

[1] The Court has already ruled upon and granted significant portions of USI's Motion for Temporary Restraining Order. *See* Doc. 12, 31.

of 2011, the Georgia General Assembly significantly revised Georgia's restrictive covenant law so that reasonable restrictive covenants in support of an employer's legitimate business interest are now favored and enforceable. *See* O.C.G.A. § 13-8-50. The new statute expressly directs courts to enforce restrictive covenants through the entry of temporary and permanent injunctions. O.C.G.A. § 13-8-58(c). In addition, Georgia case law is also clear that contractual provisions requiring employees to provide advance notice before termination are enforceable.

As set forth below, Plaintiffs' arguments to invalidate the notice provisions and the restrictive covenants contained in their agreements are either based on mischaracterizations of the language within those agreements or are otherwise not supported by <u>current</u> Georgia law. In fact, the restrictive covenants and notice provisions at issue are enforceable, and there is no question that Plaintiffs have breached and are continuing to breach them. Therefore, USI is likely to succeed on the merits of its claims. Finally, USI has presented unrebutted evidence that it risks irreparable harm if the restrictive covenants and notice provisions are not enforced, its irreparable harm exceeds the risk of any harm to Plaintiffs from the issuance of an injunction, and an injunction would not be adverse to the public interest. For all of these reasons, the Motion should be granted.

## II.  ARGUMENT AND CITATION TO LEGAL AUTHORITY

### A.  The Court Should Enforce the Andersons' Notice Provisions.

The Court should issue an injunction enforcing the notice of termination provisions in Section 8.2 of the DA Agreement and Section 8.2 of the TA Agreement. USI has made the requisite showings for obtaining an injunction (*see* Doc. 7-1, pp. 14-19, 41-46), the notice provisions are plainly enforceable under Georgia law (*id.* at 15) (citing case law)), and the harm to Plaintiffs of an injunction for the remainder of the notice period would be minimal at most. Georgia courts commonly grant injunctions, in both the restrictive covenant context and otherwise, prohibiting employees from engaging in competitive activity in violation of their contractual duties to their employer.

The two cases cited by Plaintiffs do not change this analysis. Although the Court in *Capricorn Systems v. Pednekar*, 248 Ga. App. 424 (2001), found that special damages or nominal damages are available as a remedy, the Court did <u>not</u> find that damages are the <u>exclusive</u> remedy available for the breach of a notice provision. Indeed, the plaintiff did not seek an injunction and the Court's decision never even discussed injunctive relief. Plaintiffs argue that *Capricorn* holds that notice of termination provisions are "only" enforceable through damages, but the term "only" was inserted by Plaintiffs into their parenthetical discussing the case

3

and cannot be found anywhere within the actual decision. *See* Resp., p. 8.

The second case Plaintiffs cite, *Carvalho v. Credit Suisse Securities (USA) LLC*, 2007 U.S. Dist. LEXIS 80651 (N.D. Ga. Oct. 31, 2007), is an unpublished decision that is not consistent with current Georgia law. The Court in *Carvalho* based its decision on its doubts regarding enforceability of the notice provisions at issue. The Court stated it was "not convinced that the notice provision at issue will not be treated as a restrictive covenant." *Id.* at *4. Therefore, at a time when Georgia law evaluated restrictive covenants in employment contracts with strict scrutiny under the old law (which does not apply in this case), it is not surprising that the Court had "significant questions about the likelihood of [the employer's] success on the merits." *Id.* However, the Court of Appeals of Georgia recently made unequivocally clear that notice provisions such as those at issue in this case are not restrictive covenants and are legally enforceable. *HA&W Capital Partners, LLC v. Bhandari*, 346 Ga. App. 598, 604 (2018) (quoting *Capricorn Sys.*, 248 Ga. App. at 425).[2] Therefore, the analysis in *Carvalho* no longer applies.

