# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **JAMESON TAYLOR ANDERSON,** | ) | |
| **ROBERT DEAN ANDERSON, and** | ) | **Civil Action File No.** |
| **ROGER MALDONADO,** | ) | |
| | ) | **1:19-cv-05582-SCJ** |
| **Plaintiffs and Counterclaim** | ) | |
| **Defendants,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **USI INSURANCE SERVICES LLC,** | ) | |
| | ) | |
| **Defendant and Counterclaim** | ) | |
| **Plaintiff.** | ) | |
| _____ | ) | |

## USI INSURANCE SERVICES LLC'S AMENDED
## COUNTERCLAIM FOR INJUNCTIVE RELIEF AND DAMAGES[1]

USI Insurance Services LLC ("USI") hereby asserts the following Amended

Counterclaim for Injunctive Relief and Damages against Dean Anderson, Taylor

Anderson, and Roger Maldonado, and respectfully states as follows:

---

[1] Except for additional factual allegations supporting the Amended Counterclaim
herein pled, USI has not updated or revised the Counterclaim to reflect all the
evidence obtained since the filing of the Counterclaims on December 18, 2019.
[Doc. 5]. In addition, the original allegations in the Counterclaim that were true when
plead have not been updated to reflect the passage of time.

## NATURE OF THE ACTION

1.      USI brings this action against the Counterclaim Defendants in order to enforce the Agreements between the Counterclaim Defendants and USI, which the Counterclaim Defendants have violated and continue to violate.

2.      The three Counterclaim Defendants are or were employed by USI in its National Aviation Practice Group, which provides insurance brokerage services to USI's clients in the aviation industry.  Aviation insurance is a niche area of insurance that requires experience and knowledge regarding the specialized risks associated with Aviation.

3.      Dean Anderson is the National Practice Head - Aviation for USI.  USI and its predecessors built a team around Dean Anderson to service USI's clients in this area.  Roger Maldonado was a Senior Vice President in USI's National Aviation Practice Group and held key roles in maintaining relationships with clients, prospects, and insurance companies.  Taylor Anderson, Dean Anderson's son, is a Commercial Lines ("CL") Producer who also assists USI's clients in meeting their Aviation service needs.

4.      The Counterclaim Defendants carefully orchestrated providing coordinated notice of their intent to resign their employment from USI, immediately

commenced employment with one of USI's competitors, and are breaching their Agreements with USI.

5.     As explained below, USI seeks injunctive relief enjoining Counterclaim Defendants Dean Anderson and Taylor Anderson from terminating their employment with USI until after the expiration of the sixty (60) days written notice provision within their Agreements and providing that the Andersons remain employees of USI throughout the duration of this 60-day period, through February 7, 2020; enjoining Counterclaim Defendants Dean Anderson and Taylor Anderson from competing with USI or taking actions contrary to USI's interests during the period of time that they remain employed by USI (*i.e.*, through February 7, 2020), in violation of their contractual and common law duties of loyalty and fiduciary duties to USI, including prohibiting them during this time period from providing services to USI's direct competitor Southeast Series of Lockton Companies, LLC ("The Lockton Companies") while still employed by USI; enjoining Counterclaim Defendant Dean Anderson from further violation of his non-competition covenant that precludes him from being employed by one of USI's competitors in the restricted geographic area both during the term of his employment for USI (*i.e.*, through February 7, 2020) and for a period of six (6) months after the termination of his employment with USI (*i.e.*, through August 8, 2020); and enjoining all Counterclaim

Defendants from violating their agreements not to compete with USI with regard to Client Accounts or Active Prospective Client Accounts, as those terms are defined in the Counterclaim Defendants' contracts, during the remainder of their employment (in the case of Dean Anderson and Taylor Anderson) and for a period of two (2) years after the termination of their respective employment with USI (in the case of all Counterclaim Defendants).

6.     USI reserves the right to amend this Counterclaim to assert additional claims against the Counterclaim Defendants as USI might discover.

## PARTIES

7.     Counterclaim Plaintiff USI Insurance Services LLC is a Delaware limited liability company registered to do business in Georgia with its principal place of business located at 100 Summit Lake Drive, Suite 400, Valhalla, NY 10595.  USI is a leading insurance brokerage.

8.     Counterclaim Defendant Dean Anderson is an individual, who, upon information and belief, resides in the State of Georgia and is domiciled in Georgia. Upon information and belief, Dean Anderson resides and can be personally served at 5931 Brundage Lane, Norcross, Gwinnett County, Georgia 30071.

9.     Counterclaim Defendant Taylor Anderson is an individual, who, upon information and belief, resides in the State of Georgia and is domiciled in Georgia.

Upon information and belief, Taylor Anderson resides and can be personally served at 2770 Valvedere Drive NE, Atlanta, DeKalb County, Georgia 30319.

10.     Counterclaim Defendant Roger Maldonado is an individual, who, upon information and belief, resides in the State of Georgia and is domiciled in Georgia. Upon information and belief, Roger Maldonado resides and can be personally served at 1371 Briarcliff Road, Atlanta, DeKalb County, Georgia 30306.

## JURISDICTION AND VENUE

11.     Jurisdiction and venue are proper in this Court under the facts and circumstances set forth herein.

12.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum of $75,000.00, exclusive of interests and costs, there is complete diversity of citizenship, and this Court has supplemental jurisdiction over the matter pursuant to 28 U.S.C. § 1367.

13.     The Court has personal jurisdiction over Dean Anderson because he is a resident of the State of Georgia

14.     The Court has personal jurisdiction over Taylor Anderson because he is a resident of the State of Georgia.

15.     This Court has personal jurisdiction over Roger Maldonado because he is a resident of the State of Georgia.

16.     Venue in proper in this District pursuant to 28 U.S.C. § 1441(a).

## FACTS AND ALLEGATIONS

## USI Insurance Services

17.     USI is a full-service risk management and insurance brokerage firm. USI is one of the largest insurance brokerages in the United States. The insurance brokerage business is highly competitive. USI maintains an office in Atlanta, Georgia located at 3475 Piedmont Rd. NE #800, Atlanta, Georgia 30305.

18.     A key factor in developing and maintaining clients in the insurance brokerage industry is the strong relationship developed between the employee and the client.   Insurance brokerage companies, like USI, invest significantly in establishing and maintaining strong relationships with their clients.

19.     USI regularly conducts repeat business with its clients.  For example, when a policy is set to expire, USI works with its client to evaluate renewal options. USI also works with its clients to identify cross-selling opportunities to place other types of insurance.

20.     The insurance brokerage field that USI occupies is an extremely competitive industry.  An important part of USI's business is the relationships and goodwill that it forms with its clients.  These relations and goodwill are developed by hiring and training skilled personnel (including Executives and Producers), and

through those Executives and Producers identifying and satisfying client needs and otherwise developing a solid reputation in the business community.

21.    USI relies on its Executives and Producers to maintain and enhance the goodwill of USI with respect to USI's clients and relationships with prospective clients.

22.    In the course of performing their duties for USI, Executives and Producers have access to and gain knowledge of confidential information about USI and its client accounts.  USI provided such confidential information about USI and its clients to the Counterclaim Defendants in this case.

23.    USI provides its Executives and Producers with significant training and resources as well as access to USI's clients.  USI provided such training and resources to the Counterclaim Defendants in this case.

24.    The Counterclaim Defendants, as Executives and Producers, were responsible for managing all aspects of client relationships at USI, including attracting and developing new clients, expanding current client relationships, and planning, marketing and developing future client opportunities.

25.    In recognition of the importance of the relationship between employee and client, it is standard in the insurance brokerage industry to have key employees execute employment agreements that contain notice provisions, requiring advance

notice before an employee may terminate his or her employment, and non-solicitation and non-competition covenants.  The notice provision allows the company the necessary time to transition the servicing of client accounts to another employee when the original employee announces his or her departure, to hire a replacement employee if needed, and allows the company to ask the departing employee questions regarding the account to ensure a smooth transition to the new service team member.

26.    Likewise, the non-solicitation and non-competition covenants provide the company with the necessary time to transition the business to the new service team and solidify the client relationship without unfair competition from the former employee and his or her new employer, and thus allows USI to protect its substantial investments in its clients and the training it has provided to its employees.

27.    Accordingly, in reliance on these restrictions, the company can invest the resources that allow the new service team member to maintain the company's client relationship without unfair competition from the departed employee, who had the benefit of the company's previous investment.

28.    Consistent with this industry practice, USI generally requires all its employees who develop and service insurance business to agree to non-solicitation and non-competition covenants that apply during the term of employment and for

two years after the termination of employment as a condition of their employment with USI.

