# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **JAMESON TAYLOR ANDERSON, ROBERT DEAN ANDERSON, and ROGER MALDONADO,** | **Civil Action File No.** |
| **Plaintiffs,** | **1:19-cv-05582-SCJ** |
| **v.** | |
| **USI INSURANCE SERVICES LLC,** | |
| **Defendant.** | |

## <u>MEMORANDUM OF LAW IN SUPPORT OF USI INSURANCE SERVICES LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

**PARKER, HUDSON, RAINER & DOBBS LLP**

Nancy H. Baughan
Georgia Bar No. 042575
Jared C. Miller
Georgia Bar No. 142219
Julie A. Wood
Georgia Bar No. 023749
Matthew W. Weiss
Georgia Bar No. 718795

303 Peachtree Street, NE
Suite 3600
Atlanta, Georgia 30308
Telephone: (404) 523-5300
Facsimile: (404) 522-8409
nbaughan@phrd.com
jmiller@phrd.com
jwood@phrd.com
mweiss@phrd.com

The Court should grant summary judgment in favor of USI Insurance Services LLC ("USI") as to liability on certain of its claims against Jameson Taylor Anderson ("Taylor"), Robert Dean Anderson ("Dean"), and Roger Maldonado ("Maldonado") (collectively, the "Former Employees") and on the Former Employees' claims against USI challenging their restrictive covenants. The undisputed record evidence establishes as a matter of law that the Former Employees breached many of the valid and enforceable provisions of their employment agreements with USI in the process of carrying out a carefully-planned, secretive scheme to brazenly ignore their contractual obligations to USI and implement a plan to unlawfully transfer as many USI clients as possible to their new employer, USI's direct competitor, for their own financial benefit. In coordination with each other and their new employer, the Former Employees effectuated this scheme by simultaneously resigning their employment with USI without providing the required contractual advance notice, by competing against USI on behalf of a competitive business within the prohibited geographic areas and with respect to USI's client accounts within the prohibited geographic areas, and by soliciting USI's customers for that competitive business.

## I.   <u>STATEMENT OF FACTS</u>

USI is a full-service risk management and insurance brokerage firm and one of the largest insurance brokerages in the United States. (USI Insurance Services LLC's

Statement of Undisputed Material Facts and Theories of Recovery ("SOF"), ¶1.) Dean Anderson was Senior Vice President, National Practice Leader – Aviation for USI and was employed by USI and its predecessors-in-interest for approximately 28 years. (SOF ¶2-3.) Dean executed an Employment Agreement containing certain restrictive covenants (the "DA Agreement"). (SOF ¶7.) The Employment Agreement allowed Dean to terminate his employment with USI only by giving USI at least 60 days' written notice. (SOF ¶8, DA Agreement, § 8.2.)

Maldonado was employed by USI and its predecessors-in-interest for approximately eight years. (SOF ¶2, 21.) Prior to his purported resignation, Maldonado was a Senior Vice President with responsibilities that included developing new and existing client relationships on a national level for USI's National Aviation Practice Group. (SOF ¶2.) Maldonado agreed to certain terms and conditions set forth in that certain Confidentiality, Non-Solicitation & Non-Interference Agreement containing certain restrictive covenants (the "RM Agreement"). (SOF ¶23.)

Taylor, Dean's son, was employed by USI and its predecessors-in-interest for nine years. (SOF ¶2, 28.) He received his start in the insurance brokerage business from USI's predecessor-in- interest. (SOF ¶29.) At USI, Taylor served as a Commercial Lines Producer handling commercial insurance, including aviation insurance. (SOF ¶30.) He agreed to certain terms and conditions set forth in an Employment Agreement

containing certain restrictive covenants (the "TA Agreement" and collectively with the DA Agreement and the RM Agreement, the "Employment Agreements"). (SOF ¶32.) Under his Employment Agreement, he could terminate his employment by giving at least 60 days' written notice to USI. (SOF ¶33, TA Agreement, § 8.2].)

In the summer and fall of 2019, the Former Employees had discussions with USI's competitor, Southeast Series of Lockton Companies, LLC ("Lockton") and each other about possible employment with Lockton. (SOF ¶56-57, 60, 65.) On October 29 and November 1, 2019, the Former Employees accepted lucrative offers of employment with Lockton, which include indemnification by Lockton if the Former Employees were sued by USI. (SOF ¶58-59, 61-63, 66-67.) Prior to notifying USI that they would be resigning to accept new employment, the Former Employees notified several USI Client Accounts about their anticipated change of employment (SOF ¶144, 166-167, 174-176, 144, 192). At the direction of their future employer, the Former Employees planned in advance to resign on December 9, 2019 without giving prior notice to USI. (SOF ¶68-76, 80.) On the morning of December 9, 2019, each of the Former Employees abruptly and unexpectedly submitted a letter of resignation in which each claimed to resign effective immediately (collectively, the "Letters"). (SOF ¶77-79 .) At or before the time they submitted the Letters to USI, the Former Employees each sent nearly identical emails informing a large group of recipients,

3

including numerous USI Client Accounts, that they were not longer employed by USI. (SOF ¶82-83.) USI did not consent to or instruct the Former Employees to send the Departure Emails to its clients. (SOF ¶84.)

Following their purported resignations from USI, the Former Employees immediately updated their LinkedIn information to announce that they were affiliated with USI's competitor Lockton. (SOF ¶86.) Further, each of the Former Employees began working for Lockton on December 9, 2019 and continued working for Lockton in its newly-formed Aviation Practice Group, including during the ensuing 60 days. (SOF ¶90-91.) Like his role at USI, Dean become the head of Lockton's Aviation Practice Group beginning on December 9, 2019. (SOF ¶93.)

As part of Dean's arrangement with Lockton, his office was officially located in Charlotte, North Carolina. In reality, Dean had the ability to conduct the same business "anywhere," report to Lockton's Atlanta office on his first day of work, and worked out of Lockton's Atlanta office for his entire first week. (SOF ¶95.) Dean continued working with members of Lockton's Atlanta-based team on client accounts that had transferred over from USI (collectively, the "USI Client Accounts"), such as In-Flight Crew Connections LLC ("ICC"), Floats & Fuel Cells, Inc. ("FFC"), System Studies & Simulation, Inc. ("S3"), National Air Cargo Holdings, Inc. ("NAC"), and AirScan, Inc. ("AirScan"). (SOF ¶108-112, 116, 118-122, 124-135, 138-140.) Dean also continued

working with underwriters based in Atlanta. (SOF ¶141-143.)

