# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| **JAMESON TAYLOR ANDERSON, ROBERT DEAN ANDERSON, and ROGER MALDONADO,**<br><br>    **Plaintiffs/Counterclaim Defendants,**<br><br>    **v.**<br><br>**USI INSURANCE SERVICES LLC,**<br><br>    **Defendant/Counterclaim Plaintiff.** | **CONSOLIDATED CASES PURSUANT TO FED. R. CIV. P. 42**<br><br>**Civil Action File No.**<br><br>**1:19-cv-05582-VMC** |
| **USI INSURANCE SERVICES LLC,**<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>**SOUTHEAST SERIES OF LOCKTON COMPANIES, LLC,**<br><br>    **Defendant.** | **Civil Action File No.**<br><br>**1:20-cv-02490-VMC** |

**BRIEF IN SUPPORT OF MOTION TO STRIKE AND EXCLUDE FROM TRIAL THE REPORT AND TESTIMONY OF USI INSURANCE SERVICES LLC'S PROPOSED EXPERT WITNESS LORNA GUNNERSEN**

The Former Employees and Lockton deny that USI suffered damages attributable to a breach of contract or other violation. Gunnerson merely assumes that all clients provided on a list by USI moved to Lockton for an illicit reason. Gunnersen assumed causation and offers no expert opinion on causation. Although "clients are always free to change their brokerage firm if they wish" (Gunnersen Errata [Doc. 256-7][1], re p. 91), Gunnersen's opinions on damages are premised entirely on her **presumption** that all 25 clients moved to Lockton because of unlawful conduct. This faulty premise cannot be overcome, as it permeates all of her report. An opinion so fundamentally flawed cannot be presented to a jury as expert testimony, and the Federal Rules of Evidence require exclusion.

Even beyond the wholesale presumption of causation, Gunnersen's report and testimony suffer other defects. Gunnersen's hypothetical "sale of business" methodology is contrary to Georgia law and has never been approved in an appellate case applying Georgia law. The alternative lost profits analysis is deficient in that it fails to show a history of profitability, is not based on actual expense data, and is unable to account for "collateral enterprises" such as market forces or COVID that affect the aviation insurance industry.

---

[1]   For simplicity, all citation to docket numbers are to the first filed case: 1:19-cv-05582-VMC.

## FACTUAL BACKGROUND

USI offers supposed expert testimony from Lorna Gunnersen regarding claimed damages. However, admissible expert testimony must be reliable and well-reasoned; Gunnersen's is not. Gunnersen's opinions are flawed and her methods are contrary to Georgia law. Her testimony and report (Doc. 314-1) must be excluded.

Jameson Taylor Anderson ("Taylor Anderson"), Robert Dean Anderson ("Dean Anderson"), and Roger Maldonado ("Maldonado") (collectively "Former Employees") worked for Wells Fargo Insurance Services USA, Inc. ("WFIS") when USI Insurance Services, LLC ("USI") purchased WFIS in 2017. (T. Anderson Dep. [Doc. 210-1], 31:3-10.)  Dean Anderson and Maldonado worked in the Aviation Practice Group, and Taylor Anderson was an insurance Producer who had clients with aviation insurance needs.  In December 2019, USI claimed that it serviced 140 aviation clients/accounts and handled aviation insurance policies for 433 clients.  (R. Allen (30b6 designee) Dep., [Doc. 217-1] 151-54 (re declaration statements).)

On December 9, 2019, the Former Employees resigned their employment at USI and joined Southeast Series of Lockton Companies, LLC ("Lockton").  Soon after the resignations, USI asserted claims against the Former Employees, eventually seeking to recover lost profits attributed to 25 aviation clients who moved their business to Lockton in the weeks and months after the resignations.

USI acknowledges that the insurance industry is "extremely competitive." (USI Dep. [Doc. 217-1], 36:19-21; *see also* USI Counterclaim [Doc. 134] at ¶ 20.) "A key factor in developing and maintaining clients in the insurance brokerage industry is the strong relationship developed between the employee and the client." (USI Counterclaim [Doc. 134] at ¶ 18.) If an insurance producer changes firms, there is nothing improper about clients wanting to maintain their relationship and follow the producer to a new firm. (USI Dep. [Doc. 217-1], 45:18-25.) Indeed, it is not unusual for clients to decide to transfer to a new firm. (Johnson Dep. [Doc. 216-1], 32:24 – 33:3; 227:3-7.) ("[Clients] can do whatever they want to do" with their insurance business either staying at the former firm or going to the new firm.")

