UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **JAMESON TAYLOR ANDERSON, ROBERT DEAN ANDERSON, and ROGER MALDONADO,**<br><br>Plaintiffs/Counterclaim Defendants,<br><br>v.<br><br>**USI INSURANCE SERVICES LLC,**<br><br>Defendant/Counterclaim Plaintiff. | <u>**CONSOLIDATED CASES PURSUANT TO FED. R. CIV. P. 42**</u><br><br>**Civil Action File No.**<br><br>**1:19-cv-05582-VMC** |
| **USI INSURANCE SERVICES LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**SOUTHEAST SERIES OF LOCKTON COMPANIES, LLC,**<br><br>Defendant. | **Civil Action File No.**<br><br>**1:20-cv-02490-VMC** |

<u>**REPLY BRIEF IN SUPPORT OF MOTION TO STRIKE AND EXCLUDE FROM TRIAL THE REPORT AND TESTIMONY OF USI'S PROPOSED EXPERT WITNESS LORNA GUNNERSEN**</u>

Under established Eleventh Circuit and Georgia law, this Court should exclude the testimony of Lorna Gunnersen because Gunnersen's methodologies are unreliable, irrelevant, and premised on assumptions untethered to any admissible evidence in the record. In a cursory attempt to fill in the glaring gaps in Gunnersen's testimony and methodology, USI offers two arguments: (1) Georgia law endorses a "flexible approach to valuing damages in restrictive covenant cases," and (2) "there is no question that the damage to USI—the loss of the subject accounts—was incident to the Former Employees' breaches of contract and to the Lockton Parties' concerted activities." But Georgia law does not flex that far. USI must establish that it suffered damages **as a result of** some **unlawful** conduct. It cannot mislead the jury into assuming a causal link based solely on it—and its expert's—say so.  Because USI's unsupported assertions cannot conceal the gaps in Gunnersen's flawed methodologies, this Court must exercise its gatekeeping role under the Eleventh Circuit's "rigorous" three-part test and exclude Gunnersen's testimony.

A. **Gunnersen improperly assumed causation, rendering her analysis irrelevant, unreliable, and confusing to a jury.**

Gunnersen's report is predicated on the assumption that all 25 clients left USI for Lockton solely because of the unlawful conduct of the Former Employees. This assumption makes **both** her hypothetical sale and lost profits analyses

1

fundamentally flawed and inadmissible. USI's response underscores that this fundamental assumption undergirds Gunnersen's testimony. According to USI: "Gunnersen's report has a singular purpose, to calculate and provide evidence of the amount of **damages** USI has suffered in connection with the loss of the subject client accounts." [Doc. 328, p. 4 (emphasis supplied)]. This, tellingly, is exactly how USI wants the jury to understand Gunnersen's report. Through Gunnersen, USI equates the value of the accounts to USI's claimed damages, while simply assuming causation. USI's messaging is simple: causation has already been decided, because Gunnersen, an expert, assumed it. This flaw in Gunnersen's reasoning is fundamental and insurmountable; and under Eleventh Circuit law it necessitates excluding Gunnersen and her report from the trial.

> 1. The reasoning of the Eleventh Circuit Court of Appeals in *Winn-Dixie* controls.

In *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1027 (11th Cir. 2014), Winn-Dixie proffered an expert to prove damages for alleged wrongful competition in breach of a contract. The defendants operated competing stores selling groceries in the same shopping center. *Id.* at 1016. Like Gunnersen, Winn-Dixie's expert ignored that the parties were competitors, and that lawful competition could account for some, or all, of the claimed lost profits. *Id.* at 1028-29. The District Court excluded the expert's analysis as fundamentally flawed, and

the Eleventh Circuit affirmed. *Id.* at 1030. As the Eleventh Circuit explained, "[the] admission of the [expert's] evidence could mislead a jury into believing that the data speaks to a causal link." *Id.* at 1029.

Gunnersen's report repeats this same flaw, and *Winn-Dixie* requires that her report be excluded. Gunnersen's analysis mingles the value of all accounts; she admits she engaged in no independent analysis of evidence why each of the client accounts moved. (Gunnersen Dep., 53:15-18 and 175:23-176:7.) As a result, Gunnersen's testimony has a high risk of confusing the jury and must be excluded.