Similarly, Plaintiffs' focus on whether the notice provisions have a

---

[2] Plaintiffs' argument that "the Notice of Termination provisions are restrictive covenants" and that the enactment of Georgia's restrictive covenant statute undermined the holding in *Capricorn* (Resp., p. 9) is in direct conflict with the Court of Appeals' 2018 holding in *Bhandari*, which reaffirmed the holding in *Capricorn* that notice provisions are not restrictive covenants and are enforceable. 346 Ga. App. at 604 (quoting *Capricorn*, 248 Ga. App. at 425).

geographic scope is irrelevant because they are not restrictive covenants. Moreover, the lack of geographic territory would not, in any event, undermine the enforceability of the notice provisions even if they were restrictive covenants. *See* O.C.G.A. § 13-8-56(4) (restrictions that operate <u>during the term of an employment relationship</u> do not require a geographic area).

**B.    The Six-Month Non-Compete Covenant in Dean Anderson's Employment Agreement is Enforceable.**

Dean Anderson does not deny that he is currently working for a competitor of USI, Lockton, in direct violation of the non-compete covenant in Section 7.5 of the DA Agreement, but argues that the restriction is overbroad. But given the undisputed evidence that Mr. Anderson's practice for USI, as National Practice Leader, is national in scope and given that current Georgia law allows employers to protect business that is nationwide in scope with nationwide non-competes, Mr. Anderson's restriction is enforceable. In considering enforceability, the Court should also take into account that this particular non-compete restriction is only six months in duration, rather than the two years permitted by Georgia law. O.C.G.A. § 13-8-57(d).

Although the Court has already enforced most of Dean Anderson's non-compete covenant (*see* Doc. 31, ¶ 3), Plaintiffs take issue with subpart (d), which restricts Mr. Anderson from competing against USI in "any area in the United

States where the [USI] has conducted USI Business during the last twelve (12) months of [Dean Anderson's] employment." DA Agreement, § 7.5. Plaintiffs' attack on the restricted territory is misguided for several reasons.

First, during the time period that Mr. Anderson remains an employee of USI, through February 7, 2020, no territory at all is even required. *See* O.C.G.A. § 13-8-56(4). Second, to the extent the restricted territory creates a nationwide scope for the non-compete covenant, it is appropriate because of the national scope of Dean Anderson's position at USI. *See* Allen Decl., ¶¶ 14-15, 20. Third, this Court in *Cellairis Franchise, Inc. v. Duarte*, 2015 WL 6517487, at *6 (N.D. Ga. Oct. 21, 2015), has enforced a similar nationwide non-compete. Like USI, Cellairis has a business that is nationwide in scope. *Id.* at *1. Under those circumstances, this Court in *Cellairis* entered a preliminary injunction enforcing a two-year non-compete that was nearly nationwide in scope, whereas the non-compete in Section 7.5 of Mr. Anderson's contract is only 6 months in duration.

By contrast, the cases cited by Plaintiffs are not persuasive. *See* Resp., pp. 11-12. All but one of those cases were decided under the much stricter restrictive covenant law that existed prior to the enactment of the current statute in 2011. The only case cited by Plaintiffs that was decided under the RCA, *Pedowitz Group, LLC v. Ogden*, 2013 U.S. Dist. LEXIS 190499 (N.D. Ga. Nov. 29, 2013), is

distinguishable because in that case the plaintiffs did not "persuasively demonstrate[]" that a non-competition restrictive covenant covering all of North America for a longer period of time, 12 months, was reasonable under the circumstances. *Id.* at *16-17. However, the Court did not imply that a territorial scope encompassing all of North America was unreasonable where necessary to protect the employer's legitimate business interest. By contrast, in the present case USI has presented undisputed evidence of the nationwide scope of Dean Anderson's insurance brokerage practice. *See* Allen Decl., ¶¶ 14-15, 20. Particularly in a business like insurance brokerage, where the location of the employee matters less given modern technology, the Court should not allow Mr. Anderson to avoid his non-compete and take USI's clients merely by moving to another location, like Charlotte, temporarily for 6 months while continuing to work for all of the same clients he did while with USI.

### C. The Client Non-Compete Covenants Are Enforceable.

USI is also likely to succeed on the merits of its claim that the Plaintiffs are breaching the client non-compete covenants contained within the Agreements and that those covenants are enforceable.

#### 1. The Client Non-Compete Covenants Are Enforceable.

The Plaintiffs' client non-compete covenants (DA Agreement § 7.6; TA

Agreement § 7.6; RM Agreement § 4.6) are also enforceable under Georgia law. In fact, the Court already found these provisions entirely enforceable against Roger Maldonado and Taylor Anderson and mostly enforceable against Dean Anderson when it granted USI's request for a TRO. *See* Doc. 31, ¶¶ 4-5.