29.    For employees who are often the primary point of contact with USI clients, USI generally requires those employees to sign employment agreements that also contain notice provisions, requiring advance notice if the employee terminates the employment relationship, as a condition of their employment with USI.

30.    Pursuant to a Stock Purchase Agreement ("Purchase Agreement") entered into on or about June 2017, USI agreed to purchase all the issued and outstanding equity interests of Wells Fargo Insurance Services USA, Inc. ("WFIS"), the corporation where the Counterclaim Defendants were employed.  At the time, WFIS was one of the largest insurance brokerages in the United States. The purchase transaction closed on or about November 30, 2017. Upon closing, WFIS was renamed USI Insurance Services National, Inc. ("USIN"), which was subsequently merged into USI Insurance Services LLC.  USI is the successor-in-interest to WFIS/USIN relating to this matter and to the agreements contained in Exhibits B, D, and E to the Declaration of Robert Allen ("Allen Decl."), which is incorporated by reference herein.

## **The Counterclaim Defendants**

31.     Dean Anderson has been employed by USI and its predecessors-in-interest, including, but not limited to USIN and WFIS, for approximately 28 years. Dean Anderson holds the position of Senior Vice President, National Practice Leader - Aviation for USI.  Dean Anderson is highly-knowledgeable and experienced in the field of aviation insurance and leads USI's aviation insurance brokerage practice, which is national in scope.  As the National Practice Head, Dean Anderson works with aviation clients and prospective aviation clients throughout the United States. Dean Anderson also has knowledge of USI's strategy in key markets throughout the country.  A true and correct copy of Mr. Anderson's biography is attached to the Allen Declaration as Exhibit A.

32.     In conjunction with the closing of the Purchase Agreement, USI offered Dean Anderson an at-will position as National Practice Leader Property & Casualty (P&C) working out of USI's office in Atlanta, Georgia.  Dean Anderson accepted the offer and agreed to certain terms and conditions set forth in the DA Employment Agreement.  A true and correct copy of the DA Employment Agreement, which Dean Anderson executed and agreed to, is attached to the Allen Declaration as Exhibit B.

33.     In connection with his execution of the DA Employment Agreement, USI agreed to pay Dean Anderson a retention bonus equal to fifty percent (50%) of his base salary over a period of five (5) years conditioned on his continued employment with USI.

34.     Counterclaim Defendant Roger Maldonado was employed by USI and its predecessors-in-interest, including, but not limited to USIN and WFIS, for approximately 8 years.  Roger Maldonado was an Aviation Senior Vice President with responsibilities that included developing new and existing client relationships on a national level for USI's National Aviation Practice Group.  In that capacity, Roger Maldonado arranged deals with underwriters, was regularly in contact with USI's clients, and was integral to the structure of USI's aviation insurance program. A true and correct copy of Roger Maldonado's biography is attached to the Allen Declaration as Exhibit C.

35.     In conjunction with the closing of the Purchase Agreement, USI offered Roger Maldonado an at-will position as Senior Vice President working out of USI's office in Atlanta, Georgia.  Roger Maldonado accepted USI's offer and agreed to certain terms and conditions set forth in the RM Employment Agreement.  A true and correct copy of the RM Employment Agreement, which Roger Maldonado executed and agreed to, is attached to the Allen Declaration as Exhibit D.

36.     In connection with Roger Maldonado's execution of the RM Employment Agreement, USI agreed to pay him a staff retention bonus totaling $39,560.00 payable in two installments of $19,780.00, with the first installment paid on December 14, 2018.  Roger Maldonado resigned before the second installment was due.

37.     Both Dean Anderson and Roger Maldonado were responsible for growth of the National Aviation Practice Group, a Property and Casualty specialty product line.  Both had knowledge of USI's overall national growth strategy, actively participated in the marketing and sales process to provide advice and expertise to clients, and helped identify the products and/or services that would help meeting the clients' needs.  They also utilized the company's resources to maintain relationships with key clients, prospects, and insurance companies throughout the United States to develop and maintain the capability to meet the needs of USI's clients.

38.     Counterclaim Defendant Taylor Anderson is the son of Dean Anderson.  Taylor Anderson has been employed by USI and its predecessors-in-interest, including, but not limited to USIN and WFIS, for approximately 9 years since he was approximately 25 years old.  USI and its predecessors gave Taylor Anderson the training and tools necessary to learn the insurance business and to service USI's clients.  As an employee of USI, Taylor Anderson serves as a Commercial Lines

("CL") Producer handling commercial insurance, including aviation insurance.  In that capacity, Taylor Anderson serves USI's aviation client accounts throughout the United States.  Taylor Anderson is knowledgeable about all account activity for USI's Atlanta-based as well as many accounts based elsewhere.  Taylor Anderson was frequently brought into USI client relationships across the country where a Property & Casualty client had a need for aviation-related insurance.

39.     In conjunction with the closing of the Purchase Agreement, USI offered Taylor Anderson an at-will position as CL Producer working out of USI's office in Atlanta, Georgia.  Taylor Anderson accepted USI's offer and agreed to certain terms and conditions set forth in the TA Employment Agreement.  A true and correct copy of the TA Employment Agreement is attached to the Allen Declaration as Exhibit E. The TA Employment Agreement, the DA Employment Agreement, and the RM Employment Agreement are collectively referred to as the "Agreements."

40.     Taylor Anderson serves in a sales position responsible for driving new business sales revenue growth, as well as existing client revenue retention and growth based upon an assigned book of prospects and clients.

41.     Taylor Anderson has received several client accounts and a substantial book of business from USI that he did not bring with him to the company.  For example, USI recently started the process of re-assigning to Taylor Anderson the

servicing of USI's client accounts previously serviced by a retiring Aviation Producer with annual commissions totaling approximately $800,000.  In addition, USI introduced Taylor Anderson to other existing USI clients to handle their aviation insurance needs.  Overall, Taylor Anderson's total book of business approximated $2.7 million annually as of December 9, 2019.

42.    In connection with Taylor Anderson's execution of the TA Employment Agreement, USI agreed to pay him a producer retention bonus equal to 90% of the average annual Net Commissions and Fees received by the Company for Client Accounts assigned and coded to him as the sole originating/selling and sole servicing employee during a specified three year "Measurement Period," conditioned on Taylor Anderson's continued employment with USI.

## The Agreements

43.    The Counterclaim Defendants voluntarily entered into the Agreements with USI and each received substantial compensation as a result of their employment with USI.  By entering into the Agreements, they acknowledged and agreed that by commencing employment with USI, they received a direct financial benefit, and other good and valuable consideration.

44.    Under the terms of the DA Employment Agreement and the TA Employment Agreement, Dean Anderson and Taylor Anderson owe a duty of loyalty

to USI.  Specifically, Section 2.3 of the DA Employment Agreement and Section

2.4 of the TA Employment Agreement state as follows:

> ***Duty of Loyalty***.  Producer acknowledges a duty of loyalty to the Company and agrees to use his/her best efforts to faithfully, diligently and completely perform all duties and responsibilities hereunder in furtherance of the business of any USI Company.

(DA Employment Agreement, § 2.3; TA Employment Agreement, § 2.4.)

45.     Section 2.3 of the DA Employment Agreement and Section 2.4 of the

TA Employment Agreement shall be referred to collectively herein as the "Duty of

Loyalty Provisions."

46.     Under the terms of the DA Employment Agreement, Dean Anderson

had the right to terminate his employment with USI subject to Section 8.2, which

stated as follows:

> ***Termination by Executive***. Executive may terminate Executive's employment hereunder by giving at least sixty (60) days written notice to the Company. The termination of employment shall be effective on the date specified in such notice; provided, however, at any time following receipt of such notice, the Company may: (a) accept Executive's termination of employment hereunder effective on such earlier date specified by the Company; and/or (b) require Executive to cease performing any services hereunder until the termination of employment.

(DA Employment Agreement, § 8.2.)

47.    Under the terms of the TA Employment Agreement, Taylor Anderson had the right to terminate his employment with USI subject to Section 8.2, which stated as follows:

> ***Termination by Producer***. Producer may terminate Producer's employment hereunder by giving at least sixty (60) days written notice to the Company. The termination of employment shall be effective on the date specified in such notice; provided, however, at any time following receipt of such notice, the Company may: (a) accept Producer's termination of employment hereunder effective on such earlier date specified by the Company; and/or (b) require Producer to cease performing any services hereunder until the termination of employment.

(TA Employment Agreement, § 8.2.)