Following the Former Employees' departures from USI, as part of a pre-arranged scheme with Lockton, the Former Employees instructed current clients of USI to contact Manoj Sharma, the COO of Lockton, about transferring their accounts to Lockton. (SOF ¶145, 177-178, 180.) Some of these communications directing USI's Client Accounts to Sharma came directly from the Former Employees and some were made through intermediaries, such as David Brosbell, a Canadian broker who worked with Field Aerospace. (SOF ¶177-180.) Sharma, who was not licensed to handle the accounts and had no intention of servicing them, urged the USI Client Accounts to sign transfer paperwork quickly. (SOF ¶146-148.) The Former Employees facilitated, and at times encouraged, numerous USI clients, such as Tenax, Rally Point Management, LLC ("Rally Point Management"), Southwind Global Aviation, Inc. ("SouthWind"), and ICC, to transfer their accounts over to Lockton. (Doc. 114, pp. 12-13; SOF ¶168-170, 181-185, 187.) As a direct result of the above conduct, between December 9, 2019 and February 12, 2020, at least 19 USI clients with twelve-month revenues totaling $1,080,178 transferred their business away from USI to Lockton. (SOF ¶199.)

## II.   <u>LEGAL STANDARD</u>

A party is entitled to summary judgment if the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

"A plaintiff moving for summary judgment as to liability only does not need to prove the specific amount of damages to prevail. Conflicting evidence as to amount of damages does not raise a genuine issue as to liability. The plaintiff only needs to prove *some* amount of damage." *Ameripath, Inc. v. Wetherington*, No. 10-60766-CIV, 2011 U.S. Dist. LEXIS 36389, at *17-18 (S.D. Fla. Apr. 4, 2011); *DIRECTV, Inc. v. Milisic*, No. 3:11-CV-66-TCB, 2012 WL 12873773, at *3 (N.D. Ga. Dec. 3, 2012); *Capital City Dev., LLC v. Bank of N. Ga.*, 316 Ga. App. 624, 625-26 (2012) (affirming summary judgment on liability; remanding for proof of amount of damages).

## III.   ARGUMENT AND CITATION TO LEGAL AUTHORITY

### A.   The Court should grant partial summary judgment in USI's favor as to liability on certain of USI's counterclaims against the Former Employees.

#### 1.   Dean and Taylor breached the Notice Provisions by purporting to resign effective immediately.

Under Georgia law, "[t]he elements of a right to recover for a breach of contract are the breach and the resultant damages to the party who has the right to complain

6

about the contract being broken." *Graham Bros. Constr. Co. v. C.W. Matthews Contracting Co.*, 159 Ga. App. 546, 550 (1981). "[I]n every case of breach of contract[,] the injured party has a right to damages, but[,] if there has been no actual damage, the injured party may recover nominal damages sufficient to cover the costs of bringing the action." *Eastview Healthcare, LLC v. Synertx, Inc.*, 296 Ga. App. 393, 399 (2009) (quoting O.C.G.A. § 13-6-6).

Sections 8.2 of the DA Agreement and the TA Agreement (collectively, the "Notice Provisions") provide that Dean and Taylor "may terminate [their] employment hereunder by giving at least 60 days written notice to the Company." (DA Agreement, § 8.2 (SOF ¶8); TA Agreement, § 8.2 (SOF ¶33).) These Notice Provisions are enforceable as a matter of Georgia law. *See Capricorn Sys. v. Pednekar*, 248 Ga. App. 424, 425 (2001) ("A contract provision requiring a specified prior notice of termination is reasonable to allow the employer to prepare for an orderly transition …."); Doc. 24 at 8 (Former Employees conceding that notice provisions may be enforced through damages awards). In the Preliminary Injunction, this Court already found that the Andersons' employment with USI did not end until February 7, 2020, 60 days after they provided notice of their intention to terminate employment. Doc. 114 at 6, 9.

There is no dispute that the Andersons violated the Notice Provisions. The Andersons' resignation letters purported to be "effective immediately," and both

Andersons admitted that they did not give USI 60 days' notice before purportedly resigning. (*See* SOF ¶¶77-79.)[1] The evidence is also undisputed that the Andersons began working for Lockton on the same day they resigned from USI. (SOF ¶90-91.) The Andersons' sudden departures, in plain breach of the Notice Provisions, disrupted USI's business and cost USI lost client revenue. (SOF ¶196-201.)

Because there is clear and undisputed evidence that the Andersons breached the Notice Provisions, USI is entitled to partial summary judgment as to liability even if there remains a disputed question as to the amount of damages. A plaintiff's entitlement to nominal damages in a breach of contract action makes the amount of damages irrelevant on a motion for summary judgment as to liability. *See* O.C.G.A. § 13-6-6 (allowing nominal damages for breach of contract in the absence of actual damages); *Wanna v. Navicent Health, Inc.*, 357 Ga. App. 140, 162-63 (2020) (lost profits were not an "essential element" of breach of contract claim where nominal damages could be awarded); *Capricorn Sys*, 248 Ga. App. at 425 (in the absence of special damages, party can recover nominal damages arising from breach of notice provision). Therefore, summary judgment is appropriate as to Dean and Taylor's liability on Count I even if

---

[1] Because the Letters were inconsistent with the Andersons' obligations under the Notice Provisions, USI considered them employees until February 7, 2020, 60 days after the date of the Letters, and both Dean and Taylor continued to receive payments from USI during that time period. (SOF ¶81.)

the amount of USI's damages is an issue of fact to be determined by a jury. *See DIRECTV, Inc.*, 2012 WL 12873773, at *3 (granting summary judgment on liability).

**2.     Dean breached the Non-Compete Covenant by competing against USI within a restricted geographic area during the term of his employment and for six months thereafter.**

Section 7.5 of the DA Agreement (the "Non-Compete Covenant") prohibited Dean from "acting in [the] same or similar capacity, which [he] acted for the Company, on behalf of any Competitive Business" or "performing [the] same or similar functions, which [he] performed for the Company, on behalf of any Competitive Business" both during the term of his employment with USI and for a period of six months thereafter (through August 7, 2020) ("Restrictive Period"). (DA Agreement, § 7.5; SOF ¶12-13.)

The restrictions imposed by the Non-Compete Covenant apply within a "Restricted Geographic Area," which is defined to include: (a) the state in which Dean maintained his principal office for USI during the last twelve months of his employment; (b) a 100-mile radius from any USI facility in which Dean maintained an office during the last 12 months of his employment with USI; (c) any territory to which Dean has been assigned during the last 12 months of his employment with USI; and (d) any area in the United States where USI conducted business during the last 12 months of Dean's employment. (DA Agreement, § 7.5.)