Abundant evidence from each of the clients who provided testimony shows that the clients moved to Lockton for many reasons, but none of the reasons implicates any breach of contract or other duty by the Former Employees or Lockton. As suggested by USI's pleadings, most of the clients moved because of their relationship with Taylor Anderson or their desire to work with Dean Anderson for their aviation insurance needs. Under Georgia law, to recover lost profits for a breach of contract requires a showing of **sole causation** and a precise showing of profits. O.C.G.A. § 13-6-8.

USI proposes Gunnersen establish its damages claim for compensatory damages.   Gunnersen's purports to calculate damages from the 25 insurance accounts that moved from USI to Lockton after the resignation of the Former Employees.   Gunnersen's report calculates damages according to two distinct methodologies.   First, Gunnersen proposes a valuation of damages based on a fictional, hypothetical sale by USI of the 25 accounts as of December 31, 2019; and second, Gunnersen calculates damages based on a flawed and insufficient lost profits analysis.

Gunnersen's report and testimony make evident that she wholly fails to address the question of causation – *i.e.* whether the 25 accounts moved to Lockton for benign reasons (such as a close personal relationship with one or all of the Former Employees, or because of poor service at USI, or both) or solely because of unlawful conduct.  (Gunnersen Dep. [Doc. 256-2], 52.)  USI sent Gunnersen a list of 25 clients to use, and Gunnersen "just assumed" that the 25 accounts were lost because of some unlawful action.  (*Id*.)  Gunnersen's presumed causation undermines her entire analysis, and her report and testimony cannot be presented at trial.

Gunnersen's fictional sale of business concept is contrary to Georgia law and must be rejected because it goes far beyond the boundaries set by Georgia law for recovery of damages, and also because the sale analysis is otherwise flawed.

Gunnersen's lost profits analysis fares no better because it is not premised on a shown history of profitability, was not contemplated by the parties, and does not calculate profits based on actual expenses incurred by USI.

## ARGUMENT AND CITATION OF AUTHORITY.

A.    <u>Standard</u>.

The Federal Rules of Evidence require proposed expert testimony to be reliable and relevant.  Fed. R. Evid. 702.  Under Rule 702, the testimony must also "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; *U.S. v. Henderson*, 409 F.3d 1293, 1304 (11th Cir. 2005).  "Expert testimony assists the trier of fact 'if it concerns matters that are beyond the understanding of the average lay person.'" *Zurich Am. Ins. Co. v. Hardin*, No. 1:16-cv-2312, 2018 U.S. Dist. LEXIS 239904, at *8 (N.D. Ga. Mar. 14, 2018) (quoting *Frazier*, 387 F.3d at 1262).  District courts serve as a gatekeeper, and exclude expert testimony and reports based on untrustworthy methods. *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1250 (11th Cir. 2007); *U.S. v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc) ("The importance of *Daubert'*s gatekeeping requirement cannot be overstated.").

"To this end, trial courts conduct a rigorous three-part inquiry that asks: (1) if the expert is qualified by background, training, and expertise to testify competently

regarding the matters [s]he intends to address; (2) whether the methodology by which the expert reaches h[er] conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) if the expert testimony would assist the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1027 (11th Cir. 2014). The party seeking to introduce expert testimony bears the burden of establishing, by a preponderance of the evidence, these factors. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir.2004).

B.   Gunnersen's Report and Testimony is Based on **Assumed** Causation that is Unsupported by the Evidentiary Record.

Gunnersen's damages report and testimony purports to calculate damages from 25 accounts lost by USI based on two methodologies: a hypothetical sale of the 25 accounts and lost profits.  Both proposed valuation methods are undergirded by a flawed presumption. Gunnersen presumes that the loss of each of the 25 insurance accounts was "caused" by an unlawful act committed by the Former Employees or Lockton.  And beyond assuming causation, Gunnersen's report fails to consider other, benign reasons that clients may have moved their business from USI, which are not connected to any alleged breach of contract or other duty.

1.    <u>Gunnersen improperly assumes causation</u>.