In response, USI argues that causation need not be established by an expert. But this point merely avoids the issue. Gunnersen's assumption of causation results in an unreliable, overly simplistic, and blunt methodology that will confuse the jury on the core issue of causation. Assuming causation means that Gunnersen's testimony does not address the issue it purports to explain: USI's **recoverable** damages. Admitting Gunnersen's testimony suggests to the jury that they can rely on her expertise, rather than make their own inquiry into the disputed—and admittedly difficult—issue of causation. *Winn-Dixie Stores, Inc.*, 746 F.3d at 1029. "[E]xpert testimony may be assigned talismanic significance in the eyes of lay

3

jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse." *Frazier*, 387 F.3d at 1263.

USI asserts that the Former Employees have "identif[ied] no authority requiring a valuation expert to establish causation when, as here, there is ample non-expert evidence establishing causation." [Doc. 328, p. 8.] But *Winn-Dixie* makes clear that the relevant question is **not** whether separate, non-expert evidence exists. Instead, the relevant issue is whether an expert's presumption on causation will undermine the jury's ability to properly consider the issue for itself. *Winn-Dixie*, 746 F.3d at 1029 (discussing the risk that "admission of the evidence could mislead a jury into believing that the data speaks to a causal link" as the basis for excluding an expert).

USI attempts to distinguish *Winn-Dixie* by relying on three *unpublished, out-of-circuit,* district court cases in support of its assertion that an expert witness need not assess causation. Each of these cases is irrelevant and establishes only the uncontroversial point that proof of causation can come from fact witnesses. *See Gaedeke Holdings VII, Ltd v. Baker*, No. CIV-11-649-M, 2015 U.S. Dist. LEXIS 182550, at *8 (W.D. Okla. Nov. 30, 2015) ("[p]roof of causation often comes from

4

fact witnesses").[1] These cases do not address the clear holding in *Winn-Dixie* and the issue present here: that Gunnersen assumed causation and that assumption led her "to employ[ ] tools far too blunt to illuminate [the damages] question." *Winn-Dixie*, 746 F.3d at 1029.

USI's reliance on *Gallagher Benefit Servs., Inc. v. Campbell*, 528 F. Supp. 3d 1326, 1342 (N.D. Ga. 2021), and *KW Plastics v. U.S. Can Co.*, 199 F.R.D. 687, 692 & n.5 (M.D. Ala. 2000) is unavailing. Again, these cases hold only that proof of causation can come from fact witnesses. They do not condone—or even address—an expert offering a valuation methodology that assumes causation, usurping that issue from the jury. Under *Winn-Dixie*, the Court must exclude Gunnersen's testimony.

    2.    <u>Gunnersen's decision – at USI's direction – to assume causation ignores abundant evidence of benign causes and makes her testimony unhelpful and likely to confuse the jury</u>.

---

[1] USI's other two supporting cases are even further off point. *See Orthofix Inc. v. Gordon*, No. 1:13-cv-01463-SLD-TSH, 2016 U.S. Dist. LEXIS 43105, at *8 (C.D. Ill. Mar. 31, 2016) (allowing expert because challenging party did not show how assuming causation made the calculations unreliable); *Luitpold Pharm., Inc. v. ED. Geistlich Sohne A.G. Fur Chemische Industrie*, No. 11-cv-681 (KBF), 2015 U.S. Dist. LEXIS 123591, at *8 (S.D.N.Y. Sep. 16, 2015) (discussing in *dicta* that damages expert may "presume causation" but still striking the expert's report because assuming causation made her report unreliable).