Plaintiffs' claim that the restrictive covenants "have no territorial restriction" (*see* Resp., p. 13) is based on an erroneous reading of the covenants. Plaintiffs' restrictions prevent them from competing with USI for client accounts and active prospective accounts "in the Geographic Area," which is a specifically defined territory in each contract. DA Agreement § 7.6; TA Agreement § 7.6; RM Agreement § 4.6.

Plaintiffs contend these provisions are unenforceable because the territory "does not define the non-compete territory but exists only to define the client group." Resp., p. 13. Regardless of whether Plaintiffs' argument that the territory refers to the location of the clients rather than the location of the restricted employee is correct, there is nothing in the Restrictive Covenant Act or otherwise in Georgia law that prevents having a restricted territory defined by the location of clients. The only case cited by Plaintiffs, an unpublished state trial court decision, is distinguishable as it involved a restrictive covenant with no territorial limitation whatsoever. *See CCmulti, LLC v. Carle*, No. 17-1-0521-53, 2017 Ga. Super.

8

LEXIS 588, at *8 (Cobb County Super. Ct. Nov. 6, 2017). By contrast, the non-competes here expressly contain a territory and plainly apply in the "Geographic Area" listed in each contract.

The restriction on competing for clients and prospective clients in the Geographic Area within the Agreements is reasonable based on the nature of Plaintiffs' employment with USI, which involved interacting with active clients and prospective clients throughout the United States. *See* Allen Decl., ¶¶ 10, 17, 20, 21. Even still, the Geographic Area has been narrowly tailored and is qualified by language specifying that it includes "any counties . . . in which [Plaintiffs] conducted business or where Client Accounts or Active Prospective Clients with whom [Plaintiffs] had material contact in the two (2) years prior to termination of [Plaintiffs'] employment . . . are present." This language supports the enforceability of the client non-compete covenants because it "provides fair notice of [their] maximum reasonable scope." O.C.G.A. § 13-8-53(c)(1).

Narrowly tailored non-compete covenants have been enforced by Georgia courts under the RCA. *See* O.C.G.A. § 13-8-56(a). *See also id.* at § 13-8-56(2)(A) ("A geographic territory which includes the areas in which the employer does business at any time during the parties' relationship . . . is reasonable . . . ."); *Hot Shot Kids, Inc. v. Pervis (In re Pervis)*, 512 B.R. 348, 374 (Bankr. N.D. Ga. 2014)

9

(non-compete covenant restricting representation of clients located within 100 miles of former employer's business was "not unreasonable").

Plaintiffs argue that the client non-compete covenants in the Agreements are unenforceable because they could *hypothetically* prohibit Plaintiffs from servicing a USI client in remote places like Siberia. Resp., p. 14. This far-fetched example does not reflect facts actually in front of the Court and is therefore irrelevant because Courts will not strike down covenants under the RCA merely because they could have been "stated more narrowly to exclude extraneous matters." O.C.G.A. § 13-8-53(c)(1).

Additionally, the client non-compete covenants are not "vague and ambiguous." Resp., p. 15. Plaintiffs argue that because the terms "Client Account" and "Active Prospective Account" are defined with reference to the "Company," which in turn is defined as Wells Fargo Insurance Services USA, Inc. ("WFIS"), they are "uncertain if the prohibitions apply only to clients they had contact with as a WFIS employee or only to clients they had contact with as a[] USI employee or both." (*Id.*) As stated in the Motion, USI purchased all the issued and outstanding equity interests of WFIS, and WFIS was then renamed USI. Doc. 7-1, p. 5; Allen Decl. ¶ 13. Therefore, USI is the successor-in-interest to WFIS relating to the Agreements. *Id.* Moreover, WFIS was expressly authorized to assign the

10

Agreements "at any time" to an assignee or successor who was "expressly authorized to enforce the terms of [the] Agreement[s]." DA Agreement, § 16; RM Agreement, § 8.2; TA Agreement, § 16; *see also* O.C.G.A. § 13-8-58(a) ("A court shall not refuse to enforce a restrictive covenant on the grounds that the person seeking enforcement . . . is an assignee or successor to a party to such contract."). Therefore, the fact that the Agreements reference both WFIS and USI and contemplate WFIS's acquisition by USI only strengthen the argument that Plaintiffs understood the true scope of the Client Non-Compete Covenants.