48.    Section 8.2 of the DA Employment Agreement and Section 8.2 of the TA Employment Agreement shall be referred to collectively herein as the "Notice Provisions."

49.    In exchange for employment by USI and other good and valuable consideration, Dean Anderson agreed not to compete against USI during the term of his employment and for six months thereafter within a specified "Restricted Geographic Area."

50.    In Section 7.5 of the DA Employment Agreement, Dean Anderson specifically agreed to the following:

***Non-Competition***. In consideration of Executive's employment hereunder, and for other good and valuable consideration, Executive agreed, during the Term and for six (6) months after Executive is no longer employed hereunder, for any reason, Executive shall not, directly or indirectly, compete with the Company within the Restricted Geographic Area by: (a) acting in Executive's same or similar capacity, which Executive acted for the Company, on behalf of any Competitive Business; (b) performing Executive's same or similar functions, which Executive performed for the Company, on behalf of any Competitive Business; or (c) otherwise taking, facilitating or encouraging any action to evade or attempt to evade the intent of this Section; provided, however, that in the event Executive's employment hereunder is terminated by the Company without Cause within twelve (12) months following the Effective Date, then the restrictions in this Section 7.5 (Non-Competition) shall be void and of no further force or effect. ***"Restricted Geographic Area"*** means each of the following separate and divisible geographic areas: (a) the state in which Executive maintained his/her principal office for the Company during the last twelve (12) months of Executive's employment hereunder; (b) a one hundred (100) mile radius from any Company facility in which Executive maintained an office during the last twelve (12) months of Executive's employment hereunder; (c) any territory to which Executive has been assigned during the last twelve (12) months of Executive's employment hereunder, and (d) any area in the United States where the Company has conducted USI Business during the last twelve (12) months of Executive's employment hereunder. Notwithstanding the foregoing, in the event that (i) Executive terminates Executive's employment hereunder pursuant to Section 8.2 (Termination by Executive) within twelve (12) months following the Effective Date (a **"Voluntary Termination Event"**) and (ii) the Company does not, within fifteen (15) business days of the

- 17 -

Company's receipt of Executive's notice of termination (the **"Election Period"**), notify Executive of the Company's election to enforce this Section 7.5 (Non-Competition), then, following the later of (1) the effective date of such Voluntary Termination Event or (2) the end of the Election Period, this Section 7.5 (Non-Competition) shall be void and of no further force or effect. For the avoidance of doubt, any such election shall be made at the Company's sole discretion and in the event the Company elects, within the Election Period, to enforce this Section 7.5 (Non-Competition) (such election, the **"Non-Compete Election"**), then this Section 7.5 (Non-Competition) shall remain fully enforceable against Executive and Executive shall be entitled to the payments set forth in Section 8.3(F). Also, for the avoidance of doubt, the covenants set forth in this Section 7.5 shall remain in force for any termination hereunder, except as expressly stated in this Section 7.5.

(DA Employment Agreement, § 7.5.)

51.     Section 7.5 of the DA Employment Agreement shall be referred to herein as the "Non-Compete Covenant."

52.     Further, in exchange for employment by USI and other good and valuable consideration, the Counterclaim Defendants also agreed not to compete against USI during their terms of employment and for a two-year period thereafter.

53.     In Section 7.6 of the DA Employment Agreement, Dean Anderson specifically agreed to the following:

>    ***Non-Competition of Client Accounts***. During the Term and for (2) years after Executive is no longer employed

hereunder, for any reason, Executive shall refrain from carrying on any business in competition with the Company, directly or indirectly, with respect to any Client Account or Active Prospective Client in the Restricted Geographic Area. **"Carrying on any business in competition with the Company"** shall mean the sale of or providing any product or service that competes, or is reasonably anticipated to compete, in the same markets, with a product or service of the Company as to which Executive had a role in the sale, marketing, distribution, or development in the last two (2) years of Executive's employment with the Company or about which Executive acquired Confidential Information. It is expressly agreed that this Section 7.6 is not intended to restrict or prohibit the ownership by Executive of stock or other securities of a publicly-held corporation in which Executive (a) does not possess beneficial ownership of more than five percent (5%) of the voting capital stock of such corporation and (b) does not participate in any management or advisory capacity.

(DA Employment Agreement, § 7.6.)

54.    Similarly, in Section 4.6 of the RM Employment Agreement and Section 7.6 of the TA Employment Agreement, Roger Maldonado and Taylor Anderson, respectively, specifically agreed to the following:

> ***Non-Competition With Respect to Client Accounts and Active Prospective Clients***. In consideration of [Employee/Producer's] employment hereunder, and for other good and valuable consideration, [Employee/Producer] agrees that, during [Employee/Producer's employment with the Company]

and for two (2) years after [Employee/Producer] is no longer employed with the Company, for any reason, [Employee/Producer] will refrain from carrying on any business in competition with the Company, directly or indirectly, with respect to any Client Account or Active Prospective Client in the Geographic Area. **"Carrying on any business in competition with the Company"** shall mean the sale of or providing any product or service that competes, or is reasonably anticipated to compete, in the same markets, with a product or service of the Company as to which [Employee/Producer] had a role in the sale, marketing, distribution, or development in the last two (2) years of [Employee/Producer's employment with the Company,] or about which [Employee/Producer] acquired Confidential Information. For purposes of this Section . . ., the term **"Geographic Area"** shall include any territory within a one hundred (100) mile radius of any Company facility in which [Employee/Producer] maintained an office during the last twelve (12) months of [Employee/Producer's] employment hereunder, including any counties in the Geographic Area in which [Employee/Producer] conducted business or where Client Accounts or Active Prospective Clients with whom [Employee/Producer] had material contact in the two (2) years prior to termination of [Employee/Producer's employment with the Company] are present.  It is expressly agreed that this Section . . . is not intended to restrict or prohibit the ownership by [Employee/Producer] of stock or other securities of a publicly-held corporation in which [Employee/Producer] (a) does not possess beneficial ownership of more than five percent (5%) of the voting capital stock of such corporation and (b) does not participate in any management or advisory capacity.

(RM Employment Agreement, § 4.6; TA Employment Agreement, § 7.6.)

55.     Section 7.6 of the DA Employment Agreement, Section 7.6 of the TA

Employment Agreement, and Section 4.6 of the RM Employment Agreement shall

be referred to herein collectively as the "Client Non-Compete Covenants."

56.     Finally, in exchange for employment by USI and other good and

valuable consideration, the Counterclaim Defendants also agreed not to solicit

clients and active prospective clients of USI during their terms of employment and

for a two-year period thereafter.

57.     In Section 7.7 of the DA Employment Agreement and Section 7.5 of

the TA Employment Agreement, Dean Anderson and Taylor Anderson, respectively,

agreed to refrain from soliciting any Client Account or Active Prospective Client.

Specifically, Dean Anderson and Taylor Anderson agreed that:

> ***Non-Solicitation of Clients and Active Prospective Clients***.  In
> consideration     of     [Executive's/Producer's]     employment
> hereunder, and for other good and valuable consideration,
> [Executive/Producer] agrees that:
>
> (a)     During the Term and for two (2) years after
> [Executive/Producer] is no longer employed hereunder, for any
> reason, [Executive/Producer] shall not, without the Company's
> prior written consent, directly or indirectly, on behalf of any
> Competitive Business in any capacity: (i) solicit or attempt to
> solicit services in competition with the Company to any Client
> Account; (ii) divert or attempt to divert services away from the
> Company with respect to any Client Account; (iii) consult for
> any Client Account with respect to services in competition with
> the Company; (iv) sign a broker of record letter with any Client
> Account to provide services in competition with the Company;

or (v) induce the termination, cancellation or non-renewal of any Client Account; in each case with respect to any Client Account that [Executive/Producer] managed or regularly serviced and/or about which [Executive/Producer] obtained Confidential Information on behalf of the Company within the last two (2) years of [Executive's/Producer's] employment hereunder.

(b) During the Term and for six (6) months after [Executive/Producer] is no longer employed hereunder, for any reason, [Executive/Producer] shall not, without the Company's prior written consent, directly or indirectly, on behalf of any Competitive Business in any capacity: (i) solicit or attempt to solicit services in competition with the Company to any Active Prospective Client; (ii) divert or attempt to divert services away from the Company with respect to any Active Prospective Client; (iii) consult for any Active Prospective Client with respect to services in competition with the Company; or (iv) sign a broker of record letter with any Active Prospective Client to provide services in competition with the Company; in each case with respect to any Active Prospective Client that [Executive/Producer] solicited and/or about which [Executive/Producer] obtained Confidential Information on behalf of the Company within the last six (6) months of [Executive's/Producer's] employment hereunder.