The Non-Compete Covenant is enforceable under Georgia law. *See* O.C.G.A. § 13-8-53(a) ("[E]nforcement of contracts that restrict competition during the term of a

9

restrictive covenant, so long as such restrictions are reasonable in time, geographic area, and scope of prohibited activities, shall be permitted."). Because the Non-Compete Covenant only restricts Dean from competing against USI during the term of his employment and for six months after termination, it falls well within the presumption that "restraint[s] two years or less in duration" are reasonable and enforceable. O.C.G.A. § 13-8-57(b). The scope of prohibited activities in the Non-Compete Covenant is also reasonable because it only prohibits Dean from working in the "same or similar capacity" or performing the "same or similar functions" that he worked in and performed for USI. Such language has been held to be enforceable by Georgia courts. *See*, *e.g.*, *Kennedy v. Shave Barber Co.*, 348 Ga. App. 298, 305-06 (2018); *see also* O.C.G.A. § 13-8-53(c)(1).[2]

There is no dispute that during the Restrictive Period Dean accepted employment with Lockton, USI's direct competitor, and provided services on behalf of Lockton that compete with the services provided by USI. (*See* DA Agreement, §§ 1(d), 1(e), 7.5; SOF ¶¶55, 86-87, 92-143.) Indeed, this Court has already found that Lockton was "a

---

[2] The in-term restrictive covenants in the DA Agreement, which remained in effect through February 7, 2020, are even more clearly enforceable. *See* O.C.G.A. § 13-8-56(4) (an in-term restriction does not require "any specific limitation upon scope of activity, duration, or geographic area so long as it promotes or protects the purpose or subject matter of the agreement or relationship or deters any potential conflict of interest").

direct competitor of USI," and that Dean was working at Lockton "in a similar capacity to his employment for USI." (Doc. 114, p. 3.) Thus, the Court found "a substantial likelihood" that Dean had violated the Non-Compete Covenant and the Court's Order dated January 6, 2020 (Doc. 31) (the "TRO") by continuing "to compete with USI on a nationwide basis despite the fact that the TRO enjoined Mr. Anderson from working in a competitive capacity" on behalf of Lockton outside of Charlotte, North Carolina. (Doc. 114, p. 4.) The Court enjoined Dean through August 7, 2020 (six months from the end of the 60-day notice period). (Doc. 114, p. 6.) The undisputed evidence of Dean's breaches obtained through discovery corroborates the Court's earlier findings.

Dean has violated the Non-Compete Covenant regardless of how the Court enforces the Restrictive Geographic Area. As drafted, the Non-Compete Covenant creates a nationwide prohibition on Dean working for a competitive business. The Non-Compete Covenant is enforceable on a nationwide basis because Dean, as the National Practice Head for the Aviation Practice Group at USI, in fact conducted business on behalf of USI throughout the United States. (SOF ¶4-5, 17-20.) Dean participated in the development of the practice group's national growth strategy and utilized the company's resources to maintain relationships with key clients, prospects, and insurance companies throughout the United States. (SOF ¶5.) As a result, the total distance covered by the Non-Compete Covenant's geographic scope is reasonable and

11

enforceable. *See Glob. Payments Inc. v. Green*, 484 F. Supp. 3d 1373, 1379-80 (M.D. Ga. 2020) (total distance covered by non-compete restricting competition in "North America, Europe, Latin America, and Asia" reasonable because employee conducted business in those areas); *Cellairis Franchise, Inc. v. Duarte*, No. 2:15-CV-00101-WCO, 2015 WL 6517487, at *3 (N.D. Ga. Oct. 21, 2015); O.C.G.A. 13-8-56(3).

If the Court enforces the Non-Compete Covenant nationwide, as it is drafted, there is no dispute that Dean continued to work with the same clients located throughout the United States during the Restrictive Period at Lockton that he had serviced while employed by USI in clear disregard of the Non-Compete Covenant. (SOF ¶99-101.) Dean's clients included ICC (located in North Carolina) (SOF ¶108-112, 102); FFC (located in Tennessee) (SOF ¶¶116, 102); S3 (located in Alabama) (SOF ¶ 117-122, 102.); NAC (located, among other places, in New York) (SOF ¶124-136, 102); and AirScan (located in Florida) (SOF ¶138-140, 102.) Dean also lead Lockton's Aviation Practice on a national level. (SOF ¶93, 99.)

In the TRO and Preliminary Injunction, the Court largely enforced Dean's nationwide Non-Compete Covenant, carving out only a narrow exception to allow Dean to work for Lockton in Charlotte, North Carolina. (Doc. 31, p. 3.) In the Preliminary Injunction, the Court further ruled that Dean's work in Charlotte was limited to "work in and related to Charlotte, North Carolina" and prohibited Dean from

"working with any of Lockton's employees, any clients or prospective clients, or any underwriters situated in Georgia." (Doc. 114, p. 5.) Given Dean's nationwide practice and his admission that he can compete from anywhere, the Court should enforce Dean's non-compete nationwide as drafted and as he agreed in the contract. However, if the Court decides to blue pencil the Non-Compete Covenant to include a Charlotte exception or even solely in Georgia under the narrowest possible interpretation of the Restricted Geographic Area as "the state in which [Dean] maintained [his] principal office for [USI]," (DA Agreement, § 7.5 (SOF ¶13), Dean still breached the provision.

Although Dean had an office in Charlotte, he continued competing against USI in Atlanta during the Restrictive Period.  Dean worked out of Lockton's Atlanta office for his entire first week, including communicating with USI Client Accounts and other client contacts. (SOF ¶95, 97.) Dean continued to serve as the head of the Atlanta-based Aviation Team and frequently worked with Lockton's Atlanta-based employees on client accounts located outside of Charlotte. (SOF ¶98, 100-101, 116-140].)  Dean also had multiple interactions with Georgia-based underwriters. (SOF ¶141-43.)

Regardless of how the Restricted Geographic Area is enforced, the undisputed facts show Dean breached the Non-Compete through his activities for Lockton. Thus, the Court should grant summary judgment on Count II of the Counterclaim on liability.

**3.    Dean breached the Client Non-Compete Covenant by competing against USI with respect to Client Accounts in the restricted**

**geographic area.**

Section 7.6 of the DA Agreement ("Client Non-Compete Covenant") provides that during the term of Dean's employment with USI and for two years thereafter, he is prohibited "from carrying on any business in competition with the Company, directly or indirectly, with respect to any Client Account or Active Prospective Client in the Restricted Geographic Area." (DA Agreement, § 7.6; SOF ¶14-15.) Thus, the Client Non-Compete Covenant prohibits Dean from competing against USI with respect to USI Client Accounts within the Restricted Geographic Area until February 7, 2022.