In her analysis, Gunnersen admits that she "did not look into causation." (Gunnersen Dep. [Doc. 256-2], 53.)   USI provided Gunnersen a list of the 25 accounts it lost and directed her to calculate damages based on those accounts.  (*Id.*, 16-18.)  "The account list was given to me and those were represented to be the accounts of the former employees of USI. . . .  They went to Lockton.  I assumed that those – there was a direct correlation."  (*Id.*, 39.)[2]

Without any analysis, Gunnersen's damages report adopts USI's claim that all 25 clients moved to Lockton because of some unlawful conduct.  But USI cannot clothe its contentions regarding causation in the garb of an expert opinion and foist it upon the jury.  The Eleventh Circuit considered a similar situation in *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008 (11th Cir. 2014), a case involving restrictive covenants related to competition between two stores.  In *Winn-Dixie*, the damages expert "studied the correlation between Winn-Dixie . . .  sales and the

---

[2]    Gunnersen testified at least five times at deposition that she simply "assumed" or "presumed" causation for her analysis.  (Gunnersen Dep. [Doc. 256-2], 53 ("I did not look into causation, just assumed based on circumstances"); 54 ("You just presumed causation?" – "That is correct."); 38 ("I'm assuming that there was – there were covenants that were in place that the former employees violated and the accounts were BOR'd to Lockton"); 39 ("assumed that the accounts that moved were moved as a result of some conduct by my clients"); 40 ("I assumed that" clients moved because of some conduct by the Former Employees).

presence of a Defendant's store nearby" and "found lower Winn-Dixie sales when a

dollar store is nearby." *Id*. at 1029.  Yet this showing was insufficient.  "[T]o prove

its claims, Winn-Dixie needed to make a far more precise showing: that Winn-Dixie

suffered damages **as a result of** Defendants' sale of groceries in a larger sales area

than permitted by the restrictive covenants." *Id*. (emphasis supplied).  The district

court properly excluded the expert report because

> admission of the evidence could mislead a jury into believing that the
> data speaks to a causal link. *See, Frazier*, 387 F.3d at 1263 ("[E]xpert
> testimony may be assigned talismanic significance in the eyes of lay
> jurors, and, therefore, the district courts must take care to weigh the
> value of such evidence against its potential to mislead or confuse."). . .
> The issue in this case is not whether Defendants are competing with
> Winn-Dixie. The issue is what damages, if any, Defendants caused
> Plaintiffs by selling more groceries than allowed in the respective
> stores' grocery exclusives. Since Dr. Pacey's Reports do not provide
> any empirical evidence on this issue, I find that allowing her to testify
> may cause a jury to believe that Defendants are causing Plaintiffs'
> damages by selling more groceries than allowed, when her regression
> model and other empirical data is only focused on competition.

*Id*. at 1029-30.[3]

The same rationale applies here.  The question is not whether USI and Lockton

(and hundreds of other insurance agents and agencies) occasionally compete for

---

[3]      While *Winn Dixie* involved Florida law, the result is the same under Georgia
law.  *See Wind Logistics Prof'l, LLC v. Universal Truckload, Inc.*, No. 1:16-cv-
00068, 2020 U.S. Dist. LEXIS 108160 (N.D. Ga. June 22, 2020) (to recover lost
profits, a company "must show that damages… arose from [the] breach… rather
than from some other market force.").

customers. Nor is the question about the abstract value of 25 specific accounts to USI.  The question is whether 25 specific client accounts moved to Lockton **because of some unlawful** conduct by the Former Employees.   Gunnersen's analysis "employed tools far too blunt to illuminate this question.  [USI] ask[s] to bridge too broad a logical gap: the fact that [Gunnersen] found [damages when clients moved to Lockton] sheds little light on the amount of direct damages cause by… impermissible [actions]."   *Id*. At best, Gunnersen's analysis is no more than a valuation of the 25 accounts and sheds no light on damages caused any alleged unlawful conduct. Admitting such an imprecise analysis "could mislead a jury into believing that the data speaks to a causal link. *See Frazier*, 387 F.3d at 1263 ("[E]xpert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse.")."  *Id*.

Judge Brown considered a similar situation in *Wind Logistics Prof'l, LLC v. Universal Truckload, Inc.*, No. 1:16-cv-00068, 2020 U.S. Dist. LEXIS 108160 (N.D. Ga. June 22, 2020), a case involving competition between employees and their former employer.  "[A plaintiff] must show that damages (including lost profits) arose from [a defendant's] [wrongful conduct] rather than from some other market force. Expert testimony that merely assumes this causation without doing any such

analysis would not assist the trier of fact in calculating recoverable damages (if any)." *Id*. at *10-11.