Unable to meaningfully distinguish *Winn-Dixie*, USI instead argues there is no legitimate dispute as to causation or evidence that clients moved their business for other reasons. [Doc. 328, pp. 13-14.] This argument is disingenuous and demonstrates why Gunnersen's testimony is likely to confuse the jury and must be excluded. USI bears the burden of establishing its damages occurred solely because of wrongful conduct and that Gunnersen's testimony is admissible to assist the jury with this finding. Gunnersen's analysis fails to assist the jury in this exercise; instead, Gunnersen and USI attempt to improperly bridge the gap between the alleged breach and damages by simply presuming that all damages were caused by some alleged wrongdoing. USI cannot conceal the evidentiary gaps in its case and relieve itself of the burden of proof by offering expert testimony that omits any consideration of causation. This is exactly the type of expert testimony that courts in the Eleventh Circuit routinely exclude as likely to confuse the jury. *See, Hull v. Merck & Co., Inc.*, 758 F.2d 1474, 1477 (11th Cir. 1985) (*per curiam*) (admission of speculative and "potentially confusing testimony is at odds with the purposes of expert testimony as envisioned in Fed. R. Evid. 702"); *Frazier*, 387 F.3d at 1263 (holding expert testimony must be excluded if has the potential to mislead or confuse factfinder more than help); *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19md2885, 2021 U.S. Dist. LEXIS 36950, at *35 (N.D.

Fla. Feb. 28, 2021) (excluding testimony because probative value was "substantially outweighed by a danger that the testimony will confuse the jury."); *Disler v. Royal Caribbean Cruise Ltd.*, No. 17-CV-23874, 2019 U.S. Dist. LEXIS 116305, at *37 (S.D. Fla. July 10, 2019) (excluding expert opinion as unhelpful because "too great a leap between the facts of this case and his opinion"); *United States v. Hoang*, 891 F. Supp. 2d 1355, 1363 (M.D. Ga. 2012) (excluding expert's limited experts as unhelpful because "vague opinions, []over-generalizations, and [] summary conclusions" were likely to confuse and mislead the jury.).

Further, USI's assertion is belied by a tsunami of evidence that the 25 clients moved for reasons **entirely unrelated** to any breach of contract by the Former Employees. [*See* Order, Doc. 286, p. 51] In fact, **every client** that testified confirmed it moved its business for other reasons:

- Dowe Gallagher moved its business because Dowe Gallagher's insurance work required such a security clearance and no other provider could obtain such clearance in less than 12 months. (Gadway Dep. [Doc. 212], 74-75.) Further, Dowe Gallagher cited USI's "terrible" service, "terrible" administration, and bad track record. (*Id.* at 34, 39, 61.)

- National Air Cargo ("NAC") decided to move after USI failed to obtain a premium credit and threatened to cancel NAC's coverage without immediate payment. (Klingensmith Dep. [Doc. 226], 100 & Exh. 34.) NAC also testified that the new USI team "didn't have a clue." (*Id.* at 62.)

7

- Fulcrum, Air USA, Genesys, Tenax, S3, and Brightwater each testified that they moved to have Taylor Anderson personally continue to handle their insurance needs.[2]

In short, USI's suggestion that there is only "speculation" as to alternative causes for the client departures is false. [Doc. 328, p. 13.]. The evidence of benign causes is overwhelming, yet it is wholly ignored by Gunnersen in her report and analysis. That alone is grounds for striking her report. *See Wind Logistics Prof'l, LLC v. Universal Truckload, Inc.*, No. 1:16-cv-00068, 2020 U.S. Dist. LEXIS 108160 (N.D. Ga. June 22, 2020) (a company "must show that damages… arose from [the] breach… rather than from some other market force."); *Coffee Butler Serv. v. Sacha*, 208 Ga. App. 4, 7(1993) ("in the face of the facts of record, [plaintiff] may not rest on suppositions and its contention that the jury might make inferences from the mere fact of the loss of the accounts."); *Flowers Bakeries*

---

[2] **Fulcrum** decided to move "solely based on relationship with Taylor Anderson and work [he] had done," (Wood Dep., 99.) and would "go with wherever Taylor went" regardless of when it learned of his resignation. (Woods Dep. [Doc. 222], 201:21-202:3.) **Air USA** left USI because "I liked working with Taylor." (Kirlin Dep. [Doc. 221], 41.) **Genesys** initiated contact with Taylor Anderson and texted him, "[p]lease make sure we keep our relationship going. Call whenever you can." (Smith Dep. [Doc. 224], 96:14-15.) **Tenax** left because of invoicing difficulties at USI (Jagger Dep. [Doc. 223], 75), and its desire to maintain its relationship with Roger Maldonado and Taylor Anderson (*Id.*, at 124). **S3** would move with Taylor Anderson regardless of where he went. (Salmon Dep. [Doc. 211], 56.) **Brightwater** testified that "[Taylor] had done a very, very good job for us … and we wanted to keep … working with him to the extent we could," regardless of where he worked. (Sosa Dep. [Doc. 231], 103:12-19.)