Finally, the fact that the client non-compete covenants might apply "to all clients and prospects in a territory, regardless of whether Plaintiffs ever had any contact with the client or prospect" is irrelevant. Resp., pp. 15-16. First, Georgia law is clear that two-year non-competes are enforceable, even if they are broader than just restricting an employee from competing for his former employer's clients. *See Duarte*, 2015 WL 6517487. Here, rather than imposing a general two-year non-compete, Plaintiffs are subject to a narrower two-year non-compete that applies only to USI's clients and prospective clients.

Furthermore, merely because the client non-compete covenants *could* restrict the Plaintiffs from soliciting clients from businesses with whom they never worked and may not be aware does not mean that they should not have to comply with the

11

covenants with respect to businesses with whom *they did work*. Striking down a restrictive covenant based upon overbreadth due to hypothetical situations not actually before the court has been expressly disavowed under the RCA. *See* O.C.G.A. § 13-8-53(c)(1). Thus, because the scope of activity within the client non-compete covenants is narrowly drawn, it would be enforced by Georgia courts. *See Lighting Galleries v. Drummond*, 247 Ga. App. 124, 127 (2000) (covenant not to compete was not overbroad in the scope of activity prohibited where it was tailored to the job the employee had performed for the former employer).

### 2. Substantial Evidence Exists that Plaintiffs Breached the Client Non-Compete Covenants.

USI is likely to succeed on the merits of its claim that Plaintiffs breached the client non-compete covenants because it has presented uncontroverted evidence of Plaintiffs' competition with USI for Client Account and Active Prospective Accounts within the relevant Geographic Areas and Restricted Geographic Area.

Even if, standing alone, Plaintiffs' emails to their USI clients would not rise to the level of "competition" with USI, taken in the context of other actions taken, the evidence that Plaintiffs were competing with USI in violation of the Agreements is overwhelming. USI did not consent to or instruct Plaintiffs to send those emails to its clients. Further, on December 9, 2019, the same day Plaintiffs tendered their resignations and sent the emails notifying USI clients of their

departure, they indicated via LinkedIn that they were affiliating with the Lockton Companies, a direct competitor of USI. (*See* Allen Decl., ¶ 40, Ex. L; Supp. Allen Decl., ¶ 24.) USI presented evidence that Dean Anderson contacted certain clients on December 6, 2019, the business day before he attempted to resign. (*Id.* at ¶ 39.) Further, even though Plaintiffs take issue with USI's characterization of Taylor Anderson's short-term extension of Brightwater Partners' aviation policy, they do not dispute that USI also received broker of record change letters from other clients contacted by Plaintiffs, including In-Flight Crew Connections, LLC and Rally Point Management. (Allen Decl., ¶ 44; Supp. Allen Decl., ¶¶ 17-18.) Indeed, since the Motion was filed at least five more USI clients have submitted broker of record change letters to transfer their business over to the Lockton Companies. (Supp. Allen Decl., ¶¶ 19-23.)

Together, all of the evidence presented by USI creates a strong likelihood that it will prevail on the merits of its claim showing that Plaintiffs have breached the client non-compete covenants.

**D.  The Court Is Authorized to Modify Restrictive Covenants That It Deems Unreasonable**

The Restrictive Covenants Act expressly permits courts to "modify a covenant that is otherwise void and unenforceable so long as the modification does not render the covenant more restrictive with regard to the employee than as

13

originally drafted by the parties." O.C.G.A. § 13-8-53(d); *see also* O.C.G.A. § 13-8-54(b); *PointeNorth Ins. Grp. v. Zander*, 2011 WL 4601028, at *3 (N.D. Ga. Sept. 30, 2011) (acknowledging that under RCA court had authority to remedy overbroad covenants by blue penciling provisions to limit their scope).