(DA Employment Agreement, § 7.7; TA Employment Agreement, § 7.5.)

58.     Similarly, in Section 4.5 of the RM Employment Agreement, Roger Maldonado agreed to refrain from soliciting any Client Account or Active Prospective Client.  Specifically, Roger Maldonado agreed that:

***Non-Solicitation of Clients and Active Prospective Clients***.  In consideration of Employee's employment with the Company, and for other good and valuable consideration, Employee agrees that:

- 22 -

(a)    During Employee's employment with the Company and for two (2) years after Employee is no longer employed with the Company, for any reason, Employee shall not, without the Company's prior written consent, directly or indirectly, on behalf of any Competitive Business in any capacity: (i) solicit or attempt to solicit services in competition with the Company to any Client Account; (ii) divert or attempt to divert services away from the Company with respect to any Client Account; (iii) consult for any Client Account with respect to services in competition with the Company; (iv) sign a broker of record letter with any Client Account to provide services in competition with the Company; or (v) induce the termination, cancellation or non-renewal of any Client Account; in each case with respect to any Client Account that Employee managed or regularly serviced and/or about which Employee obtained confidential information on behalf of the Company within the last two (2) years of Employee's employment with the Company.

(b)    During Employee's employment with the Company and for six (6) months after Employee is no longer employed with the Company, for any reason, Employee shall not, without the Company's prior written consent, directly or indirectly, on behalf of any Competitive Business in any capacity: (i) solicit or attempt to solicit services in competition with the Company to any Active Prospective Client; (ii) divert or attempt to divert services away from the Company with respect to any Active Prospective Client; (iii) consult with any Active Prospective Client with respect to services in competition with the Company; or (iv) sign a broker of record letter with any Active Prospective Client to provide services in competition with the Company; in each case with respect to any Active Prospective Client that Employee solicited and/or about which Employee obtained Confidential Information on behalf of the Company within the last six (6) months of Employee's employment with the Company.

(RM Employment Agreement, § 4.5.)

59.    Section 7.7 of the DA Employment Agreement, Section 7.5 of the TA Employment Agreement, and Section 4.5 of the RM Employment Agreement shall be referred to herein collectively as the "Non-Solicitation Covenants."

60.     In the Agreements, the Counterclaim Defendants have expressly agreed that the time and scope of the covenants contained in the Agreements were reasonable and necessary to protect USI's confidential information and goodwill with respect to its Client Accounts. (*See* DA Employment Agreement, § 7.9; TA Employment Agreement, § 7.8; RM Employment Agreement, § 4.8.)

### USI's National Aviation Practice

61.     Aviation insurance is a specialized niche in the insurance world.  It requires knowledge of the unique risks inherent to aviation.

62.     USI's Aviation group assists clients with obtaining insurance for a wide range of aviation expenses, such as airport liability, aircraft hull and liability, flight school rights, unmanned aircraft systems, and numerous other risks uniquely encountered in aviation.  USI's Aviation group provides a variety of services, including loss of control, claims management, contract review, advanced risk financing, industry updates, and planning for successful coverage renewals.

63.     USI and its predecessors have devoted substantial resources to supporting the Aviation group to allow its members to service USI's clients and maintain and strengthen client relationships.  Over the years, USI and its predecessors have built a team of ten (10) employees to service USI's clients.

64.    In their role as long-time employees, the Counterclaim Defendants have had access to and received a substantial volume of USI's confidential information and trade secrets.

65.    The Counterclaim Defendants have received access to a substantial volume of other information regarding USI's business operations and business strategy.

66.    All of the foregoing confidential information is valuable to the business of USI and could be used by competitors for their benefit, and to the detriment of USI.

67.    The Counterclaim Defendants have substantial relationships with prospective and existing clients of USI, customarily and regularly solicit for USI clients and prospective clients, and customarily and regularly engage in making sales or obtaining orders or contracts for products or services to be performed by others.

68.    During their employment at USI, each of the Counterclaim Defendants have been employees who, by reason of USI's investment of time, training, money, trust, exposure to the public, or exposure to clients and other business relationships during the course of their employment with USI, have gained a high level of notoriety, fame, reputation, or public persona as USI's representatives and spokespersons and have gained a high level of influence or credibility with USI's

clients and other business relationships.  Each of the Counterclaim Defendants are also in possession of selective or specialized skills, learning, or abilities and customer contacts and customer information and have obtained such skills, learning, abilities, contacts, and information by reason of having worked for USI.

### The Counterclaim Defendants' Improper Attempted Terminations Without Notice

69.    On December 9, 2019, without providing any advance notice, the Counterclaim Defendants abruptly and unexpectedly attempted to terminate their employment with USI, effective immediately.  A true and correct copy of Dean Anderson's purported letter of resignation that he submitted on December 9, 2019 to Rob Myers, Senior Vice President/Property Casualty Leader for USI, is attached to the Allen Declaration as Exhibit F.  A true and correct copy of Roger Maldonado's letter of resignation that he submitted on December 9, 2019 to Dean Anderson, National Practice Leader P&C at USI, is attached to the Allen  Declaration as Exhibit G.  A true and correct copy of Taylor Anderson's purported letter of resignation that he submitted on December 9, 2019 to Robert Allen, P&C Practice Leader at USI, is attached to the Allen Declaration as Exhibit H.  The Counterclaim Defendants' letters are referred to herein collectively as the "Letters."

70.     Pursuant to the Letters, the Counterclaim Defendants' resignations were purported to be effective immediately, notwithstanding the notice requirements in the contracts of both Dean Anderson and Taylor Anderson.

71.     The Counterclaim Defendants' resignations were clearly planned in advance and coordinated.  They occurred within minutes of each other, and the letters of resignation used nearly identical language.  Further, each of the Counterclaim Defendants was represented by the same attorney, who, on information and belief, was present in USI's building at the time the resignations occurred.  At or before the time they submitted the Letters to USI, the Counterclaim Defendants each sent nearly identical notices to clients of USI informing them of their immediate departure.

72.     The Counterclaim Defendants diligently prepared for their orchestrated resignation prior to submitting their resignation. For example, on or about November 18, 2019, Taylor Anderson and Roger Maldonado met with David Brosbell, a Senior Partner at Purves Redmond Limited, in Mr. Brosbell's Toronto office. Since 2012, Mr. Brosbell had been the Canadian broker for insurance products and services for Field Aerospace, a client of USI. As part of his role, Mr. Brosbell provided recommendations to Field Aerospace on American insurance brokers, and from 2012 through December 2019, Mr. Brosbell recommended that Field Aerospace

place their insurance with USI. When Taylor Anderson and Roger Maldonado met with Mr. Brosbell on or about November 18, 2019 in Toronto, these Counterclaim Defendants informed Mr. Brosbell that they intended to resign from USI and join The Lockton Companies, but that they had not informed USI of their intention to resign. Upon hearing Taylor Anderson and Roger Maldonado's intention of leaving USI and joining The Lockton Companies, Mr. Brosbell told them that he would recommend that Field Aerospace switch its American broker to The Lockton Companies after they joined The Lockton Companies. Soon after that meeting in Mr. Brosbell's Toronto office, Mr. Brosbell, Taylor Anderson and Roger Maldonado went to dinner with several representatives of Field Aerospace.

73.     On or about this same time period, both Taylor Anderson and Roger Maldonado spoke directly with Brian Love at Field Aerospace and Taylor Anderson specifically told Mr. Love that he was considering joining Lockton.

74.     On or about December 3, 2019, Taylor Anderson also texted with someone with Genesys Aerosystems Group, Inc. ("Genesys") to let that person know that everything was on track and that Taylor Anderson should be calling him sometime the following week. The timing of this communication to the Genesys representative and the vague references to something being completed and Mr. Anderson's calling him the next week all but confirms that Mr. Anderson and this

representative previously had discussed Mr. Anderson's scheduled departure from USI prior to December 9, 2019.

75.     In addition, on information and belief, Dean Anderson contacted two client contacts with one of USI's municipal clients, on December 6, 2019, the business day before he attempted to resign.

76.     In connection with his resignation, Roger Maldonado sent an e-mail to many of USI's aviation clients informing them of his resignation from USI, including two people (Rich Enderle and Rob Dodson) with USI client, Arista Aviation Services, an affiliate of Brightwater Partners.  A true and correct copy of Roger Maldonado's December 9, 2019 email to USI's clients is attached to the Allen Declaration as Exhibit I.