The undisputed evidence also shows that Dean carried on business with USI Client Accounts in competition with USI both during his term of employment (after his purported resignation on December 9, 2019 through February 7, 2020) and for the two-year period after his employment (which continues to run through February 7, 2022) Between December 9, 2019 and the present, Dean has competed against USI by acting in a role substantially similar to his role at USI in performing insurance brokerage services, on behalf of USI's competitor Lockton, such as reviewing policies, drafting insurance language, attending calls and meetings, and arranging payment of premiums. (SOF ¶94, 101.) Dean also lead Lockton's Aviation Practice on a national level. (SOF ¶93.) In addition, he was either the primary or a substantial contact on multiple USI Client Accounts that transferred their business to Lockton, including: ICC (SOF ¶108-112); FFC (SOF ¶116); S3 (SOF ¶117-122); and NAC (SOF ¶124-136).

The Client Non-Compete Covenant is enforceable under Georgia law because it is "reasonable in time, geographic area, and scope of prohibited activities." *See* O.C.G.A. § 13-8-53(a). First, because the Client Non-Compete Covenant lasts only during the term of employment and for two years post-termination, its duration is presumptively reasonable. *See* O.C.G.A. § 13-8-57(b). Next, the scope of activity protected by the Client Non-Compete Covenant is reasonable and enforceable because it is narrowly tailored to protect USI's legitimate business interests and does not exceed the same services within the same markets that Dean provided as an employee of USI. *See* O.C.G.A. § 13-8-56(3) ("The scope of competition restricted is measured by the business of the employer ...."). "It is well-established that an employer 'has a protectable interest in the customer relationships its former employee established and/or nurtured while employed by the employer.'" *Murphree v. Yancee Bros. Co.*, 311 Ga. App. 744, 748 (2011) (internal citations omitted)). Because the scope of activity within the Client Non-Compete is narrowly drawn, it is reasonable and enforceable. *See Lighting Galleries v. Drummond*, 247 Ga. App. 124, 127 (2000) (non-compete was not overbroad where tailored to the job employee had performed for former employer).

Finally, the geographic scope of the Client Non-Compete Covenant is reasonable. "A geographic territory which includes the areas in which the employer does business at any time during the parties' relationship, even if not known at the time

15

of entry into the restrictive covenant, is reasonable, provided that … [t]he total distance encompassed by the provisions of the covenant also is reasonable." O.C.G.A. § 13-8-56(2)(A). The restriction on competing for clients and prospective clients in "any area in the United States where the Company has conducted USI Business during the last twelve (12) months of [Dean's] employment," (DA Agreement, § 7.5 (SOF ¶13,15), is reasonable based on the nature of Dean's position with USI, which involved working with active clients and prospective clients throughout the United States and supervising USI's national Aviation team. (SOF ¶5, 17-20.) *See Gallagher Benefit Servs. v. Campbell*, No. 1:19-cv-00836-SDG, 2021 U.S. Dist. LEXIS 56771, at *22-23 (N.D. Ga. Mar. 24, 2021) (finding nationwide client-based non-compete reasonable because employee serviced clients on a nationwide scale).[3]

Regardless, even if the Court blue pencils the covenant to allow Dean to work in and with only clients located in Charlotte, Dean would still be in breach. The evidence is undisputed that Dean has competed against USI with respect to USI Client Accounts in breach of the Client Non-Compete Covenant because he has worked with Lockton's Atlanta-based Aviation Team on USI Client Accounts that, with one exception (ICC), are not based in Charlotte. (*See supra* § III.A.2.; *see also* Doc. 114, p. 8; SOF ¶102).

---

[3] For the enforcement of Dean's Client Non-Compete between December 9, 2019 and February 7, 2020, while Dean remained an employee of USI, as noted above, no territory is even required. *See supra* n.2*; O.C.G.A. § 13-8-56(4).

The Court previously found that USI was substantially likely to succeed on the merits of Count III against Dean for violating the Client Non-Compete. (*See* Doc. 114, pp. 6-9.) Based on the undisputed evidence showing that Dean competed with USI with respect to USI Client Accounts within the Restricted Geographic Area, the Court should grant partial summary judgment as to liability on Counterclaim Count III.

4. **USI is entitled to partial summary judgment on Count IV of the Counterclaim because the Former Employees solicited USI Client Accounts during the terms of their employment and thereafter.**

USI is entitled to partial summary judgment on Count IV of the Counterclaim against all three of the Former Employees for their breaches of the non-solicitation covenants contained in Section 7.7 of the DA Agreement, Section 4.5 of the RM Agreement, and Section 7.5 of the TA Agreement (collectively, the "Non-Solicitation Covenants"). (*See* SOF ¶16, 25, 36.) The Georgia Restrictive Covenant Act, O.C.G.A. § 13-8-50, *et seq.* ("RCA"), allows an employer, such as USI, to restrict an employee for a stated period of time from soliciting or attempting to solicit its clients for the purpose of providing competitive services or products. *See* O.C.G.A. § 13-8-53(b). Under the relevant provisions of the Non-Solicitation Covenants that USI seeks to enforce, each Former Employee may not, during the term of his employment with USI and for two years thereafter, directly or indirectly, on behalf of any Competitive Business in any capacity "(i) solicit or attempt to solicit services in competition with [USI] to any Client Account; (ii) divert or attempt to divert services away from [USI]

17

with respect to any Client Account: … or (v) induce the termination, cancellation or non-renewal of any Client Account" which the Former Employees' either serviced or obtained Confidential Information on behalf of USI in their final two years of employment. (DA Agreement, § 7.7; RM Agreement, § 4.5; TA Agreement, § 7.5.)

The undisputed facts establish the Former Employees breached the Non-Solicitation Covenants. The Former Employees began their solicitation efforts before even submitting their resignations notices to USI.  Weeks before resigning, the Former Employees notified several USI Client Accounts about their upcoming change of employment, even notifying at least one USI Client Account, Tenax, that they would be moving to Lockton. (SOF ¶144, 166-167, 174-176, 192.).  Taylor and Maldonado also informed David Brosbell, a Canadian broker, who acted as an intermediary in the solicitation scheme (Doc. 114, p. 11), they were moving to Lockton. (SOF ¶173-179.)

At the same time they submitted their notices of resignation, the Former Employees solicited USI Client Accounts when they sent the unauthorized Departure Emails to dozens of USI's Client Account on the morning of December 9, 2019. (SOF ¶82-84.) The Departure Emails were deliberately targeted at representatives of various USI Client Accounts.  (SOF ¶82-83, 150, 155, 168.) There is no dispute that USI did not authorize the Former Employees to send the Departure Emails. (SOF ¶84.)