Likewise, in *Flowers Bakeries Brands, Inc. v. Interstate Bakeries Corp.*, No. 1:08-CV-2376-TWT, 2011 U.S. Dist. LEXIS 28034 (N.D. Ga. Mar. 17, 2011), Judge Thrash excluded an expert report calculating lost profits in a trademark infringement case because (like Gunnersen's) the analysis assumed causation. The expert's analysis "failed to account for factors other than confusion that may have caused the Plaintiff's losses." *Id*. at *8. The defendants challenged the expert claiming his "testimony is flawed because he fails to account for lost profits attributable to market factors such as price, advertising, and quality." *Id*. at *6. Judge Thrash agreed, holding that to be admissible, "[the expert report] cannot assume that *all* lost profits were attributable to the Defendant's infringement." *Id*. at *9 (emphasis in original).

*Coffee Butler Serv. v. Sacha*, 208 Ga. App. 4 (1993), makes the same point. In a restrictive covenant case, Coffee Butler's two damages experts assumed that all lost accounts were attributable to the defendant's breach. *Id*. at 6-7. But "[n]either expert had any information on why any of the accounts had left Coffee Butler." *Id*. at 7. Instead, they "based their analysis solely on the fact that the accounts left and the comparison of the total loss with what each would have anticipated would have

been lost based on industry norms." *Id.*  "Coffee Butler, in the face of the facts of record, may not rest on suppositions and its contention that the jury might make inferences from the mere fact of the loss of the accounts." *Id.  See also*, *Rogers v. Norvell*, 174 Ga. App. 453, 458-59 (1985) ("Having determined that defendant's actions were not the proximate cause of the alleged damages suffered by plaintiffs, the counts alleging **breach of contract and breach of fiduciary duty** must suffer the same result." (emphasis supplied)).

Here, there is no dispute that Gunnerson simply assumed causation. (Gunnersen Dep. [Doc. 256-2], 38, 39, 40, 53, 54.)  Even worse, Gunnerson asserted during her deposition that causation was not a relevant factor in her analysis. (*Id.*, 54-55.)  She then reaffirmed that testimony, although USI later submitted an errata that contradicted her clear testimony. (Gunnersen Errata [Doc. 256-7].) Gunnersen's conflicting testimony regarding a core concept of causation undermines the credibility of her work product and her claim to be a damages expert.[4]  Under established Georgia law, Gunnerson's testimony must be excluded.

---

[4]     Although Gunnerson's errata changes her testimony and claims that she "considered" causation. (Gunnersen errata [Doc. 256-7] re p. 52, 53 & 54.), she did not alter her report to show any consideration of causation, and still offers no methodology for such consideration or why that alleged consideration (which she denied multiple times under oath at deposition) satisfies Rule 702. Further, Gunnersen's testimony remains that she "presumed causation" and that her report does not "provide an expert opinion on causation."  (*Id.* at 54.)

2.  <u>Gunnersen failed to consider benign causes for the client movement</u>.

Gunnersen recites in her deposition errata that she "considered causation" in her analysis. (Gunnersen Errata, re pp. 52, 53, 54.)  Yet there is no evidence that Gunnersen considered entirely lawful causes for a client to move its business from USI to Lockton – such as service levels, competence, pricing, or personal relationships.  As the Eleventh Circuit said in *Winn-Dixie*, "[t]he issue in this case is not whether Defendants are competing with [USI]. The issue is what damages, if any, Defendants caused Plaintiffs by [engaging in certain acts of unlawful competition].  Since [Gunnersen]'s Report[] do[es] not provide any empirical evidence on this issue, I find that allowing her to testify may cause a jury to believe that Defendants are causing Plaintiffs' damages [unlawfully competing], when her regression model and other empirical data is only focused on competition." *Winn-Dixie Stores, Inc.* 746 F.3d at 1029-30.

Gunnersen's failure to analyze benign causes for the 25 clients to move to Lockton, and her failure to include such analysis in her expert report, render the report fatally unfit to assist a trier of fact in making a damages determination. "Expert testimony that merely assumes [ ] causation without doing any such analysis would not assist the trier of fact in calculating recoverable damages (if any)." *Wind*

*Logistics Prof'l, LLC*, No. 1:16-cv-00068, 2020 U.S. Dist. LEXIS 108160, at *10-11 (N.D. Ga. June 22, 2020).