*Brands, Inc. v. Interstate Bakeries Corp.*, No. 1:08-CV-2376-TWT, 2011 U.S. Dist. LEXIS 28034 *9 (N.D. Ga. Mar. 17, 2011) ("[the expert report] cannot assume that **all** lost profits were attributable to the Defendant's infringement.")

USI halfheartedly argues that Gunnersen considered evidence relevant to causation, but this assertion is belied by Gunnersen's own testimony. *See, e.g.,* Gunnersen Dep. [Doc. 256-2], 40 ("I assumed that" clients moved because of some conduct by the Former Employees); 53 ("I did not look into causation, just assumed based upon the circumstances"). Similarly, USI's allusion to Gunnersen's consideration of hypothetical revenue retention rates,[3] does not alter her unequivocal testimony she considered benign causation to be **irrelevant** to her opinion regarding damages. *Id.*, 54-55. Further, her report makes clear that she considered none of the causation testimony from the clients because USI provided her a list and she merely assumed causation. *Id.*, 39 ("The account list was given to me and … I assumed [that those accounts moved as a result of the conduct by the

---

[3] Gunnersen applied a variable retention rate for revenue and not client movement. (Gunnersen Dep. 174:23-175:2.) Further, Gunnersen's application of revenue retention rate is based not on USI's actual rate but an uncited industry standard further illustrating the unreliability of her methodology. (*Id*. at 166:3-8 and 177:14-178:11.)

Former Employees.")[4] Indeed, Gunnersen even failed to consider the impact of the pandemic on the aviation business. *Id*. at 23. Under *Winn-Dixie*, expert testimony predicated on unfounded presumptions is unreliable and must be excluded. *Winn-Dixie*, 746 F. 3d at 1029. Accordingly, Gunnersen's testimony cannot go to the jury.

### B. Gunnersen's hypothetical sale calculation is unreliable and unhelpful to the jury and must be excluded.

Gunnersen's testimony also should be excluded because her hypothetical sale calculation is irrelevant and unreliable and would confuse the jury. Gunnersen's hypothetical sale calculation of damages is too remote and disconnected from the Former Employees' contracts to constitute a permissible measure of damages under Georgia law. Under O.C.G.A. § 13-6-2, "Damages recoverable for a breach of contract are such as **arise naturally** and **according to the usual course of things** from such breach and such **as the parties contemplated, when the contract was made, as the probable result of its breach**." (emphasis supplied).[5]

---

[4] Indeed, Exhibit 1 to Gunnersen's report indicates that she considered only the three Former Employee's employment agreements and two summary monthly report of Aviation clients prepared by USI. [Doc. 314-1, p. 36].

[5] The same principle applies to USI's tort claims. O.C.G.A. § 51-12-9 ("damages traceable to the act, but which are not its legal and natural consequence, are too remote and contingent to be recovered").

10

This court has already held that a nearly identical damage model is inadmissible for exactly this reason. In *Gallagher Benefit Servs. v. Campbell*, 528 F. Supp. 3d 1326, 1352 (N.D. Ga. 2021), the court held that a hypothetical sale valuation, based on a multiple applied to EBITDA, is **not** admissible to establish damages for breach of a restrictive covenant. This is precisely the same methodology employed by Gunnersen. (Gunnersen Dep., 47 ("[W]e use a multiple of EBITDA or a multiple of revenue… [a]nd those are the first two methodologies that I provided").) As Judge Grimberg held in *Gallagher*, "[t]here is no indication . . . that a damages model predicated on a formula employed to valuate a book of business for future acquisition is relevant to calculating the lost profits from a departing client. This testimony is more likely to confuse the factfinder than aid its deliberations." *Id*. The *Gallagher* case is directly on point and mandates exclusion of Gunnersen's damage model.