Plaintiffs incorrectly argue that the restrictive covenants at issue are extraordinarily broad and the nature of their defects makes it "impossible for a court to reasonably limit the provision by only striking offending portions." Resp., p. 19. However, the cases they cite to support their position are distinguishable. *Lifebright Labs, LLC v. Cooksey*, 2016 U.S. Dist. LEXIS 181823 (N.D. Ga. Dec. 9, 2016), involved a non-competition covenant that lacked <u>any</u> geographic scope. Because there was no geographic provision for the court to narrow or modify, it would have had to create a new limitation "from whole cloth." *Id.* at *13-20. *See also Hamrick v. Kelley*, 260 Ga. 307, 308 (1990) (court would have had to independently define term to cure vagueness of restrictive covenant). Plaintiffs' primary objections to the restrictive covenants are that their scope is impermissibly overbroad. Therefore, even if it deems them overbroad, the Court could easily narrow those covenants, as opposed to creating entirely new material terms.

**E.     The Threatened Injury to USI Outweighs Any Damage an Injunction Might Cause to the Plaintiffs.**

In the Motion, USI presented extensive evidence that it was likely to suffer

irreparable harm if Plaintiffs continue to violate the notice provisions, the non-compete covenant, and the client non-compete covenants. *See* Doc. 7-1, pp. 41-46; *see also PointeNorth*, 2011 WL 4601028, at *4 ("Georgia courts have found when restrictive covenants are signed between an insurance agency and its agent, an injunction is appropriate as the loss of a customer is difficult, if not impossible, to quantify.") (internal quotation marks and case citation omitted). Although Plaintiffs counter that USI's claimed harm of "losing customers" does not justify injunctive relief, the case cited in support of their position, *MacGinnitie v. Hobbs Grp., LLC*, 420 F.3d 1234, 1243 (11th Cir. 2005), was decided prior to the enactment of the RCA, and, in fact, the Court in that case found that the restrictive covenants at issue (applying pre-RCA law) were overbroad and unenforceable and could not be blue-penciled. *See id.* at 1241-42. Further, USI's irreparable harm is not limited to losing customers, but also includes the loss of goodwill from its employees, clients, and potential clients, the disruption caused by the lack of any transition period caused by Taylor and Dean Anderson's violation of the notice provisions, and the deliberate confusion caused by Plaintiffs' failure to fully and properly transition open client tasks. Moreover, Plaintiffs have acknowledged that their violation of the Agreements would result in irreparable harm to USI. *See* DA Agreement, § 9; RM Agreement, § 5; TA Agreement, § 9.

Respectfully submitted this 16th day of January, 2020.

        **PARKER, HUDSON, RAINER & DOBBS LLP**

        *s/ Jared C. Miller*
        Nancy H. Baughan
        Georgia Bar No. 042575
        Jared C. Miller
        Georgia Bar No. 142219
        Matthew M. Weiss
        Georgia Bar No. 718795
        303 Peachtree Street, N.E., Suite 3600
        Atlanta, Georgia 30308
        Telephone:   404-523-5300
        Facsimile:   404-522-8409
        E-mail: nbaughan@phrd.com
              jcm@phrd.com
              mweiss@phrd.com

        *Counsel for Defendant USI Insurance Services LLC*

## **CERTIFICATE OF COMPLIANCE**

In compliance with LR 7.1D, N.D. Ga., I certify that the foregoing **DEFENDANT USI INSURANCE SERVICES LLC'S REPLY BRIEF IN SUPPORT OF ITS EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** has been prepared in conformity with LR 5.1, N.D. Ga. This memorandum was prepared with Times New Roman (14 point) type, with a top margin of one and one-half (1 ½) inches and a left margin of one (1) inch. This memorandum is proportionately spaced and is 15 pages in length.

*s/ Jared C. Miller*
Jared C. Miller

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing **DEFENDANT USI INSURANCE SERVICES LLC'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION** upon all parties to this matter by electronically filing a copy of same with the Court's CM/ECF system, which will automatically send an electronic copy to the following counsel of record:

Warren R. Hall, Jr., Esq.
Wayne M. Cartwright, Esq.
Hall, Gilligan, Roberts & Shanlever, LLP
3340 Peachtree Road – Suite 1900
Atlanta, Georgia 30326

This 16th day of January, 2020.

*s/ Jared C. Miller*
Jared C. Miller