77.     In connection with his attempted resignation, Taylor Anderson sent an e-mail to certain of USI's clients, including several people with USI client, Tenax Aerospace: Abbie Rushing, Linda Jagger, Lisa Barefoot, and Tim Cantrell; David Sosa, the Principal of USI client, Brightwater Partners; at least two people with USI client, Arista Aviation Services, an affiliate of Brightwater Capital; several people at USI client, In-Flight Crew Connections, LLC, including Jennifer Guthrie, Irena Leigh, and Bryan Smith; and Chris Crutchfield and another individual at USI client

Rally Point Management, LLC.   A true and correct copy of Taylor Anderson's December 9, 2019 email to clients is attached to the Allen Declaration as Exhibit J.

78.     In connection with his attempted resignation, Dean Anderson also sent an e-mail to certain of USI's clients, including two people at USI client, In-Flight Crew Connections, LLC, Jennifer Guthrie and Irena Leigh.  A true and correct copy of Dean Anderson's December 9, 2019 email to clients is attached to the Allen Declaration as Exhibit K.

79.     USI did not consent to or instruct the Counterclaim Defendants to send these emails to its clients.  The Counterclaim Defendants likely contacted USI's clients only to disrupt USI's business, and to capitalize on that disruption to try to induce USI's clients to move their accounts to The Lockton Companies, and in an effort to improperly solicit the business of those clients on behalf of The Lockton Companies.

80.     Moreover, Taylor Anderson and Roger Maldonado continued to communicate with Mr. Brosbell about USI's client, Field Aerospace, after their purported resignation or resignation on December 9, 2019. Notably, soon after they purported to resign or resigned, on December 11, 2019, Roger Maldonado sent Mr. Brosbell contact information for an employee of The Lockton Companies, Manoj Sharma, that Mr. Brosbell could forward to the Field Aerospace representatives to

facilitate Field Aerospace's switch of business to The Lockton Companies. Brosbell, who had had no prior dealings with Manoj Sharma, sent the contact information to the Field Aerospace representatives via email within an hour of receiving it from Roger Maldonado. One minute after sending the contact information to Field Aerospace, Mr. Brosbell exchanged text messages with Roger Maldonado confirming that he had sent the solicitation email and that Mr. Maldonado was aware in advance that Mr. Brosbell would be sending the solicitation email. Soon thereafter, either Roger Maldonado or Taylor Anderson told Mr. Brosbell that The Lockton Companies still had not received a broker of record transfer letter from Field Aerospace, so Mr. Brosbell once again reached out to a representative of Field Aerospace encouraging him to send the transfer forms to The Lockton Companies.

81.    As such, Roger Maldonado and Taylor Anderson were actively involved in coordinating with Mr. Brosbell regarding his solicitation of Field Aerospace to move its business from USI to The Lockton Companies – both before and after December 9, 2019.

82.    At or before the time the Counterclaim Defendants submitted the Letters to USI, they updated their LinkedIn information to announce that they were affiliating with The Lockton Companies, a direct competitor of USI.  Dean Anderson immediately listed his new position on LinkedIn as "Senior Vice President &

Aviation Practice Leader at Lockton Companies SE Series." Roger Maldonado listed his new position on LinkedIn as "Senior Vice President, Producer at Lockton Companies." Taylor Anderson immediately listed his new position on LinkedIn as "Senior Vice President, Defense & Aerospace at Lockton Companies." True and correct copies of screen shots of Dean Anderson, Roger Maldonado, and Taylor Anderson's LinkedIn profiles as of December 9, 2019 are collectively attached to the Allen Declaration as Exhibit L. These positions are substantially similar to the positions Dean Anderson and Taylor Anderson currently hold and that Roger Maldonado previously held at USI. The Counterclaim Defendants are believed to be working in the Atlanta office of The Lockton Companies and will be doing business on its behalf in the Atlanta area, elsewhere in the Southeast, and likely nationally. Each of the Counterclaim Defendants have resided in Atlanta for an extended period, have established themselves both personally and professionally in Atlanta, and have indicated no intention of relocating from Atlanta.

83. Following their attempted resignations, the Counterclaim Defendants have not returned to work for USI. However, with respect to Dean Anderson and Taylor Anderson, USI has taken and continues to take the position that their employment has not been validly or properly terminated because the letters of resignation were provided without the proper notice. USI does not accept Dean

Anderson's or Taylor Anderson's purported immediate resignations and continues to pay them as current employees and intends to do so through and including February 7, 2020.   For Dean Anderson and Taylor Anderson, their obligations under the Agreements as current employees remain in effect through and including February 7, 2020, their last day of employment with USI.   For Dean Anderson and Taylor Anderson, their post-termination obligations under the Agreements start as of February 8, 2020.   For Roger Maldonado, his post-termination obligations under the Agreements started on December 9, 2019.

84.    Both prior to and since attempting to resign their employment from USI, the Counterclaim Defendants have been actively working in a capacity that is directly competitive to the business of USI.

85.    As one example, rather than renewing Brightwater Partners' policy when it was up for renewal on November 8, 2019, the Counterclaim Defendants only extended the term of the policy by thirty (30) days.   Roger Maldonado gave the instruction to bind the short-term extension.   This activity was outside the ordinary behavior typical for how Mr. Maldonado would handle the renewal of a policy for a USI client.   The Counterclaim Defendants likely extended the renewal so that they could transition the account to their new employer, The Lockton Companies, after their resignations became effective.

86.     On December 17, 2019, USI received a broker of record change letter dated December 11, 2019 providing notice that Brightwater Capital, Arista Aviation Services and their affiliates were transferring their entire insurance brokerage relationship away from USI to The Lockton Companies.  A true and correct copy of the broker of record change letter is attached to the Allen Declaration as Exhibit M.

87.     On or about December 17, 2019, USI also received a broker of record change letter providing notice that In-Flight Crew Connections, LLC, one of the companies contacted by both Dean Anderson and Taylor Anderson, was transferring its account away from USI, likely to The Lockton Companies.  A true and correct copy of the broker of record change letter is attached to the Allen Declaration as Exhibit N.

88.     On December 17, 2019, USI also received a broker of record change letter providing notice that Rally Point Management, one of the companies contacted by Taylor Anderson, was transferring its account away from USI to The Lockton Companies.  A true and correct copy of the broker of record change letter is attached to the Allen Declaration as Exhibit O.

89.     Since the Counterclaim Defendants' departures from USI, some of USI's larger aviation clients either have not been responsive to communications from USI, expressed concern that USI no longer had the capacity to handle their accounts,

or provided USI with a list of items to complete in a very short time frame. The lists provided by the clients contained items that were not on the open items lists provided by the Counterclaim Defendants in the Letters.

90.     With one exception, every team member from USI's National Aviation Practice Group has been contacted by Janet Shulman, the in-house recruiter at The Lockton Companies, during the time period from October 2019 through the present. Ms. Shulman informed the USI employees, in substance, that there would be substantial departures on the team and that The Lockton Companies was expanding its aviation business. In the wake of the Counterclaim Defendants' announcements of their departures, two additional employees working in USI's National Aviation Practice Group have informed USI that they are resigning to accept employment with The Lockton Companies. These two employees, Rikin Patel and Kimberly Grier, worked closely with the Counterclaim Defendants and served important support roles in servicing the clients of USI's National Aviation Practice Group. Ms. Grier was an Account Executive who was skilled in client strategy. Mr. Patel, who was in USI's training program, was responsible for creating the business plan for USI's National Aviation Practice Group and gained a detailed knowledge of the practice group. The departure of these two employees has further disrupted USI's ability to service its clients' accounts. In fact, these two employees are listed in the

Letters as being responsible or capable of handling near-term needs of USI's clients in the wake of the Counterclaim Defendants' departures.

91.    A current employee of USI's National Aviation Practice Group has indicated that when she was contacted by The Lockton Company's internal recruiter in October 2019, she reported the call to Dean Anderson and Mr. Anderson told her she should call the recruiter back because her job was in jeopardy and he could not assure her that she would still have a job at USI at the end of the year.

92.    According to the employee, several months before his resignation, Dean Anderson made it known to his team that he would be leaving USI, purposely giving employees the impression that their jobs were in jeopardy.

## Irreparable Harm to USI Caused by the Counterclaim Defendants' Attempted Resignations

93.    The provisions within the DA Employment Agreement and the TA Employment Agreement that require Dean Anderson and Taylor Anderson respectively, to provide sixty (60) days' notice prior to termination are necessary to allow an orderly transition for USI prior to their departure.  The sixty (60) day notice period contained within the DA Employment Agreement and the TA Employment Agreement is especially important in the context of aviation insurance because the members of USI's National Aviation Practice Group have specialized knowledge that is not easily replicable from others within the company.