The Former Employees sent the nearly-identical Departure Emails as part of a

pre-arranged, coordinated strategy to solicit USI Client Accounts. (SOF ¶82.) The Former Employees' counsel (who was also Lockton's counsel) reviewed and/or helped to compose them. (SOF ¶85.) As previously stated, shortly after sending the Departure Emails, the Former Employees updated their LinkedIn profiles to reflect their new positions at Lockton. (SOF ¶86; *see also supra* § I.)

In the Preliminary Injunction, the Court found the Former Employees sent "these mass emails to clients … to encourage and induce these clients to contact Plaintiffs and to switch their insurance brokerage business to Lockton. Many of these clients, in fact, immediately contacted Plaintiffs and did execute BOR Letters to switch their business from USI to Lockton." (Doc. 114, p. 10.) The Court also found that "[i]mmediately following Plaintiffs' outreach efforts to USI's clients, … at least 19 USI clients, accounting for $1,082,178 in twelve-month revenue, … transferred their accounts from USI to Lockton." (Doc. 114, p. 13; *see also* SOF ¶199.)

After the initial solicitation via the Departure Emails and LinkedIn updates, the Former Employees continued their frequent communications with USI's clients. (SOF ¶150-153, 155-158, 161-163, 168-170, 177-178, 181-183, 187.) The Former Employees directly solicited certain clients to transfer their business to Lockton. For example, Taylor confirmed for Southwind that moving to Lockton was the "smartest move [Southwind] could make for its' insurance needs." (SOF ¶182.). The Former

Employees directed other clients to contact Manoj Sharma to assist them in transferring their insurance business from USI to Lockton. (SOF ¶152, 163, 170.) Taylor told USI Client Accounts or otherwise led them to believe that they should talk with Manoj Sharma because "[h]e'll be familiar with the situation" and was otherwise "prepared for [their] call." (SOF ¶183-184, 187.) Manoj Sharma, who was not licensed to service and had no intention of servicing the USI Client Accounts, urged the clients to sign paperwork to transfer their accounts to Lockton quickly (SOF ¶152, 180), and touting the purported benefits of transferring to Lockton. (SOF ¶190.) The Former Employees also solicited through third-party intermediaries like the Canadian broker, Brosbell. Brosbell told Maldonado that he would recommend that Field Aerospace transfer its business to the Former Employees at Lockton. (SOF ¶176.) Brosbell, while in close contact with Maldonado, informed his Field Aerospace contacts that he "would fully endorse moving to Lockton." (Doc. 114, pp. 11-12; SOF ¶176-180.)

The Former Employees' conduct constitutes solicitation under Georgia law. This Court has previously defined "solicitation" as "[t]o awake or incite to action by acts or conduct intended to and calculated to incite the act of giving. The term implies personal petition and importunity addressed to a particular individual to do some particular thing." *Wells Fargo Ins. Servs. USA v. Gupton*, No. 1:13-CV-0520-SCJ, 2013 U.S. Dist. LEXIS 190019, at *9-10 (N.D. Ga. Mar. 5, 2013) (internal citations omitted); *See*

*also* Doc. 114, p. 14. This Court has also stated that "solicitation occurs when the former employee undertakes some affirmative action on his part that could be considered a solicitation in the broadest possible sense.'" *Id.* at \*10 (internal citation omitted). Thus, the restriction in the Non-Solicitation Covenants that the Former Employees may not "directly or indirectly … solicit or attempt to solicit services in competition with" USI is both "unambiguous and enforceable." *Id.*

The Former Employees' Departure Emails coupled with their updates to their LinkedIn profiles alone satisfy the requirement for solicitation under Georgia law. *See Gupton*, 2013 U.S. Dist. LEXIS 190019, at \*13 (internal citations omitted) ("[B]y contacting a former client to let them know that you now work for a competitor, there is an implication that [the former employee] can now service their account at the new firm."); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Schultz*, No. 01-0402, 2001 WL 1681973, at \*3 (D.D.C. Feb. 26, 2001) (where former employee announced resignation to customers "such initiated, targeted contact is tantamount to solicitation because there is no reason to believe that a customer on the receiving end …  does not assume that the broker wishes for him to transfer his account"). In fact, when combined with the other record evidence, the Former Employees' actions of updating their LinkedIn accounts are sufficient to establish solicitation as a matter of law. *See Mobile Mini, Inc. v. Vevea*, No. CV 17-1684 (JRT/KMM), 2017 WL 3172712, at \*1-2, \*6 (D. Minn. July

21

25, 2017) (former employee violated non-solicit and likely engaged in "direct solicitation of business" where she made two different posts on her LinkedIn account announcing she was working for competitor of former employer).

Similar conduct by former USI employees has been found to warrant summary judgment by another federal court. *See USI Ins. Servs. LLC v. Miner*, 801 F. Supp. 2d 175, 179, 192-93 (S.D.N.Y. 2011) (where former USI employee sent email to USI clients shortly after announcing resignation, court found he "took an active step in attempting to communicate with former clients, which is barred by the explicit non-solicitation clause of the Employment Agreement"). Thus, the Former Employees' nearly-identical, rapid-fire emails notifying USI's clients of their departure coupled with immediate updates to their LinkedIn profiles to show their employment with Lockton were intended to urge USI clients to transfer their accounts so that the Former Employees could service them at Lockton. The undisputed facts show that USI is entitled to summary judgment on Count IV as to all the Former Employees.

**5.   USI is entitled to partial summary judgment on Counts V and VI of the Counterclaim against Dean and Taylor for breaching their duties of loyalty and fiduciary duties by competing against USI and soliciting USI clients while still employed by USI.**

Under Georgia law, employees owe a duty of loyalty to their employer that precludes them from competing with their employer during the term of their employment. *See Wilson v. Wilson*, 277 Ga. 801, 805 (2004) ("[T]he law implies a duty

22

of loyalty, faithful service and regard for an employer's interest.") (citation and quotation marks omitted); *Glades Pharms., LLC v. Murphy*, No. 1:04-cv-3817, 2005 U.S. Dist. LEXIS 36198, at *14 (N.D. Ga. Dec. 16, 2005) (same); *Crews v. Wahl*, 238 Ga. App. 892, 901 (1999) (same); *White v. Shamrock Bldg. Sys.*, 294 Ga. App. 340, 346 (2008) (it is a breach of duty for employee to compete with employer);

In their employment agreements, Dean and Taylor "acknowledge[d] a duty of loyalty to [USI] and agree[d] to use [their] best efforts to faithfully, diligently and completely perform all duties and responsibilities … in furtherance of the business of any USI Company." (DA Agreement, § 2.3; TA Agreement, § 2.4; *see also* SOF ¶¶10, 34.) These duties of loyalty included Dean and Taylor's obligation to provide 60 days' notice of termination of their employment under the Notice Provisions, their obligation not to compete with USI while they remained employees of USI, Dean's duty to refrain from competing against USI under the Non-Compete Covenant, Dean and Taylor's duties to refrain from competing with USI with respect to USI Client Accounts under the Client Non-Compete Covenants, and Dean and Taylor's duties to refrain from soliciting USI Client Accounts. Further, Dean and Taylor had a duty not to undermine USI's goodwill from its employees and clients on behalf of a Competitive Business.