USI and Gunnersen willfully and purposefully ignored evidence in the record refuting the presumption of causation underlying Gunnersen's damages report. Rather than considering such evidence, Gunnersen blindly accepted USI's contentions regarding causation and incorporated them into her report.  To qualify as an expert under Rule 702, much more is required.   "To be clear, an expert must conduct an independent analysis when reviewing the records." *Zurich Am. Ins. Co.*, 2018 WL 5270356, at *3. "He or she may not simply recite a witness's testimony about the facts surrounding a transaction and refashion it as an expert opinion." *Id.* (citation omitted). Rather, "[a]n expert must be able to explain step by step how and why he reached his given conclusions." *Kipperman v. Onex Corp*., 411 B.R. 805, 844 (N.D. Ga. 2009) (*citing Lippe v. Bairnco Corp.,* 99 F. App'x. 274, 279 (2d Cir. 2004)). For this reason, under *Daubert,* "the trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" *Kipperman*, 411 B.R. 805, 844 (N.D. Ga. 2009) (*citing McClain v. Metabolife Intern., Inc.,* 401 F.3d 1233, 1244 (11th Cir. 2005)). *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335, 1342-43 (11th Cir. 2010) (upholding trial court's exclusion of expert testimony because, among other things, the expert failed to rule out other alternative causes); *Wilson v. Taser*

*Int'l, Inc.*, 303 F. App'x 708, 714-15 (11th Cir. 2008) (affirming exclusion of expert's opinion when the expert "did not perform ... any tests [ ] to rule out... alternative mechanisms of injury").

    C.    <u>Gunnersen's Proposed Valuation of Damages Based on a Hypothetical Sale is Contrary to Georgia Law and thus Not Helpful to the Jury</u>.

Gunnersen advocates that the value of the 25 clients is determined by contemplating a hypothetical sale by USI of the 25 accounts. "We use a multiple of EBITDA or a multiple of revenue in certain situations. And those are the first two methodologies that I provided for valuation." (Gunnersen Dep. [Doc. 256-2], 47.) Gunnersen's valuation calculation is based on a fictional sale by USI of the 25 lost accounts as of December 31, 2019, - the last day of the month in which the Former Employees resigned from USI. (*Id.*, 23-25.) Gunnersen's valuation is based on an "analysis that USI could have sold the business effective December 31, 2019, even though there is no evidence that USI had any desire or intent to sell all or any part of its aviation insurance business." (*Id.* at 55-56.) Gunnersen admits she has no evidence or knowledge that USI ever intended to sell its aviation accounts or whether it has ever engaged in any such sale of a small number of accounts. (*Id.* at 155, 193.)

Under Georgia law, "[a]ctual damages for breach of contract . . . are given as compensation for the injury sustained as a result of the breach of a contract."

*AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1368 (11th Cir. 2021).   A plaintiff can only recover actual damages "of the sort that the parties contemplated when the contract was made."   *Id*. at 1369.   "Damages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of its breach."   O.C.G.A. § 13-6-2.   "Damages growing out of a breach of contract, in order to form the basis of a recovery, must be such as can be traced solely to the breach, must be capable of exact computation, must have arisen naturally and according to the usual course of things from such breach, and must be such as the parties contemplated as a probable result of the breach."   *Dobbs v. Titan Props.*, 178 Ga. App. 389, 392 (1986).[5]

USI's hypothetical sale calculation of damages is too remote and disconnected from the parties' contract to constitute a permissible measure of damages under Georgia law.   A fictional sale does not quantify damages "such as arise naturally and according to the usual course of things from such a breach."   O.C.G.A. § 13-6-2.

---

[5]   The same concept holds true under Georgia law for tort damages.   O.C.G.A. § 51-12-9 ("damages traceable to the act, but which are not its legal and natural consequence, are too remote and contingent to be recovered").

And there is no evidence that the parties contemplated such a source of damages when the contacts were made. *Id.*

No appellate court applying Georgia law has ever approved of a fictional sale methodology as a proper measure for damages in a competition case like this one. Judge Grimberg recently rejected a sale-based damages theory in a similar restrictive covenant case because the analysis "is premised on a formula used for purchasing a book of business, not calculating lost profits from a client exodus." *Gallagher Benefit Servs. v. Campbell*, 528 F. Supp. 3d 1326, 1352 (N.D. Ga. 2021). "There is no indication . . . that a damages model predicated on a formula employed to valuate a book of business . . . is relevant to calculating the lost profits from a departing client. This testimony is more likely to confuse the factfinder than aid its deliberations." *Id.*

Gunnersen's sale of business damages theory suffers from other defects that make it unreliable and unhelpful. She admits that in the aviation insurance niche, client retention is "definitely depending upon producer relationships." (Gunnersen Dep. [Doc. 256-2], 138.) Because of the importance of the producer relationships, Gunnersen's sale of business damages calculation not only presumes that USI could have sold the 25 aviation accounts to another firm, but it also presumes that the Former Employees would be part of the hypothetical sale to support client retention.