Further, Gunnersen's hypothetical sale concept was never contemplated by the Former Employees at the time of the contract, or even USI or its counsel.[6] And there is no evidence that damages based on a hypothetical sale "arise naturally and according to the usual course of things from such breach." As a result, Gunnersen's

---

[6] Gunnersen testified that USI's counsel requested that she calculate damages using a lost profits analysis (Gunnersen Dep., 50), and that she prepared the hypothetical sale valuation because she preferred it (*id*. at 47).

11

report cannot support USI's damages argument and, more importantly, it will not assist the jury.

In support of Gunnersen's hypothetical sale concept, USI quotes from an irrelevant and unpublished district court order addressing the jurisdictional amount in controversy, *Direct Response Prods. v. Thomas*, No. 1:13-cv-1526-WSD, 2013 U.S. Dist. LEXIS 156897 (N.D. Ga. Nov. 1, 2013). But that case did not involve damages evidence like that offered by Gunnersen. Indeed, the plaintiff in *Direct Response Prods.* "has not here alleged any lost profits, lost customers, or lost employees as a result of Defendants' alleged breach." *Id*. at *10. Similarly, *Arthur J. Gallagher & Co. v. Babcock*, 703 F.3d 284 (5th Cir. 2012) does not support Gunnersen's hypothetical sale of business theory. The damages in *Babcock*, which arose out of a sale of business context, were based exclusively on lost profits. *Id*. at 293-94. A hypothetical sale of business was never proposed or considered in *Babcock*.

USI also cites *Gaines v. Compton & Knowles Corp.*, 190 Ga. App. 863 (1989) and *Reid v. Bryant*, 100 Ga. App. 105 (1959). [Doc. 328, pp. 18-19.] Both cases involved breaches of contracts for the sale of a business. *Gaines*, 190 Ga. App. at 864; *Reid*, 100 Ga. App. at 110. It is not surprising, or relevant, that these two cases permit recovery of damages based on diminished value of the subject of

the contract—the purchased business. *Gaines*, 190 Ga. App. at 864; *Reid*, 100 Ga. App. at 112. But the instant case involves employment agreements with three individuals, not sale of business agreements. The absurdity of Gunnersen's application of the hypothetical sale to the employment context is demonstrated by her assumption that the Former Employees would be "sold" to the fictional purchaser, an assumption divorced from both the law and reality.[7] (Gunnersen Dep., 154-55.) And Gunnersen presumes that the fictional payment terms would be a single lump sum payment to USI even though such terms are "rare" in the industry. (*Id*. at 124.) Neither *Gaines* nor *Reid* (nor any other case) supports that damages for breach of an employment agreement can be established by imagining a hypothetical sale of part of a business based on hypothetical and admittedly unrealistic sales terms.

## C. Gunnersen's lost profits analysis is unreliable and unhelpful to the jury.

Gunnersen's lost profits analysis is rife with errors and omissions rendering it unreliable, legally irrelevant, and inadmissible under Georgia law.

---

[7] Thus, not only does Gunnersen ignore benign causation, she assumes it away by proffering a damages theory built upon the premise that the Former Employees agreed to be sold to a fictional purchaser.

13

First, Georgia law is clear that lost profits are considered remote or consequential damages **and** cannot be recovered unless they are "independent of any collateral enterprise entered into in contemplation of the contract." O.C.G.A. § 13-6-8. The Eleventh Circuit explained the distinction between direct and consequential damages in *AcryliCon USA, Ltd. Liab. Co. v. Silikal GmbH*, 985 F.3d 1350, 1369 (11th Cir. 2021) ("The key distinction between direct damages and consequential damages is that the former compensate for the value of the promised performance, while the latter compensate for additional losses incurred as a result of the breach.") (citations omitted). Lost profits arising from sales to **third-parties** are consequential damages contemplated by the contract but outside of the contract. *Id*. at 1370; *see also*, *Nyquist v. Randall*, 819 F.2d 1014, 1017 (11th Cir. 1987) ("Lost profits are typically considered to be consequential damages.") Likewise, profits from sales of insurance to **third-party clients** are consequential and not direct damages. As consequential damages, lost profits can only be recovered in compliance with O.C.G.A. § 13-6-8. *AcryliCon USA*, 985 F. 3d at 1370. USI's argument that lost profits from third-parties are not consequential damages is unsupported and wrong. USI cannot satisfy the requirements for recovering consequential damages and indeed its response brief makes no attempt to do so. As such, Gunnersen's analysis on lost profits is legally irrelevant.