94.    USI needs employees to remain employed during the sixty (60) day period so that they can provide a complete work list of all items that need to be addressed for USI's clients and to allow USI to recruit, reassign, or otherwise get other employees up to speed on the client accounts handled by the departing employees.  The Counterclaim Defendants did not adequately transition their work prior to abandoning employment with USI, which risks substantial harm to USI and USI's clients.

95.    USI is currently servicing over 140 aviation accounts with varying and unique needs.  Employee departures without providing sufficient notice hinders USI's ability to compile a compete active open list of items for clients so that it may continue to service its clients effectively.

96.    The end of the calendar year is a particularly sensitive time for employee departures to disrupt client relationships in the insurance brokerage industry because clients are in the process of renewing their insurance coverage and because clients are preparing to be away from the office for the holidays.

97.    The Counterclaim Defendants' purported resignation letters contain a few examples of upcoming needs of client accounts, but the lists are far from complete.  The lists do not include all upcoming needs nor do they propose a reasonable solution for addressing those needs.  Just one example of the many

inadequacies with the partial list is that Dean Anderson points to Roger Maldonado as being able to handle certain open client items listed in his letter, with full knowledge that Roger Maldonado would be resigning simultaneously in the Counterclaim Defendants' coordinated departure. USI is in the process of reviewing the client accounts to ensure that it can meet its clients' needs. The process is exponentially more difficult without having the ability to get information from the Counterclaim Defendants.

98.     The Counterclaim Defendants' emails notifying clients of their purported abrupt resignations have caused certain clients to reach out to USI out of concern regarding how their accounts will be handled. Fielding these inquiries caused by the Counterclaim Defendants' improper communication with USI's clients regarding their abrupt purported resignations takes time away from reviewing the accounts to determine upcoming deadlines and time sensitive needs of clients.

99.     Causing this disruption was likely all part of the Counterclaim Defendants' coordinated plan to accept employment with a competitor and to try to induce USI's clients to transfer their accounts to The Lockton Companies so that the Counterclaim Defendants could reap substantial compensation for bringing the clients to The Lockton Companies.

100.   Because the aviation insurance brokerage business is a very small and specialized niche area of the insurance market, few individuals have knowledge of and experience with this business.  USI will have substantial difficulty finding immediate replacements for the Counterclaim Defendants, but would have been more likely to have accomplished this if given the benefit of the 60-day notice requirement in Dean Anderson's and Taylor Anderson's contracts.

101.   By virtue of their conduct, the Counterclaim Defendants have directly violated their non-competition covenants to USI as set forth in the Agreements, and Dean Anderson and Taylor Anderson have violated their notice requirements and certain other of their duties as current employees set forth in the Agreements.

102.   The Counterclaim Defendants' improper competition has caused, and threatens to cause, USI substantial harm. Among other damages, the Counterclaim Defendants' conduct substantially risks undermining and damaging USI's goodwill from its employees, clients, and potential clients.  Further, the Counterclaim Defendants' attempted departures have created significant disruption in USI's ability to service its accounts for its accounts for its aviation clients.

103.   The Counterclaim Defendants agreed in the Agreements that the services they rendered to USI were of a "special, unique, and extraordinary character" and that it would be "extremely difficult or impracticable to replace such

services" and that any breach of the restrictive covenants contained in the Agreements would "result in irreparable harm to [USI] for which money damages alone would not be adequate compensation."  The Counterclaim Defendants agreed that USI would be entitled to equitable relief, including, without limitation a temporary and permanent injunction.  (DA Employment Agreement, § 9; RM Employment Agreement, § 5; TA Employment Agreement, § 9.)

104.  If the Counterclaim Defendants are not enjoined from their unfair competition, USI will continue to suffer continuing, additional, and irreparable harm.

### USI's Code of Business Conduct

105.  As employees of USI, the Counterclaim Defendants are, in the case of the Dean Anderson and Taylor Anderson, and were, in the case of Roger Maldonado, obligated to comply with the USI Code of Business Conduct (the "Business Code"), a true and correct copy of which is attached to the Allen Declaration as Exhibit P. The Business Code specifically provides that employees must not work for another organization while employed by USI if a conflict of interest exists, or creates an appearance of a conflict, or if such employment interferes with their responsibilities as a USI employee.  (Business Code, § III(A)(3).)

106.   The Business Code also required USI employees to avoid any kind of conflict, or an appearance of impropriety, between their personal interests and those of USI.  (Id., § III(A).)

107.   Each employee, including the Counterclaim Defendants, executed an electronic acknowledgment that they agreed to the Business Code.

## COUNT ONE:
## BREACH OF NOTICE PROVISIONS OF THE AGREEMENTS
### (Dean Anderson and Taylor Anderson)

108.   USI restates and incorporates herein by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

109.   The Notice Provisions, contained in Section 8.2 of the DA Employment Agreement and Section 8.2 of the TA Employment Agreement, are reasonable and necessary to protect the legitimate business interests of USI.

110.   As set forth above, in the Notice Provisions, Counterclaim Defendants Dean Anderson and Taylor Anderson agreed to provide sixty (60) days' advance written notice to USI prior to terminating their employment.

111.   Through the conduct described above, Counterclaim Defendants Dean Anderson and Taylor Anderson have directly violated these provisions within the Agreements by submitting letters of resignation to USI on December 9, 2019 that purported to be effective immediately.

112.   Further, Counterclaim Defendants Dean Anderson and Taylor Anderson also breached the Notice Provisions by accepting employment with The Lockton Companies, a direct competitor of USI; competing against USI with respect to USI's Client Accounts and Active Prospective Clients, and taking other actions contrary to USI's interest during the time period when they were still employees of USI.

113.   Counterclaim Defendants Dean Anderson and Taylor Anderson's conduct constitutes a breach of numerous additional sections of the DA Employment Agreement and the TA Employment Agreement, including the section prohibiting conflicts of interest (DA Employment Agreement, § 2.2; TA Employment Agreement, § 2.3) and the section establishing a duty of loyalty (DA Employment Agreement, § 2.3; TA Employment Agreement, § 2.4.)

114.   By virtue of this conduct, Counterclaim Defendants Dean Anderson and Taylor Anderson have breached and continue to breach the Notice Provisions along with other related provisions within the DA Employment Agreement and the TA Employment Agreement.

115.   As a result of Counterclaim Defendants Dean Anderson and Taylor Anderson's breaches of the Agreements, USI has suffered, and is likely to continue to suffer, substantial injury, including in the form of significant disruption in its

ability to service its accounts for its aviation clients, lost business opportunities, lost profits, and damage to USI's goodwill from its employees, clients, and potential clients.

116.   Accordingly, USI is entitled to preliminary and permanent injunctive relief prohibiting Counterclaim Defendants Dean Anderson and Taylor Anderson from continuing to breach the Notice Provisions and requiring them to continue their employment with USI for sixty (60) days from the date they submitted their purported letters of resignation, and to monetary damages for the damages caused to USI by these breaches.

## COUNT TWO
## BREACH OF THE NON-COMPETE COVENANT OF THE DA EMPLOYMENT AGREEMENT
### (Dean Anderson)

117.   USI restates and incorporates herein by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

118.   The Non-Compete Covenant, contained in Section 7.5 of the DA Employment Agreement, is reasonable and necessary to protect the legitimate business interests of USI.

119.   As set forth above, in the Non-Compete Covenant, Dean Anderson agreed not to compete with USI by acting in a similar capacity on behalf of a

Competitive Business or performing similar functions on behalf of a Competitive Business within the Restricted Geographic Area during the term of his employment with USI (through February 7, 2020) and for six months thereafter (from February 8, 2020 through August 8, 2020).

120.   Through the conduct described above, Dean Anderson has directly violated the Non-Compete Covenant, including by serving as a Vice President of The Lockton Companies, working for and on behalf of a Competitive Business acting in a similar capacity and performing similar functions to his role at USI.  Dean Anderson's conduct occurred within the Restricted Geographic Area during the term of his employment.

121.   Although Dean Anderson's mere (and admitted) acceptance of employment with a direct competitor of USI, The Lockton Companies, constitutes a violation of his non-competition covenant, there is substantial evidence that Dean Anderson has been and is already actively working on behalf of The Lockton Companies to transfer business from USI to The Lockton Companies and to try to encourage USI's employees to leave for The Lockton Companies.