Because the Notice Provisions required Dean and Taylor to give 60 days' notice before terminating their employment with USI, they remained employees of USI and

their duties of loyalty continued until February 7, 2020, 60 days following the submission of their resignation letters on December 9, 2019. *See* Section III.A.1 at p. 8 n.1, *supra*. Dean and Taylor began their employment with Lockton on or about December 9, 2019, and therefore were employed by and actively working for a competitor of USI at the same time they remained employed by USI. (*See* SOF ¶¶90-91.) The undisputed evidence shows that Dean and Taylor breached their duties of loyalty to USI during the period between the submission of the Letters on December 9, 2019 and the termination of their employment on February 7, 2020.

Additionally, Dean and Taylor worked to move USI Client Accounts from USI to Lockton during the 60-day notice period following their purported resignation from USI on December 9, 2019. As set forth above, the Former Employees solicited the USI Client Accounts by, among other things, sending the Departure Emails and updating their LinkedIn profiles on the day they purportedly resigned from USI and soliciting through intermediaries. (*See* Section III.A.4, *supra*.) As a consequence, during the 60-day notice period USI received at least 16 BOR Letters representing at least 19 USI Client Accounts who transferred their brokerage relationships from USI to Lockton. (SOF ¶197-199; Doc. 114, p. 13.) *See Murphy*, 2005 U.S. Dist. LEXIS 36198, at *15 (evidence that defendant "pursued opportunities in the … market for his own benefit while employed by the Plaintiff and to the detriment of the Plaintiff" supported breach

of duty of loyalty claim). Finally, Taylor's conduct prior to sending the December 9, 2019 Departure Email, when he informed multiple USI Client Accounts of his impending departure and plan to go to Lockton, well before he gave notice to USI, constitutes a separate breach of his duty of loyalty. (SOF ¶166-167, 174-176, 144, 192.)

As set forth above, there is no genuine issue of material fact whether the Dean and Taylor breached their duties of loyalty during the 60-day notice period by: (1) beginning employment with Lockton while still employed by USI; (2) soliciting USI Client Accounts to execute BOR Letters and transfer their business to Lockton; and (3) performing insurance brokerage services for USI Client Accounts on behalf of Lockton. Similarly, there is no genuine dispute of material fact whether Taylor breached his duty of loyalty by disclosing his intention to resign from USI to multiple USI Client Accounts prior to submitting his letter of resignation. There is also no dispute that Dean and Taylor's breaches resulted in damages to USI. (SOF ¶196-201.)

Because there is undisputed evidence that Dean and Taylor violated their duties of loyalty and that those violations resulted in some damages to USI, partial summary judgment on Dean and Taylor's liability for breach of their duty of loyalty is appropriate even where the amount of damages remains in dispute. *See* Fed. R. Civ. P. 56(a); *see also Wanna*, 357 Ga. App. at 163 (internal citations omitted); *Wind Logistics Prof'l, LLC v. Universal Truckload, Inc.*, No. No. 1:16-cv-00068 (N.D. Ga. Sept. 23,

2019), at *7 (granting summary judgment as to liability on breach of duty claim).

Therefore, USI is entitled to partial summary judgment as to liability on Count V of the Counterclaim against Dean and Taylor for breaching their duties of loyalty owing to USI. *See Sitton v. Print Direction, Inc.*, 312 Ga. App. 365, 372-73 (2011) (affirming judgment as to breach of duty of loyalty where competition against former employer was prohibited by terms of employee manual and employee engaged in a rival business while employed by former employer).[4]

USI is also entitled to summary judgment on Count VI of the Counterclaim for breach of fiduciary duty based upon these same actions by Dean and Taylor. A fiduciary duty may be created by law, by contract, or by the facts of a particular case. *Bienert v. Dickerson*, 276 Ga. App. 621, 624 (2005). A party owes another party a fiduciary duty where the relationship between them is "confidential, whether arising from nature, created by law, *or resulting from contracts where*, from a relationship of mutual confidence, the law requires the utmost good faith." O.C.G.A. § 23-2-58 (cleaned up) (emphasis added). Dean and Taylor contractually took on a duty of loyalty

---

[4] Like the employee in *Sitton*, Dean and Taylor Anderson were subject to USI's Code of Business Conduct. That company policy prohibited USI employees from "work[ing] for another organization while employed by USI if a conflict of interest exists" and "us[ing] Company time [or] assets … for any outside activities." (SOF ¶53.) As detailed above, the Andersons violated both of these provisions by working for a competitor during the 60-day Notice Period and soliciting USI clients with USI time and assets.

to USI in their employment agreements. (DA Agreement, § 2.3; TA Agreement, § 2.4; *see also* SOF ¶10, 34.)[5] And as the Georgia Supreme Court has noted, the duty of loyalty is a fiduciary duty. *See Phoenix Airline Servs., Inc. v. Metro Airlines, Inc.*, 260 Ga. 584, 587 (1990); *Se. Consultants, Inc. v. McCrary Eng'g Corp.*, 246 Ga. 503, 509 (1980); *see also Jennette v. Nat'l Cmty. Dev. Servs., Inc.*, 239 Ga. App. 221, 223–24 (1999). Accordingly, partial summary judgment for USI on Count VI is warranted.

**B.** **The Court should grant summary judgment in USI's favor on the Former Employees' claims against USI.**

In an effort to escape their contractual obligations, the Former Employees assert two similar claims against USI: (1) a claim for a declaratory judgment pursuant to O.C.G.A. § 9-4-2 and (2) a claim for an injunction. (Doc. 1-1 at ¶¶119-134.) Specifically, the Former Employees ask the Court to declare void and unenforceable the Notice Provisions, Dean's six-month Non-Compete Covenant, the Client Non-Compete Covenants, the Non-Solicitation Covenants, and the Employee Non-Interference Covenants (as defined herein). Contrary to the Former Employees' assertions, each of these provisions is enforceable as a matter of Georgia law. Indeed,

---

[5] This is not a case where the Court must analyze whether Dean and Taylor were USI's agents or whether the facts of this case created a confidential relationship giving rise to fiduciary duties because they affirmatively took on fiduciary duties by contract. *See Physician Specialists in Anesthesia, P.C. v. Wildmon*, 238 Ga. App. 730, 732–34 (1999). No such contract existed in *Wildmon*.