(*Id.*, 154-55.)  This is a fatally flawed assumption.  Gunnersen has no knowledge of whether the Former Employees would be willing to be part of a purchase or even whether USI ever contemplated such a transaction.  (*Id.* at 155.)  The willingness of the Former Employees to be sold along with the aviation practice is too uncertain to be assumed in a damages calculation.

Additionally, Gunnersen's hypothetical sale of business calculation is based on a single lump sum payment for the entire 25 accounts in the book of business.  Yet Gunnersen admits that a lump sum payment is "rare" in the industry.  (Gunnersen Dep. [Doc. 256-2], 124.)  Instead, it is common for a deal to include up to a four-year earn-out period, during which the price paid depends on changing factors, such as client retention.  (*Id.* at 122-24.)  Thus, Gunnersen's fictional sale of business damages theory is unreliable because it is premised on a key sales term (a lump sum payment) that she admits is "rare" for the insurance industry.

D.   Gunnersen's Alternative Valuation of Alleged Lost Profits Fails
as a Matter of Georgia Law and thus is Not Helpful to the Jury.

Gunnersen's second damages theory is a "lost profits analysis," which Gunnersen prepared at the direction of USI's legal counsel.  She admits that lost profits is not her normal or preferred calculation method.  (Gunnersen Dep. [Doc. 256-2], 50, 148-49.)

For this calculation, Gunnersen projected profits "out to the future and then bring them back using analysis to what their current value is." (*Id*. at 149.) But Gunnersen admits that this valuation is not preferred because "[i]t's very difficult to predict the cycles of what will happen in the insurance industry. It's a very cyclical based industry." (*Id*. at 149.)

Under Georgia law, "the profits of a commercial business are dependent on so many hazards and chances, that unless the anticipated profits are capable of ascertainment, and the loss of them traceable directly to the defendant's wrongful act, they are too speculative to afford a basis for the computation of damages." *AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1370 (11th Cir. 2021). Thus, lost profits that are not a part of the contract are not recoverable "unless such damages are within the **contemplation of the parties at the time of the contract** was made, are capable of exact computation, and are **independent of any collateral enterprise** entered into in contemplation of the contract." *Id*. (quoting O.C.G.A. § 13-6-8) (emphasis supplied, internal quotes omitted).

In *Webster v. Purdy*, 166 Ga. App. 183 (1983), the Court of Appeals reversed a jury award for a plaintiff on a claim for breach of a non-compete covenant because the claimed damages were unsupported. *Id*. at 184 ("Damages growing out of a breach of contract, in order to form the basis of a recovery, must be such as can be

**traced solely to the breach**, must be capable of exact computation, must have arisen naturally and according to the usual course of things from such breach, and **must be such as the parties contemplated** as a probable result of the breach.") (emphasis supplied). *See also, Triad Drywall, LLC v. Bldg. Materials Wholesale, Inc.*, 300 Ga. App. 745, 746, (2009) ("remote and consequential damages, such as the claim of lost profits in this case, **must be traced solely to the breach and must be capable of exact computation**.") (emphasis supplied, internal quotes omitted).

As in the cited cases, USI's proposed lost profits analysis fails on multiple fronts.

1. USI's claimed lost profits are not "independent of any collateral enterprise" and thus are not recoverable.

USI's claimed lost profits are based upon projections of future profits from selling insurance to 25 specific aviation clients. Profits earned from third-party insureds cannot be recovered because they are not "independent of any collateral enterprise." The claimed profits depend on clients' decisions to obtain their insurance from USI, but clients are free to obtain their insurance from any insurance broker they choose. (Gunnersen Dep. [Doc. 256-2], 131.) Further, profits from the sale of **aviation** insurance in 2020 and 2021 would be affected by outside factors such as COVID travel restrictions, which Gunnersen specifically excluded from her analysis. (*Id.*, 23.) Therefore, the claimed lost profits Gunnersen describes in her

analysis are dependent on other, collateral, enterprises and cannot be recovered under Georgia law. *Hixson-Hopkins Autoplex v. Custom Coaches*, 208 Ga. App. 820, 821 (1993) ("The lost profits sought by Custom Coaches are not independent of any collateral enterprise entered into in contemplation of the claimed contract. In fact, they are very dependent upon the market for Custom Coaches' vans; a market which the testimony indicated was suffering from a recession."). *See also, EZ Green Assocs., LLC v. Ga.-Pacific Corp.*, 331 Ga. App. 183, 185 (2015) (trial court properly excluded damages calculations because "they were not based on any actual track record of sales, as required by Georgia law" and "they failed to account for market realities").