Second, there is no evidence—only USI's assertion—that the parties contemplated "lost profits" damages. [Doc. 318-1, p. 20.] The lack of proof is fatal to Gunnersen's analysis under O.C.G.A. § 13-6-8 and renders her testimony legally irrelevant and inadmissible. *See Hixson-Hopkins Autoplex v. Custom Coaches*, 208 Ga. App. 820, 821 (1993) ("The lost profits sought… are not independent of any collateral enterprise entered into in contemplation of the [ ] contract" and thus are precluded as a matter of law).

Third, Gunnersen's lost profits analysis is impermissible because she failed to establish a "track record" of profitability for the accounts at issue, and because she failed to use USI's actual past expenses resulting in an unreliable estimate of USI's future expenses and likely lost profits. [Doc. 318-1, pp. 20-25.]  Georgia law requires a proven track record of profits to establish damages. *AcryliCon USA,* 985 F.3d at 1371 ("AC-USA failed to introduce any evidence … of a 'proven track record of profitability'…. Therefore, AC-USA failed as a matter of law to prove lost profits.").  Gunnersen's failure to estimate profits using actual expenses is also fatal.  *AR Printing, Inc. v. Pierce*, 276 Ga. App. 511, 512 (2005) ("[T]o recover

lost profits one must show the probable gain with great specificity as well as expenses incurred in realizing such profits.").[8]

Respectfully submitted this 13th day of March, 2023.[9]

| WARGO, FRENCH & SINGER LLP | HALL, GILLIGAN, ROBERTS & SHANLEVER LLP |
|---|---|
| /s/ David M. Pernini<br>David M. Pernini<br>Georgia Bar No. 572399<br>Brandon Parrish<br>Georgia Bar No. 388223<br>999 Peachtree Street, NE<br>26th Floor<br>Atlanta, Georgia 30309<br>Telephone: (404) 853-1500<br>Fax: (404) 853-1501<br>jwargo@wfslaw.com<br>dpernini@wfslaw.com<br>bparrish@wfslaw.com<br><br>*Counsel for Southeast Series of Lockton Companies, LLC* | /s/ Warren R. Hall Jr.<br>Warren R. Hall, Jr.<br>Georgia Bar No. 319405<br>Wayne M. Cartwright<br>Georgia Bar No. 257328<br>Kristina K. Griffin<br>Georgia Bar No. 808069<br>3340 Peachtree Road NE, Suite 1900<br>Atlanta, Georgia 30326-1082<br>T: (404) 442-8776<br>F: (404) 537-5555<br>whall@hgrslaw.com<br>wcartwright@hgrslaw.com<br>kgriffin@hgrslaw.com<br><br>*Counsel for Plaintiffs Taylor Anderson, Dean Anderson, and Roger Maldonado* |

---

[8]  *See also Legacy Acad., Inc. v. JLK, Inc.*, 330 Ga. App. 397, 404 (2014) ("To sufficiently quantify lost profits, a finder of fact must be provided with figures establishing the business's projected revenue as well as its projected expenses."); *Authentic Architectural Millworks v. SCM Grp. USA*, 262 Ga. App. 826 (2003) (holding that plaintiff was barred from recovering lost profits because it "submitted no evidence from which its lost net profits could be calculated").

[9]  Pursuant to Local Rule 7.1(D), counsel certifies that the foregoing Certificate of Service has been prepared in Times New Roman font, 14-point type, which is one of the font and point selections approved by the Court in Local Rule 5.1(B).