122.   By virtue of this conduct, Dean Anderson has breached the Non-Compete Covenant.

123.   As a result of Dean Anderson's improper competition, USI has suffered, and is likely to continue to suffer, substantial injury, including in the form of lost business opportunities, lost profits, and damage to USI's goodwill from its employees, clients, and potential clients.

124.   Accordingly, USI is entitled to preliminary and permanent injunctive relief prohibiting Dean Anderson from continuing to breach his non-competition obligations in the DA Employment Agreement, and to monetary damages for the damages caused to USI by these breaches.

### COUNT THREE:
### BREACH OF THE CLIENT NON-COMPETE COVENANTS OF THE AGREEMENTS
### (All Counterclaim Defendants)

125.   USI restates and incorporates herein by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

126.   The Client Non-Compete Covenants, contained in Section 7.6 of the DA Employment Agreement and the TA Employment Agreement and Section 4.6 of the RM Employment Agreement, are reasonable and necessary to protect the legitimate business interests of USI.

127.   As set forth above, in the Client Non-Compete Covenants, the Counterclaim Defendants agreed not to carry on any business in competition with

USI by engaging in certain prohibited conduct within the Geographic Area during the terms of their employment and for two (2) years thereafter.

128.   Substantial evidence exists that the Counterclaim Defendants have been violating their Client Non-Compete Covenants, including:

- Evidence of Taylor Anderson's involvement in moving the business of USI client Tenax Aerospace from USI to The Lockton Companies;

- Evidence of Taylor Anderson and Roger Maldonado's involvement in moving the business of USI client Brightwater Partners and its affiliate, Arista Aviation Services, from USI to The Lockton Companies;

- Evidence of both Taylor Anderson's and Dean Anderson's involvement in moving the business of USI client In-Flight Crew Connections, LLC from USI, likely to The Lockton Companies; and

- Evidence of Taylor Anderson's involvement in moving the business of USI client Rally Point Management, LLC from USI to The Lockton Companies.

129.   Through the conduct described above, the Counterclaim Defendants have directly violated the Client Non-Compete Covenants, including by actively working for and on behalf of a Competitive Business in the same markets as USI, with a product or service of USI as to which the Counterclaim Defendants had a role in the sale, marketing, distribution, or development during the terms of their employment with USI or within two (2) years thereafter.

130.   By virtue of this conduct, the Counterclaim Defendants have breached the Client Non-Compete Covenants.

131.   As a result of the Counterclaim Defendants' improper competition, USI has suffered, and is likely to continue to suffer, substantial injury, including in the form of lost business opportunities, lost profits, and damage to USI's goodwill from its employees, clients, and potential clients.

132.   Accordingly, USI is entitled to preliminary and permanent injunctive relief prohibiting the Counterclaim Defendants from continuing to breach their non-competition obligations in the Agreements, and to monetary damages for the damages caused to USI by these breaches.

## COUNT FOUR:
## BREACH OF NON-SOLICITATION COVENANTS OF THE AGREEMENTS
**(All Counterclaim Defendants)**

133.   USI restates and incorporates herein by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

134.   The  Non-Solicitation Covenants, contained in Section 7.7 of the DA Employment Agreement, Section 7.5 of the TA Employment Agreement, and Section 4.5 of the RM Employment Agreement, are reasonable and necessary to protect the legitimate business interests of USI.

135.   As set forth above, in the Non-Solicitation Covenants, the Counterclaim Defendants agreed, among other things, to refrain from indirectly or directly soliciting Client Accounts or Active Potential Clients of USI on behalf of any Competitive Business during the term of their employment and for a period of two (2) years thereafter.

136.   Through the conduct described above, the Counterclaim Defendants have directly violated the Non-Solicitation Covenant, including by emailing clients of USI's National Aviation Practice Group with whom they had not previously had contact to notify them of their departure, for the purpose of diverting or attempting to divert services away from USI with respect to existing USI Client Accounts and inducing the termination, cancellation or non-renewal of existing USI Client Accounts.  In fact, Tenax Aerospace, one of the companies Taylor Anderson emailed

to notify of his departure on December 9, 2019, has already submitted a BOR Contract changing its broker of record from USI to The Lockton Companies.

137.   By virtue of this conduct, the Counterclaim Defendants have breached the Non-Solicitation Covenants.

138.   As a result of the Counterclaim Defendants' improper solicitation, USI has suffered, and is likely to continue to suffer, substantial injury, including in the form of lost business opportunities, lost profits, and damage to USI's goodwill from its employees, clients, and potential clients.

139.   Accordingly, USI is entitled to preliminary and permanent injunctive relief prohibiting the Counterclaim Defendants from continuing to breach their non-solicitation obligations in the Agreements, and to monetary damages for the damages caused to USI by these breaches.

**COUNT FIVE:**
**BREACH OF DUTY OF LOYALTY**
**(All Counterclaim Defendants)**

140.   USI restates and incorporates herein by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

141.   During their employment with USI, Counterclaim Defendants Dean Anderson and Taylor Anderson owed USI both a contractual and common law duty

of loyalty and good faith and Counterclaim Defendant Roger Maldonado owed USI a common law duty of loyalty and good faith.

142.   Pursuant to the duty of loyalty under the Agreements, Dean Anderson and Taylor Anderson each agreed to use their best efforts to faithfully, diligently and completely perform all duties and responsibilities under the DA Employment Agreement and the TA Employment Agreement, respectively, in further of the business of USI.

143.   The Counterclaim Defendants breached their duty of loyalty and good faith to USI by working with The Lockton Companies while employed by USI.

144.   Dean Anderson and Taylor Anderson's actions in support of The Lockton Companies even precede their purported (but ineffective) resignations from USI. In addition, Roger Maldonado also worked to aid The Lockton Companies prior to his resignation. The evidence indicates that the Counterclaim Defendants worked to move USI's clients over to The Lockton Companies, even though they still remain employed by USI. For example, Taylor Anderson and Roger Maldonado worked together with David Brosbell of Purves Redmond Limited to plan for the solicitation of USI's client, Field Aerospace, at least a couple of weeks before purporting to resign or resigning. Prior to December 9, 2019, Taylor Anderson informed Brian Love, a representative of Field Aerospace, that he was considering a move to

Lockton. Furthermore, Taylor Anderson texted with another USI client, Genesys, just few days before his purported resignation to update that client that he was working through things and would call him the following week, all but confirming that Taylor Anderson had told such USI client about his upcoming purported resignation. Upon information and belief, Dean Anderson contacted two client contacts with one of USI's municipal clients, on December 6, 2019, the business day before he attempted to resign.

145.   As the Andersons' resignation was ineffective as of December 9, 2019 due to the notice requirements in the Agreements, all of Dean Anderson and Taylor Anderson's conduct through February 7, 2020 that was for the benefit of The Lockton Companies was a breach of their duty of loyalty to USI.

146.   Roger Maldonado's pre-December 9, 2019 conduct and the Andersons' conduct during the time period up and until February 7, 2020 caused several USI clients to transfer their business from USI to The Lockton Companies, while the Counterclaim Defendants remained employees of and were paid by USI.

147.   USI has been injured as a proximate result of the breaches of the duty of loyalty and good faith by the Counterclaim Defendants.

148.   The breaches of the duty of loyalty and good faith the Counterclaim Defendants were willful and malicious.

149.   USI is entitled to recover compensatory damages, in an amount to be proven at trial, and punitive damages from the Counterclaim Defendants for their breach of the duty of loyalty and good faith.

## COUNT SIX
## BREACH OF FIDUCIARY DUTY
### (All Counterclaim Defendants)

150.   USI restates and incorporates herein by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

151.   During their employment with USI, the Counterclaim Defendants owed USI a fiduciary duty.

152.   As the Counterclaim Defendants have been employed by USI pursuant to the Agreements, they were privy to confidential information concerning USI's business activities.

153.   Dean Anderson and Taylor Anderson agreed use their best efforts to faithfully, diligently and completely perform all duties and responsibilities under their Agreement. (DA Employment Agreement, § 2.3; TA Employment Agreement, § 2.4.)  These duties included Dean Anderson's duty to refrain from competing against USI (DA Employment Agreement, § 7.5), Dean and Taylor Andersons' duty to refrain from competing with USI with respect to Client Accounts (DA Employment Agreement, § 7.6; TA Employment Agreement, § 7.6), and Dean and

Taylor Anderson's duty to refrain from soliciting Client Accounts and Active Prospective Clients from USI.   (DA Employment Agreement, § 7.7; TA Employment Agreement, § 7.5).  Dean and Taylor Anderson also had a duty not to undermine USI's goodwill from its employees, clients, and potential clients on behalf of a Competitive Business.