this Court has already rejected the Former Employees' enforceability challenges and enforced most of them in this action. (*See* Doc. 114.) Moreover, the Former Employees' declaratory judgment claims as to the Notice Provisions and Dean's Non-Compete Covenant are separately legally defective because a declaration as to their enforceability would not guide the Former Employees' future action. Thus, USI is entitled to summary judgment in its favor as to all aspects of the Former Employees' declaratory judgment claim and as to their derivative injunction claim.[6]

**1.   The Notice Provisions are enforceable and, separately, not properly subject to a declaratory judgment claim.**

Provisions requiring notice of termination of employment, including the Notice Provisions here, are plainly enforceable under Georgia law. *See* § III.A.1, *supra*. Moreover, the Former Employees' claim for a declaration voiding the Notice Provisions fails as a matter of law because the Andersons already resigned. "[T]o pursue properly a declaratory judgment under Georgia law a party must establish that a declaratory judgment is necessary to relieve himself of the risk of taking some future action that, without direction, would jeopardize his interests." *Milani v. One W. Bank FSB*, 491 F. App'x 977, 979 (11th Cir. 2012) (citations and punctuation omitted). Here,

---

[6] The Former Employees' injunction claim is not a standalone cause of action, but is a remedy that is dependent on their declaratory judgment claim. *See, e.g., Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1127 (11th Cir. 2005).

it is undisputed that the Andersons are no longer USI employees and that they tendered their resignations without providing 60 days' advance notice. (SOF ¶¶77-78.) Accordingly, with respect to the Notice Provisions, "[n]o uncertainty exists about any future action by" the Andersons, and, therefore, "a declaratory judgment is unavailable[.]" *Milani*, 491 F. App'x at 979. The Court therefore should grant summary judgment in USI's favor on the Former Employees' claim for declaratory judgment.

### 2.    The Non-Compete Covenants are enforceable.

The Court should enter summary judgment in USI's favor on the Former Employees' claim for a declaration that the six-month Non-Compete Covenant in Dean's Employment Agreement and the Client Non-Compete Covenants in all the Former Employees' Employment Agreements are unenforceable. Under the RCA, "a non-compete covenant is valid when: (1) justified by a legitimate business interest; (2) applied to an employee in sales or management; and (3) reasonably restricted in time, geographic area, and scope of prohibited activities." *Heartland Payment Sys., LLC v. Stockwell*, 446 F. Supp. 3d 1275, 1283 (N.D. Ga. 2020). Each requirement is indisputably satisfied for all the non-compete covenants.

Initially, the Former Employees do not, and cannot, dispute that the first and second requirements for enforceable non-competes are met here. USI invested time, money, and resources in the Former Employees, the Former Employees had access to USI's confidential information, and the Former Employees had substantial

29

relationships with USI's clients and prospective clients. (SOF ¶40-44.) USI has a legitimate business interest in protecting such investment, information, and relationships through non-compete covenants. *See id.* at 1283-84. Indeed, the Former Employees explicitly acknowledged in their agreements that the covenants therein were reasonable and necessary to protect these legitimate business interests. (SOF ¶49, DA Agreement, § 7.8; RM Agreement, § 4.8; TA Agreement, § 7.8].) Similarly, the Former Employees regularly solicited clients on USI's behalf during their employment and were key employees. (SOF ¶43.) The Former Employees were thus employees who may be subject to non-compete restrictions under the RCA. O.C.G.A. § 13-8-53(a).

Conceding, as they must, that the non-competes are justified and enforceable against employees in their positions, the Former Employees attack only the covenants' reasonableness. This attack is devoid of factual or legal support.

### i. Dean's Non-Compete Covenant is enforceable and not properly subject to a declaratory judgment claim.

The Former Employees incorrectly theorize that the territory in Dean's Non-Compete Covenant is overly broad and, therefore, the entire covenant is unenforceable. Neither assertion is true. The undisputed evidence shows that the nationwide restricted territory is reasonable and enforceable. *See* § III.A.2., *supra*. Regardless, even if a nationwide scope were overbroad, the Court can and should limit the scope of the territory through blue penciling, as it did in the Preliminary Injunction, not declare the

entire covenant void. *See* O.C.G.A. § 13-8-53(d); O.C.G.A. § 13-8-54(b); SOF ¶50 (requiring blue penciling if court finds overbroad).

Separately, the Former Employees' declaratory claim with respect to Dean's Non-Compete Covenant also fails because it is moot. The end of the Restrictive Period was August 7, 2020. Because the covenant has expired, Dean no longer needs guidance from the Court as to whether his *future* conduct would violate the Non-Compete Covenant, and declaratory relief is no longer proper or available. *See Milani*, 491 F. App'x at 979. The Court should grant USI summary judgment on the Former Employees' claim regarding Dean's Non-Compete Covenant both because the expiration of the covenant mooted the claim and because the covenant is enforceable.

### ii.    The Client Non-Compete Covenants are enforceable.

The Court has already twice found that the Client Non-Compete Covenants are enforceable. (Doc. 31, pp. 3-4; Doc. 114, p. 8.) Contrary to the Former Employees' erroneous reading, the Client Non-Compete Covenants restrict the Former Employees from competing with USI for client accounts and active prospective accounts "in the [Restricted] Geographic Area," a specifically defined territory in each contract. (SOF ¶15 (DA Agreement at § 7.6), 203 (RM Agreement at § 4.6), 205 (TA Agreement) at § 7.6).). The Former Employees argue these provisions are unenforceable because the territory does not define the non-compete area, but exists only to define the client group. However, even if the territory refers to the location of the clients, such definition

for the restricted territory is not prohibited by the RCA. The restriction on competing for clients and prospective clients in the "Restricted Geographic Area" (for Dean) or the "Geographic Area" (for Taylor and Maldonado) is reasonable based on the nature of the Former Employees' employment with USI. (SOF ¶5, 17-20, 27, 31.) Moreover, the Restricted Geographic Area/Geographic Area is narrowly tailored and "provides fair notice of the maximum reasonable scope" of the Client Non-Compete Covenants' restrictions. O.C.G.A. § 13-8-53(c)(1).

The Former Employees' other argument, that the Client Non-Compete Covenants are overbroad because they might apply to all clients and prospects in the territory regardless of whether the Former Employees had contact with them, is meritless. Non-competes are enforceable in Georgia even if they restrict more than just an employee competing for his former employer's clients. *See Duarte*, 2015 WL 6517487, at *7. Rather than barring the Former Employees from providing services of behalf of a competitor to any customer, the covenants allow them to work for any competitor and provide services to its customers. The only exception is that they cannot provide services to USI Client Accounts in the restricted territory. Thus, the Client Non-Compete Covenants are actually narrower than traditional, indisputably enforceable, non-competes. Thus, the covenants are enforceable, and USI is entitled to summary judgment. *See Gallagher*, 2021 U.S. Dist. LEXIS 56771, at *22-23.