2. <u>There is no evidence that client profits were "within the contemplation of the parties at the time the contract was made.</u>"

USI presents no evidence that lost profits from third party clients was "contemplated by the parties at the time the contract was made" as required by Georgia law. O.C.G.A. § 13-6-2.

3. <u>USI cannot show an "exact computation" of lost profits because it fails to show a "track record" of profitability.</u>

"[I]n Georgia, it is well settled that anticipated profits are too speculative and uncertain to be recoverable unless they are based on an **actual** track record of sales. And this requirement is based on the rationale that the profits of a commercial

business are dependent on so many hazards and chances, that unless the anticipated profits are capable of ascertainment, and the loss of them traceable directly to the defendant's wrongful act, they are too speculative to afford a basis for the computation of damages." *EZ Green Assocs., LLC v. Ga.-Pacific Corp.*, 331 Ga. App. 183, 188-89 (2015) (emphasis in original).   Any attempt to show "exact computation" of lost profits "must include evidence showing that the business claiming lost profits had a proven track record of profitability" and "its projected expenses, for that time frame" for which damages are claimed.  *AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1370-71 (11th Cir. 2021).   Without this evidence, a party "fail[s] as a matter of law to prove lost profits." *Id*.

Gunnersen's damages analysis is devoid of evidence showing a proven record of profitability at USI for the identified accounts.   Gunnersen's analysis merely predicts future profits, with no data or analysis of historical profitability.   The failure to establish a record of profitability is fatal to USI's claim for lost profits.

*EZ Green Assocs., LLC v. Ga.-Pacific Corp.*, 331 Ga. App. 183 (2015), is directly on point.   EZ Green sought to collect lost profits based on a breach of contract.   EZ Green's "proposed calculation methods are based solely on anticipated or expected profits, not any actual track record of sales or history of profitability with the large retailer."  *Id*. at 188-89.   The trial court excluded the expert report

seeking profits and the Court of Appeals affirmed because the "proposed calculation methods are simply too speculative, remote, and uncertain to be recoverable." *Id.* *See also, AcryliCon USA, Ltd. Liab. Co. v. Silikal GmbH*, 985 F.3d 1350, 1371 (11th Cir. 2021) ("AC-USA failed to introduce any evidence of projected profits, revenues, or expenses. Nor did AC-USA produce evidence of a 'proven track record of profitability.' . . . . The evidence was insufficient to allow the jury to conclude with a reasonable degree of certainty that, if not for the breach, AC-USA would have made the 1061 SW sales that Silikal did. Therefore, AC-USA failed as a matter of law to prove lost profits."); *Triad Drywall, LLC v. Bldg. Materials Wholesale, Inc.*, 300 Ga. App. 745, 747 (2009) ("Triad was required to show a 'proven track record of profitability' to recover such damages. . . . But Triad presented no evidence that it had a history of profitability during the period relevant to this case, other than a general assertion by Toole that the corporation was profitable from 2003 to 2008." (internal citations omitted)).  The lack of a proven record of profitability is a fatal defect in Gunnersen's report and testimony.

      4.    <u>USI fails to calculate its true historical expenses to support its claim for a history of profitability or to establish claimed future profits</u>.

Gunnersen claims that her lost profits analysis computes "revenue minus expenses." (Gunnersen Dep. [Doc. 256-2], 45.)  Yet despite having access to her

client, USI's, data, Gunnersen admits that in her report "we do not use historical expenses." (*Id*. at 46.)  Instead, Gunnersen merely used "estimated expenses" that are "adjusted based upon the peers in the industry as provided by industry guidelines, best practices guidelines." (*Id*. at 45-46.)  Yet Gunnersen also admits that she did not use the industry guidelines, but instead made a downward adjustment to industry benchmark expense data "based on my judgment." (Gunnersen Dep. [Doc. 256-2], 182.)

Gunnersen ordinarily would ask a client for actual expense data for her analysis, but admitted she did not even ask for actual expense data from USI. (Gunnersen Dep. [Doc. 256-2], 184-186.)  Thus, Gunnersen's report and analysis contains no historical data showing USI's profitability or expenses.[6]  And thus Gunnersen's projected future expenses are not premised on historical actual expenses, and further are tainted by the same arbitrarily, downwardly adjusted benchmark data.