154.   Roger Maldonado agreed to refrain from competing with USI with respect to Client Accounts (RM Employment Agreement, § 4.6) and to refrain from soliciting Client Accounts and Active Prospective Clients from USI. (RM Employment Agreement, § 4.5). Roger Maldonado also had a duty not to undermine USI's goodwill from its employees, clients, and potential clients on behalf of a Competitive Business.

155.   The Counterclaim Defendants breached their fiduciary duty to USI by working to support and/or with The Lockton Companies while employed by USI prior to their resignation or purported resignation on December 9, 2019.

156.   Roger Maldonado breached his fiduciary duty by competing with USI while still employed and compensated by USI, using USI's resources to do so during the time they were employed by USI, and joining and/or working in conjunction with The Lockton Companies while he remained an USI employee up until December 9, 2019. For example, Roger Maldonado worked together with David

Brosbell of Purves Redmond Limited to plan for the solicitation of USI's client, Field Aerospace, at least a couple of weeks before resigning from USI on December 9, 2019.

157.   As Dean and Taylor Anderson's resignation was not effective until February 7, 2020, Dean and Taylor breached their fiduciary duty to USI by competing with USI while still employed and compensated by USI, using USI's resources to do so during the time they were employed by USI, and joining and/or working in conjunction with The Lockton Companies while they remained USI employees. The Andersons' tortious conduct began prior to the date they attempted to resign, December 9, 2019, and continued up until the effective date of their resignation, February 7, 2020.

158.   Dean and Taylor Anderson further breached their fiduciary duties to USI by helping solicit Client Accounts to leave USI and to enter into contractual arrangements with The Lockton Companies while they were still employed by USI up until February 7, 2020.

159.   USI has been injured as a proximate result of the breach of fiduciary duty by the Counterclaim Defendants.

160.   The breach of fiduciary duty by the Counterclaim Defendants was willful and malicious.

161.   USI is entitled to recover compensatory damages, in an amount to be proven at trial, and punitive damages from the Counterclaim Defendants for the breach of their fiduciary duty.

## COUNT SEVEN:
## INJUNCTIVE RELIEF
### (All Counterclaim Defendants)

162.   USI restates and incorporates herein by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

163.   As set forth above, the Counterclaim Defendants have breached their contractual notice, non-competition, non-solicitation, and other contractual obligations to USI.

164.   The Counterclaim Defendants' conduct in actively, surreptitiously, and deceptively competing with USI demonstrates that, if not enjoined, the Counterclaim Defendants are likely to continue to cause USI substantial and irreparable harm.

165.   More specifically, as described above, the Counterclaim Defendants are actively in the process of transferring USI's aviation clients from USI to The Lockton Companies, and have already had some success in their unlawful efforts to take USI's business.

166.   USI does not have an adequate remedy at law for the harm the Counterclaim Defendants have already caused and are likely to continue to cause,

including the loss of and damage to the goodwill of USI's employees, clients, and potential clients.  The amount of such damages would be significant, but difficult to determine specifically.

167.   The Counterclaim Defendants agreed in the Agreements that, under the present circumstances, USI is entitled to injunctive relief in order to enforce the restrictive covenants in the Agreements. (*See* DA Employment Agreement, § 9; TA Employment Agreement, § 9; RM Employment Agreement, § 5.)

168.   Accordingly, USI is entitled to preliminary and permanent injunctive relief prohibiting the Counterclaim Defendants from continuing to breach the Notice Provisions, the Non-Compete Covenant, the Client Non-Compete Covenants, the Non-Solicitation Provisions, and the Duty of Loyalty Provisions in the Agreements. USI is further entitled to injunctive relief requiring the Counterclaim Defendants to comply with their obligations under Sections 2.3, 7.5, 7.6, 7.7 and 8.2 of the DA Employment Agreement; Sections 2.4, 7.5, 7.6, and 8.2 of the TA Employment Agreement, and Sections 4.5 and 4.6 of the RM Employment Agreement.

## COUNT EIGHT:
## ATTORNEYS' FEES
### (All Counterclaim Defendants)

169.   USI restates and incorporates herein by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

170.   The Counterclaim Defendants acted in bad faith in breaching the notice provisions and restrictive covenants in the Agreements.

171.   The Counterclaim Defendants acted in bad faith in breaching their duty of loyalty and good faith, as well as their fiduciary duty.

172.   By virtue of the conduct described above, the Counterclaim Defendants have acted in bad faith, been stubbornly litigious and have caused USI unnecessary trouble and expense.

173.   Pursuant to O.C.G.A. § 13-6-11, USI is entitled to its costs and expenses, including reasonable attorneys' fees.

**COUNT NINE**
**PUNITIVE DAMAGES**
**(All Counterclaim Defendants)**

174.   USI restates and incorporates herein by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

175.   The Counterclaim Defendants' foregoing tortious conduct was willful misconduct and demonstrated malice, wantonness, an entire want of care, and conscious indifference towards the consequences of their actions, and such conduct was undertaken with the specific intent to harm USI.

176.   Punitive damages should be awarded in an amount sufficient to deter, penalize, and punish the Counterclaim Defendants in light of the circumstances of this case.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaim Plaintiff USI respectfully requests the following relief:

(a)    That the Court enjoin Counterclaim Defendants Dean Anderson and Taylor Anderson from terminating their employment with USI until after the expiration of the sixty (60) days written notice provision within their Agreements and providing that Dean and Taylor Anderson remain employees of USI throughout the duration of this 60-day period, through February 7, 2020;

(b)    That the Court enjoin Counterclaim Defendants Dean Anderson and Taylor Anderson from competing with USI or taking actions contrary to USI's interests during the period of time that they remain employed by USI (*i.e.*, through February 7, 2020), in violation of their contractual and common law duties of loyalty and fiduciary duties to USI, including prohibiting them during this time period from providing services to USI's direct competitor, The Lockton Companies, while still employed by USI;

(c)     That the Court enjoin Counterclaim Defendant Dean Anderson from further violation of his non-competition covenant that precludes him from being employed by one of USI's competitors in the restricted geographic area both during the term of his employment for USI (*i.e.*, through February 7, 2020) and for a period of six (6) months after the termination of his employment with USI (*i.e.*, through August 8, 2020);

(d)     That the Court enjoin all of the Counterclaim Defendants from violating their agreements not to compete with USI with regard to Client Accounts or Active Prospective Clients, as defined by their agreements, during the remaining term of employment for Dean Anderson and Taylor Anderson and, for all Counterclaim Defendants, a period of two (2) years after the effective dates of their respective terminations from USI;

(e)     That the Court enjoin all of the Counterclaim Defendants from violating their agreements not to solicit USI's Client Accounts or Active Prospective Clients, as defined by their agreements, during the remaining term of employment for Dean Anderson and Taylor Anderson and, for all Counterclaim Defendants, a period of two (2) years after the effective dates of their respective terminations from USI;

(f)     That the Court award compensatory and punitive damages arising from the Counterclaim Defendants breaches of   the Agreements, including the Counterclaim Defendants' duty of loyalty and good faith and fiduciary duty;

(g)     That the Court award USI all attorneys' fees and costs it has incurred and will incur in connection with this action; and

(h)     That the Court award of such other and further relief as it deems just and proper.

Respectfully submitted this 24th day of June, 2020.

**PARKER HUDSON RAINER & DOBBS LLP**

/s/ Jared C. Miller
Nancy H. Baughan
Georgia Bar No. 042575
Jared C. Miller
Georgia Bar No. 142219
Matthew M. Weiss
Georgia Bar No. 718795
303 Peachtree Street, NE, Suite 3600
Atlanta, Georgia 30303
Phone: (404) 523-5300
Fax: (404) 522-8409
E-mail:    nbaughan@phrd.com
               jmiller@phrd.com
               mweiss@phrd.com

*Attorneys for USI Insurance Services LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served a copy of the within and foregoing

**DEFENDANT   USI   INSURANCE   SERVICES   LLC'S   AMENDED**

**COUNTERCLAIM** upon all parties to this matter by electronically filing a copy of

same with the Court's CM/ECF system, which will automatically send an electronic

copy to the following counsel of record:

> Warren R. Hall, Jr., Esq.
> Wayne M. Cartwright, Esq.
> Hall, Gilligan, Roberts & Shanlever, LLP
> 3340 Peachtree Road – Suite 1900
> Atlanta, Georgia 30326

This 24th day of June, 2020.

> <u>/s/ Jared C. Miller</u>
> Jared C. Miller