### 3.     The Non-Solicitation Covenants are enforceable.

The Court has already found that the Client Non-Solicitation Covenants are enforceable. (Doc. 114, p. 16.) Under the Non-Solicitation Covenants, the Former Employees may not, during the term of their employment with USI and for two years thereafter, directly or indirectly, on behalf of any Competitive Business in any capacity, solicit certain USI Client Accounts. *See* § III.A.4., *supra*.[7] Customer non-solicit covenants such as these are plainly enforceable under Georgia law. *See Kennedy*, 348 Ga. App. at 306-07; O.C.G.A. § 13-8-53(b).

The Former Employees' only argument against the enforceability of the Non-Solicitation Covenants is that certain subsections allegedly purport to prohibit the acceptance of unsolicited business. (Doc. 1-1 at ¶¶75-76, 102, 110.) In the Preliminary Injunction, the Court found whether the subsections USI was not seeking to enforce (subsections (iii) and (iv)) were overbroad was irrelevant to whether USI was entitled to an order enforcing the remaining provisions (subsections (i), (ii), and (v)).  (Doc. 114, p. 16.) Thus, the Court can and should grant summary judgment in favor of USI on whether subsections (i), (ii), and (v) of the Non-Solicitation Covenants are

---

[7] The Non-Solicitation Covenants also prohibit solicitation of Active Prospective Clients for six months after the end of employment. (SOF ¶16, 25, 36.) In addition to the reasons below, USI is entitled to summary judgment on this aspect of the claim because, as with Dean's expired six-month Non-Compete Covenant, it is now moot.

33

enforceable without having to make a ruling on those remaining subsections whose enforceability is not in front of the Court. A declaratory judgment as to subsections (iii) and (iv) is not appropriate here because USI has not sought to enforce those sections against the Former Employers. Alternatively, the Court can and should blue pencil the Non-Solicitation Covenants to remove subsections (iii) and (iv), the allegedly overbroad subsections. *See Cap. Inventory, Inc. v. Green*, No. 1:20-CV-3224-LMM, 2020 WL 10056790, at *4-6 (N.D. Ga. Sept. 16, 2020); *PointeNorth Ins. Grp. v. Zander*, No. 1:11-CV-3262-RWS, 2011 WL 4601028, at *3 (N.D. Ga. Sept. 30, 2011); O.C.G.A. 13-8-53(b). Accordingly, the Former Employees are not entitled to a declaration that the Non-Solicitation Covenants are void and unenforceable.

### 4.    The Employee Non-Interference Covenants are enforceable.

The Former Employees are not entitled to declaratory relief concerning the restrictive covenants prohibiting the solicitation of USI employees (the "Employee Non-Interference Covenants"). Declaratory relief is not available because the Former Employees have not presented evidence that USI is seeking to enforce these covenants or that they risk a future violation of these covenants. *See Milani*, 491 F. App'x at 979.

Moreover, the Employee Non-Interference Covenants are enforceable under Georgia law. Under these covenants, the Former Employees may not, during the term of their employment with USI and for two years thereafter, directly or indirectly, on behalf of any Competitive Business in any capacity: (a) solicit or hire any other

employee of USI with whom they worked or obtained knowledge as a result of their employment with USI; or (b) otherwise induce such employee to leave USI or breach their employment agreement. (SOF ¶202 (DA Agreement at § 7.8), 204 (RM Agreement at § 4.7), 206 (TA Agreement at § 7.7.)

"Restrictive covenants addressing solicitation of employees are enforceable when they are reasonably limited in time and not fatally vague or ambiguous." *Heartland Payment Sys., LLC*, 446 F. Supp. 3d at 1284 (citation and punctuation omitted). Georgia courts routinely enforce employee non-interference covenants similar to the ones at issue here. *See id.* (enforcing two-year employee non-solicit covenant); *Capital Inventory, Inc. v. Green*, No. 1:20-CV-3224-LMM, 2020 WL 10056790, at *6 (N.D. Ga. Sept. 16, 2020) (same). Thus, the Former Employees' claim for a declaration voiding the Employee Non-Interference Covenants fails.

## CONCLUSION

The undisputed record evidence shows that the Former Employees violated the terms of their employment agreements, which are valid and enforceable under Georgia law. Therefore, USI is entitled to partial summary judgment on liability as to Counts I, V, and VI against Dean and Taylor, Count II and III against Dean, and Count IV against all of the Former Employees, and to total summary judgment on all of the Former Employees' declaratory judgment and injunctive relief claims.

Respectfully submitted this 13th day of August, 2021.

**PARKER, HUDSON, RAINER & DOBBS LLP**

/s/ Jared C. Miller
Nancy H. Baughan
Georgia Bar No. 042575
Jared C. Miller
Georgia Bar No. 142219
Julie A. Wood
Georgia Bar No. 023749
Matthew W. Weiss
Georgia Bar No. 718795
303 Peachtree Street, NE, Suite 3600
Atlanta, Georgia 30308
Telephone: (404) 523-5300
Facsimile: (404) 522-8409
nbaughan@phrd.com; jmiller@phrd.com;
jwood@phrd.com; mweiss@phrd.com

*Attorneys for Plaintiff USI Insurance Services LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

In compliance with Local Rule 7.1D, I certify that the foregoing **MEMORANDUM OF LAW IN SUPPORT OF USI INSURANCE SERVICES LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT** has been prepared in conformity with Local Rule 5.1. The foregoing memorandum was prepared with Times New Roman (14 point) type, with a top margin of one and one-half (1 ½) inches and a left margin of one (1) inch. This memorandum is proportionately spaced, and is not longer than 35 pages, as authorized by the Court (Doc. 207).

This 13th day of August, 2021.

/s/ Jared C. Miller
Jared C. Miller

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served a copy of the within and foregoing

**MEMORANDUM OF LAW IN SUPPORT OF USI INSURANCE SERVICES**

**LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT** upon all parties to

this matter by electronically filing a copy of same with the Court's CM/ECF system,

which will automatically send an electronic copy to the following counsel of record:

> Warren R. Hall, Esq.
> Elizabeth M. Newton, Esq.
> Wayne M. Cartwright, Esq.
> Hall, Gilligan, Roberts & Shanlever, LLP
> 3340 Peachtree Road – Suite 1900
> Atlanta, Georgia 30326
> whall@hgrslaw.com
> enewton@hgrslaw.com
> wcartwright@hgrslaw.com

This 13th day of August, 2021.

> /s/ Jared C. Miller
> Jared C. Miller