---

[6]      Indeed, evidence obtained from USI actually reflects that its aviation insurance business was not profitable, or was only minimally profitable.  (Fant Dep. [Doc. 244-1], 124-26 & Exh. 8; Meyers Dep. [Doc. 230-1], 69 & Exh. 26 (USI Vice President's analysis of Aviation Group at USI on December 2, 2019, saying "the numbers work out horribly," "we just can't afford the staff," there is no "good plan that falls into our metrics," and expressing desire to staff "without Roger [Maldonado] and 2 Account Managers").

Georgia law requires more.  Georgia law is clear that without data showing actual expenses incurred in generating revenue, there can be no valid calculation of profits. "[T]o recover lost profits one must show the probable gain with great specificity **as well as expenses incurred in realizing such profits**." *KAR Printing, Inc. v. Pierce*, 276 Ga. App. 511, 512 (2005) (emphasis supplied).  Without an accurate showing of expenses, net profit cannot be calculated with any certainty. And Georgia law repeatedly and consistently requires a showing of net profits, not merely gross profits unencumbered by expenses.

"To sufficiently quantify lost profits, a finder of fact must be provided with figures establishing the business's projected revenue as well as its projected expenses." *Legacy Acad., Inc. v. JLK, Inc.*, 330 Ga. App. 397, 404 (2014).  *See also, Authentic Architectural Millworks v. SCM Grp. USA*, 262 Ga. App. 826 (2003) (plaintiffs barred from recovering lost profits because while the plaintiff lost revenue, it "submitted no evidence from which its lost net profits could be calculated"); *Shaw v. Ruiz*, 207 Ga. App. 299, 304 (1993) (lost profits could not be recovered because there was no evidence from which net profits could be calculated); *Empire Shoe v. NICO Industries*, 197 Ga. App. 411, 414 (1990) (gross profits cannot be used as basis for recovery of damages for lost profits)).

Gunnersen's lost profits analysis fails in all directions.  Looking back, it fails to establish a history of profitability and fails to consider actual historical cost/expense data.  Looking forward, the analysis fails to establish an estimate of actual expenses to support a lost profits claim, and fails to consider market factors that may otherwise reduce the income from the accounts.  While any defect is fatal, USI's lost profits damages theory fails on all fronts.  *See, Bearoff v. Craton*, 350 Ga. App. 826, 836 (2019) (plaintiff "failed to present evidence showing . . . a track record of profitability[] [n]or did they provide figures showing the store's anticipated revenues and expenses for the time period . . . .  In the absence of such evidence, the . . .. [plaintiff] failed to provide a sufficient basis for the trial court to calculate the Plaintiffs' lost profits with reasonable certainty" and the trial court properly refused to award compensatory damages).

## **CONCLUSION.**

The Former Employees and Lockton respectfully urge the Court to grant their motion to strike and exclude the damages report and testimony of USI's proposed expert witness Lorna Gunnersen.

Respectfully submitted this 27th day of January, 2023.

WARGO, FRENCH & SINGER LLP        HALL, GILLIGAN, ROBERTS
                                  & SHANLEVER LLP

 /s/ David M. Pernini

David M. Pernini
Georgia Bar No. 572399
Brandon Parrish
Georgia Bar No. 388223
999 Peachtree Street, NE, Suite 1120
Atlanta, Georgia 30309
Telephone: (404) 853-1500
Fax: (404) 853-1501
jwargo@ wfslaw.com
dpernini@wfslaw.com
bparrish@wfslaw.com

*Counsel for Southeast Series of Lockton
Companies, LLC*

*/s/ Warren R. Hall Jr.*
Warren R. Hall, Jr.
Georgia Bar No. 319405
Wayne M. Cartwright
Georgia Bar No. 257328
Kristina K. Griffin
Georgia Bar No. 808069
3340 Peachtree Road NE, Suite 1900
Atlanta, Georgia 30326-1082
T: (404) 442-8776
F: (404) 537-5555
whall@hgrslaw.com
wcartwright@hgrslaw.com
kgriffin@hgrslaw.com

*Counsel for Plaintiffs Taylor Anderson,
Dean Anderson, and Roger Maldonado*

## **RULE 7.1.D CERTIFICATE**

The undersigned counsel certifies that this document has been prepared with Times New Roman 14-point font in accordance with Local Rule 5.1.C.

*/s/ Warren R. Hall, Jr..*
WARREN R. HALL, JR.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on January 27, 2023, a true and correct copy of the foregoing document was filed with the Clerk of the Court by using the CM/ECF system, which will automatically serve all parties of record.

*/s/ Warren R. Hall, Jr..*
WARREN R. HALL, JR.