UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JAMESON TAYLOR ANDERSON, ROBERT DEAN ANDERSON, and ROGER MALDONADO, | CONSOLIDATED CASES PURSUANT TO FED. R. CIV. P. 42 |
| Plaintiffs, | Civil Action File No. |
| v. | 1:19-cv-05582-VMC |
| USI INSURANCE SERVICES LLC, | |
| Defendant. | |
| USI INSURANCE SERVICES LLC, | |
| Plaintiff, | Civil Action File No. |
| v. | 1:20-cv-02490-VMC |
| SOUTHEAST SERIES OF LOCKTON COMPANIES, LLC, | |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF USI INSURANCE SERVICES LLC'S
MOTIONS IN LIMINE**

Pursuant to the Pretrial Order entered in this consolidated action, this Court's Standing Order, and Federal Rules of Evidence 401, 402, 403, 602, and 701, USI Insurance Services LLC ("USI") moves the Court to exclude the categories of evidence discussed below because they are irrelevant or, even if marginally relevant to any remaining claims, because such marginal relevance would be substantially

1

outweighed by the unfair prejudice, confusion of the issues, and waste of time admitting such evidence would cause.

## Procedural History and Factual Background

One day after the Former Employees resigned from USI, they filed a lawsuit against USI in the Superior Court of Fulton County. [2019 Case Doc. 1-1]. USI removed the action to this Court and asserted various counterclaims against the Former Employees. [2019 Case Doc. 1]. In December 2019, this Court granted USI's TRO and enjoined the Former Employees from breaching certain non-compete covenants in their USI employment agreements. [2019 Case Doc. 31]. In April 2020, this Court granted a preliminary injunction in favor of USI enforcing certain non-compete and non-solicitation covenants in the Former Employees' employment agreements with USI. [2019 Case Doc. 114].

In June 2020, USI filed a Complaint against Lockton for three claims of tortious interference with contractual and business relations in connection with their hiring of the Former Employees and other USI former employees. [2020 Case Doc. 1]. Thereafter, Lockton filed counterclaims for tortious interference with contractual and business relations against USI relating to: (1) an email that Matthew Marchisotto, a USI employee, sent to a partner of NTC Group, owner of Tenax Aerospace Holdings, LLC ("Tenax"), a former USI client that transferred its

business to Lockton after the Former Employees joined Lockton, and (2) certain correspondence sent by USI's attorneys to attorneys representing certain of USI's former clients. Lockton also asserted a counterclaim against USI alleging a violation of the Deceptive Practices Act Claim. [2020 Case Doc. 11].

USI moved to dismiss all of Lockton's counterclaims [2020 Case Doc. 19] and on March 10, 2021, the Court granted USI's motion to dismiss Lockton's tortious interference counterclaim that was based upon USI's attorney communications to attorneys for some of USI's former clients and dismissed Lockton's Deceptive Practices Act Claim. [2020 Case Doc. 81]. Thus, Lockton's only remaining substantive counterclaim against USI in the consolidated action is the tortious interference claim relating to the Marchisotto email.

All parties filed motions for summary judgment. The Court rejected the Former Employees' attempt to invalidate their employment agreements with USI, instead finding those contracts valid and enforceable. [*See* 2019 Case, Doc. 286, at 48.] Conversely, the Court granted summary judgment on liability in USI's favor on the following claims asserted by USI: (1) breach of contract claim (notice provisions) against Robert Dean Anderson and Jameson Taylor Anderson; (2) breach of contract claim (non-compete covenant and client non-compete covenant) against Robert Dean Anderson; and (3) breach of loyalty and breach of fiduciary

duty claims against Robert Dean Anderson and Jameson Taylor Anderson. [*Id.* at 50-51.] Thus, it has been established as a matter of law that Robert Dean Anderson and Jameson Taylor Anderson breached their Employment Agreements and their fiduciary duty and duty of loyalty to USI. [*Id.* at n.13.]

Separately, Lockton also asserts a derivative attorneys' fee claim pursuant to O.C.G.A. § 13-6-11. [2020 Case Doc. 11]. In the attorneys' fee invoices that Lockton has produced in this consolidated action in support of that claim, Lockton redacted many entries on such exhibits, but decided to leave many entries unredacted that clearly relate to the dismissed counterclaims. For example, several entries on the invoices specifically refer to the letters sent from USI's counsel to counsel for the former USI clients that was the subject of Lockton's dismissed counterclaim and even refer to those letters with inflammatory language designed to disparage USI's counsel, including calling the sending of such letters "continuing harassment."

## Applicable Rules of Evidence and Standard

Pursuant to the Federal Rules of Evidence, "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402. "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action." *Aycock v. R.J. Reynolds Tobacco Co.*, 769 F.3d 1063, 1068 (11th Cir. 2014) (citing Fed. Rule Evid. 401). "The court may

exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Moreover, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Non-expert "testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

"Trial judges are authorized to rule on motions in limine pursuant to the inherent authority to manage trials. Judges have broad discretion when ruling on such motions." *Pace v. Nat'l Union Fire Ins. Co. of Pittsburgh,* Civil Action File No. 1:12-CV-3096-MHC, 2015 WL 11199154, *1 (N.D. Ga. Feb. 3, 2015) (citations and quotations omitted).

## MOTIONS *IN LIMINE*

1. <u>**MOTION *IN LIMINE* NO. 1**</u>**: The Court should exclude hypothetical lay witness testimony about what witnesses might have done under different circumstances.**

USI anticipates that the Former Employees and Lockton will attempt to present testimony of former customers of USI that transferred some or all of their business to Lockton relating to what the customer believes it would have done under different circumstances. Specifically, USI expects that the Former Employees and Lockton will attempt to elicit testimony from these customer witnesses that they "would have left" or "could have left" even if the Former Employees had not breached their Employment Agreements, including that they "would have left" if: (a) the Andersons had not breached their 60-day notice provisions (for example, that they would have left after the 60-day notice period expired); (b) if Dean Anderson had not breached his six-month non-compete; and/or (c) if Dean Anderson had not breached his two-year client non-compete. The Court already has entered judgment finding that the Andersons breached those provisions of their employment agreements. [*See* 2019 Case, Doc. 286.] Testimony regarding what USI's clients would have done or might have done if such provisions were not breached should be excluded for lack of foundation under Federal Rules of Evidence 602 and 701. Similarly, any testimony about what the witnesses would have done or might have

done if the facts had been different, such as if the Former Employees had not emailed

them to notify them of their immediate resignations or told them in advance of their

plan to change jobs or allowed USI to conduct an orderly transition, should also be

excluded for lack of foundation.

This Court has found the 60-day notice provisions in Dean Anderson's and

Taylor Anderson's contracts enforceable and found that, as a matter of law, the

Andersons violated their contractual notice provisions by failing to provide USI with

any advance notice before abruptly submitting resignation notices and accepting

immediate employment with Lockton. [*See* 2019 Case, Doc. 286, p. 24.] This Court

recognized that the purpose of such provisions is for the exact purpose of allowing

the former employer time to coordinate an orderly transition:

> USI contends it is entitled to summary judgment as to liability for
> claims against Dean Anderson and Taylor Anderson for breaching the
> sixty-day Notice Provisions in their respective employment
> agreements. Under Georgia law, '[a] contract provision requiring a
> specified prior notice of termination is reasonable to allow the employer
> to prepare for an orderly transition and enforceable through special
> damages resulting from a sudden quitting, and in the absence of special
> damages, nominal damages are recoverable.' *Capricorn Sys., Inc. v.
> Pednekar*, 248 Ga. App. 424, 425, 546 S.E.2d 554, 557 (2001) (citing
> *Belcher v. Thomson Newspapers*, 190 Ga. App. 466, 467, 379 S.E.2d
> 204 (1989)).

[*Id.*] By failing to comply with the 60-day notice period, the Former Employees

prevented USI from having sufficient time to develop a transition plan to try to keep

the accounts. [Doc. 264, p. 34, ¶ 95 (citing Meyers Dep. Tr. [Doc. 230], pp. 112-113); *id.*, pp. 59, ¶¶ 198-210 (evidence of disruptive impact of the Andersons' failure to provide the contractually required 60-day notice); Rob Allen and USI 30(b)(6) deposition (Doc. 218-1), p. 199-200 (ECF), pp. 295-296 (deposition pages) (when producers provide the contractually required notice, USI usually keeps all of the business).] Customer testimony about what they would have done in the hypothetical situation — which did not occur — had the Andersons complied with their contractual notice, non-solicit, and non-compete provisions is pure speculation.

Lay testimony about what would or could have happened under other circumstances is speculation and not competent evidence in this case. Under Rule 602, lay witnesses must have personal knowledge of the facts about which they are giving testimony. Fed. R. Evid. 602. Additionally under Rule 701, lay witness testimony must be "rationally based on the witness's perception." Fed. R. Evid. 701(a). "Speculative testimony as to what a witness would have done under different circumstances cannot possibly be based on the witness's perception." *Athridge v. Aetna Cas. & Sur. Co.*, 474 F. Supp. 2d 102, 105 (D.D.C. 2007) (granting motion in limine pursuant to Rules 602 and 701) (citing *Washington v. Dep't of Transp.*, 8 F.3d 296, 299-300 (5th Cir. 1993)); s*ee also Sempra Energy v. Marsh USA, Inc.*, CV 07-05431 SJO (JCx), 2008 WL 11335050, at *13 (C.D. Cal. Oct. 15, 2008) (excluding

statement of insurance officer in charge of reviewing insurance applications about what he "would have done if [plaintiff] had applied for an OPIC insurance policy"); *Brim v. Midland Credit Mgmt., Inc.*, 795 F. Supp. 2d 1255, 1268 (N.D. Ala. 2011) (evidence properly excluded when question was "based solely on speculation of what would have happened if certain events had occurred, even though it was not related to what actually happened in th[e] case").

2. **<u>MOTION *IN LIMINE* NO. 2</u>: The Court should exclude testimony as to the ultimate issue regarding the occurrence or non-occurrence of solicitation in violation of the Non-Solicitation Provisions.**

USI requests that the Court exclude any witness testimony that embraces the ultimate legal question whether the Former Employees solicited, diverted, or induced the termination of any USI Client Account in violation of the Non-Solicitation Provisions of the Former Employees' Agreements. USI anticipates that the Former Employees and Lockton will attempt to present as testimony the conclusions or opinions of the Former Employees that they did not "solicit" USI Client Accounts[1] and/or lay testimony of customers that they were not "solicited" by the Former Employees.

---

[1] Note that contemporaneous documentary evidence exists in which the former employees inform USI's clients that they are not allowed to solicit their business or in which the Former Employees profess that what they are doing is not solicitation. Such documentary evidence, which is relevant to the intent of the Former Employees

The Non-Solicitation Provisions prohibit the Former Employees for a period of time from "directly or indirectly, on behalf of any Competitive Business in any capacity: (i) solicit[ing] or attemp[ing] to solicit services in competition with the Company to any Client Account; (ii) diver[ing] or attempt[ing] to divert services away from the Company with respect to any Client Account; … or (v) induc[ing] the termination, cancellation or non-renewal of any Client Account." (Dean Anderson Agreement ("DA Agreement") § 7.7, Doc. 7-2, p. 38; Roger Maldonado Agreement ("RM Agreement"), § 4.5, Doc. 7-2, p. 53; Taylor Anderson Agreement ("TA Agreement"), § 7.5, Doc. 7-2, p. 72.)

Whether the Former Employees violated the provisions of their non-solicitation agreements is an ultimate issue in this case that should be left to the jury's determination based on the underlying facts presented in evidence. Lay witnesses should not be permitted to testify to this ultimate issue. While lay opinion testimony embracing an ultimate issue is not *per se* objectionable, "seldom will be the case when a lay opinion on an ultimate issue will meet the test of being helpful to the trier of fact [under Fed. R. Evid. 701] since the jury's opinion is as good as the witness' and the witness turns into little more than an 'oath helper.'" *Mitroff v.*

---

and Lockton and other elements of USI's claims, would not be excluded as ultimate issue testimony.

*Xomox Corp.*, 797 F.2d 271, 276 (6th Cir. 1986). Moreover, the Advisory Committee Notes to Rule 704 advocate for exclusion of lay opinions embracing ultimate issues when the testimony is based on "inadequately explored legal criteria." *See also Andrews v. Metro North Commuter R. Co.*, 882 F.2d 705, 709 (2d Cir. 1989). "The problem with testimony containing a legal conclusion is in conveying the witness' unexpressed, and perhaps erroneous, legal standards to the jury." *Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985).

Certain terms contained in the Former Employees' agreements, such as direct and indirect solicitation, have been given extensive treatment by Georgia courts and this Court, resulting in a body of applicable law to define those terms. *See Wells Fargo Ins. Servs. USA v. Gupton*, No. 1:13-CV-0520-SCJ, 2013 U.S. Dist. LEXIS 190019, at *9-10 (N.D. Ga. Mar. 5, 2013) (compiling Georgia law defining direct and indirect solicitation); *Anderson v. USI Advantage Corp.*, No. 19-CV-05582-SCJ, 2020 WL 1933803, at *5 (N.D. Ga. Apr. 21, 2020) (order granting preliminary injunction to USI in the 2019 action). Georgia courts have held on multiple occasions, for instance, that "indirect" solicitation, as is prohibited under the Former Employees' agreements, "occurs when the former employee undertakes 'some affirmative action on his part that could be considered a solicitation in the broadest possible sense.'" *Akron Pest Control v. Radar Exterminating Co.*, 216 Ga. App. 495,

497 (1995); *see also Sysco Food Servs. of Atlanta, Inc. v. Chupp,* 225 Ga. App. 584, 587 (1997).

The jury should take its understanding of those terms from the agreements and from the Court's legal instructions on the issues of direct and indirect solicitation. Lay witnesses will not be familiar with the terms of the underlying agreements or the meaning ascribed to those terms under Georgia law. And until so instructed, lay jurors are particularly at risk for confusing a lay witness' casual references to solicitation, diversion, or inducement as conclusive of the legal question whether any solicitation, diversion, or inducement has or has not occurred. Lay testimony as to whether any solicitation, diversion, or inducement has or has not occurred would be inappropriate in usurping the jury's role, as well as unhelpful, misleading, and likely to cause confusion on the ultimate issue. *See* Fed. R. Evid. 401, 402, 403, 701(b); *see also* Advisory Committee Notes to Fed. R. Evid. 704.

3. **MOTION *IN LIMINE* No. 3: The Court should exclude evidence relating to alleged damages and attorneys' fees invoices in connection with Lockton's dismissed counterclaims.**

The Court should exclude any evidence of amounts that Lockton paid to third-party Tenax Aerospace Holdings, LLC ("Tenax") and any related attorneys' fees invoices other than amounts, if any, that it reimbursed Tenax for attorneys' fees incurred as a result of the Marchisotto email. As explained above, Lockton's only

12

remaining substantive counterclaim against USI is for tortious interference relating to an email sent by USI employee Matthew Marchisotto to a partner of NTC Group, the private equity fund that owned Tenax, a then-current USI client that transferred a portion of its business to Lockton after the Former Employees joined Lockton. Lockton seeks to recover as damages certain amounts it contends that it paid to Tenax pursuant to an indemnification agreement between Lockton and Tenax to indemnify Tenax for certain of its attorneys' fees. However, the records that Lockton proposes to offer at trial to support those damages reflect amounts that Lockton reimbursed to Tenax for attorneys' fees unrelated to the Marchissoto email, including attorneys' fees incurred in connection with the correspondence sent by USI's counsel that was determined on USI's motion to dismiss not to support any viable claim for tortious interference as a matter of law and attorneys' fees for responding to a subpoena for documents served by USI during discovery. (*See* 2019 Case, Doc. 225 at 104, 106-107, 114 & Ex. 64 (confirming that Lockton reimbursed Tenax for all fees related to this litigation, including in connection with Tenax's response to document subpoenas).)

"Generally, evidence concerning previously dismissed claims is not relevant and, consequently, is not admissible." *Anderson v. Brown Indus.,* Civil Action No. 4:11-CV-0225-HLM, 2014 WL 12521732, *4 (N.D. Ga. Mar. 14, 2014); *see also*

*Andazola v. Logan's Roadhouse, Inc*., Civil Action No. CV–10–S–316–NW, 2013 WL 1834308, *8 (N.D. Ala. Apr. 29, 2013) (granting motion *in limine* to exclude evidence that was relevant only to Plaintiff's dismissed claims); *DeBose v. University of S. Fla. Bd. of Trustees*, Case No. 8:15-cv-2787-EAK-AEP, 2018 WL 8919981, *2 (M.D. Fla. Sept. 9, 2018) ("District courts routinely exclude evidence and argument related to previously dismissed claims as irrelevant and prejudicial."). Any amounts that Lockton reimbursed to Tenax in connection with non-actionable correspondence or responding to a discovery response is clearly not relevant to Lockton's sole remaining counterclaim relating to the Marchisotto email or probative of the amount of damages that Lockton claims in this case. Thus, and the Court should exclude such evidence pursuant to Federal Rule of Evidence 402. *See Wiedeman v. Canal Ins*. Co., Civil Action No. 1:15-cv-4182-WSD, 2017 WL 5563246, *2 (N.D. Ga. Nov. 20, 2017) (excluding evidence relating to formerly dismissed claims as "it does not appear that evidence of Plaintiff's former claims is probative of the remaining issues in this case.").

At a minimum, the Court should require Lockton to redact any fee entries and/or narrative descriptions in any records it proposes to offer at trial that disparage USI's counsel or suggest that the correspondence from USI's counsel to attorneys for former USI Clients was in any way as improper.   Such evidence is irrelevant to

any issue to be determined by the jury and will likely cause undue prejudice to USI and jury confusion. Thus, the Court should exclude the evidence under Rule 403 to ensure the evidence introduced at trial relates to the actual claims still pending in this case and does not distract or confuse the jury from the issues to be tried.

Finally, USI also moves the Court to exclude any evidence relating to any agreement between any former USI client (except Tenax) and Lockton relating to Lockton's payment of such former clients' attorneys' fees, including, but not limited to, indemnification agreements between Lockton and any former USI client. Such evidence is also irrelevant to Lockton's remaining counterclaim concerning the Marchisotto email. *See* Fed. Rules Evid. 401, 402.

4. **MOTION *IN LIMINE* NO. 4: The Court should exclude arguments that are inconsistent with this Court's rulings as a matter of law concerning the enforceability of certain restrictive covenants in the Employment Agreements.**

USI anticipates that the Former Employees and Lockton may attempt to introduce evidence and argument that certain of the restrictive covenants in the Employment Agreements are unreasonable, overbroad, do not serve a legitimate business of USI, or otherwise suggest that the covenants are not enforceable. The Former Employees have previously challenged certain covenants based on the nationwide geographic territory provided in the Employment Agreements and the Court ruled as a matter of law that the challenged covenants are enforceable.

The Court expressly held that notice provisions, such as those in the DA and TA Agreements, are reasonable and enforceable under Georgia law. (*See* 2019 Case, Doc. 286 at 24.) Additionally, the Court held that the Non-Compete provision in the DA Agreement is enforceable and that the nationwide geographic territory is reasonable under the circumstances given the undisputed facts that USI conducts business throughout the United States and Dean Anderson performed work on USI's behalf throughout the United States. (*Id.* at 27-30.) The Court further held that the Client Non-Compete in the DA Agreement is enforceable based on the same geographic territory. (*Id.* at 31-34.)

USI moves to exclude evidence and arguments that contradict this Court's prior summary judgment rulings because such evidence is irrelevant, will cause confusion, and would be unduly prejudicial to USI. Testimony that the covenants, including without limitation the stated geographic territory, are unreasonable or unfair to the Former Employees, or that the covenants do not serve a legitimate purpose are irrelevant in light of this Court's prior Order and should be excluded under Federal Rules of Evidence 401, 402, and 403.

5. **MOTION *IN LIMINE* NO. 5**: **The Court should exclude evidence concerning the nature of Dean Anderson's leave of absence.**

USI anticipates that Dean Anderson will offer evidence concerning the nature and severity of his personal health condition that resulted in his taking medical leave

beginning in April 2020, during the six-month term of his Non-Compete. Dean Anderson testified in his deposition that he contracted a "severe case" of COVID-19 in April 2020 and was placed on "garden leave for … around four months" during his recovery. (2019 Case, Doc. 208, at 251.)

The nature or severity of Dean Anderson's personal health condition is not relevant to any issue in dispute and should be excluded under Rule 402. Even if the fact and nature of the leave itself is minimally relevant, moreover, testimony concerning the details of the leave will unfairly prejudice USI. "Unfair prejudice" under Federal Rule of Evidence 403 "means an undue tendency to suggest decision on an improper basis, commonly … an emotional one." Advisory Committee Notes to Fed. R. Evid. 403. Courts in this Circuit have noted that "a litigant's health condition should not be disclosed to a jury when the condition has no bearing or relationship to the case." *Doe v. Mt. Sinai Med. Cntr. of Fla., Inc.*, NO. 05-22490-CIV-GOLD/TURNOFF, 2008 WL 11406059, at *1 (S.D. Fla. Feb. 20, 2008) (collecting cases) (granting motion in limine to exclude evidence of litigant's HIV status as irrelevant to FCRA claim and unfairly prejudicial). The Court should prohibit witnesses from describing Dean Anderson's leave in any detail beyond that it was "medical" or "for personal health reasons."

6. <u>**MOTION *IN LIMINE* NO. 6**</u>**: The Court should exclude evidence and arguments that customers should have the freedom to choose their insurance broker.**

Throughout deposition discovery, the Former Employees and Lockton have attempted to elicit evidence in multiple ways to support an argument in these cases that clients should be free to use any insurance broker they choose and/or that clients are free to move their business as they choose. Evidence and arguments on this point should be excluded as irrelevant and likely to confuse the issues, mislead the jury, waste time, and unfairly prejudice USI. Fed. R. Evid. 401, 402, 403.

Such evidence and arguments are not relevant to any fact or issue to be determined by the jury. What a jury may believe about a customer's freedom to select an insurance broker does not tend to prove or disprove the relevant disputed points—whether the Former Employees violated the Non-Solicitation provisions in the Employment Agreements and/or the amount of damages that USI is entitled to recover for the contractual breaches that have already been established as a matter of law and for those that may be proven at trial. Any evidence and arguments concerning whether a customer should be "free to choose" an insurance broker will unfairly prejudice USI in the enforcement of these valid contract provisions and confuse the jury as to the relevant disputed questions. The Court should exclude such evidence and arguments under Rules 401, 402, and 403.

7. **<u>MOTION *IN LIMINE* NO. 7</u>: The Court should exclude evidence and arguments premised on the "Golden Rule."**

USI requests that the Court prohibit the Former Employees and Lockton from invoking the "Golden Rule" in *voir dire*, opening and closing arguments, or during examinations with witnesses because such arguments improperly encourage jurors to decide the case based on subjective sympathies rather than based on their impartial judgment of the evidence. "The so-called "Golden Rule" argument urges the jurors to place themselves in the position of plaintiff or to allow such recovery as they would wish if in the same position." *Myrick v. Stephanos*, 220 Ga. App. 520, 522 (1996); *see also Ross v. Hagler*, 209 Ga. App. 201, 204 (1993) (trial judge instructed jury that counsel's statement drawing on sympathies of jury was improper and should be disregarded); *Loose v. Offshore Nav., Inc.*, 670 F.2d 493, 496 (5th Cir. 1982) (pleas that jury should "put themselves in the shoes of [a party] and do unto him as they would have done unto them" are improper).

"Golden Rule" requests are improper because they "ask[] the jurors to consider the case, not objectively as fair and impartial jurors, but rather from the biased, subjective standpoint of a litigant." *Myrick*, 220 Ga. App. at 522 (citing 75A Am. Jur. 2d Trial, § 650 (1991)). In federal court, the use of "Golden Rule" arguments "so taints a verdict as to be grounds for a new trial." *Loose*, 670 F.2d at 496 (citing *Ivy v. Security Barge*, 585 F.2d 732, 741 (5th Cir. 1978)).

Accordingly, this Court should prohibit the Former Employees and Lockton from directly or indirectly making "Golden Rule" arguments at trial.

8. **<u>MOTION *IN LIMINE* NO. 8</u>: The Court should exclude evidence and argument regarding the relative size and/or financial condition of USI relative to the Former Employees.**

USI requests that the Court prohibit any evidence, argument, reference, or comment by counsel or the parties concerning the size and/or financial condition of USI relative to the Former Employees. USI specifically moves to exclude the following types of arguments as irrelevant and unfairly prejudicial to USI: any argument or comment that: (1) suggests that the Former Employees are somehow "pawns" that USI is trying to control by this litigation; (2) suggests that the Former Employees are "Davids" to USI's "Goliath"; or (3) otherwise insinuates that the mere fact that USI is a business entity and an employer signifies a disregard for the autonomy or choices of individuals or employees.

Arguments that attempt to portray one party as the larger and more powerful party as against a perceived "underdog" are irrelevant and risk unfair prejudice to USI. The above arguments and other similar arguments are irrelevant to the enforcement of the Employment Agreements that the Former Employees entered into and play on the jury's sympathies that may favor individuals as against big companies. Accordingly, the Court should exclude such evidence under Rules 401

20

and 403. *See, e.g., Trilink Saw Chain, LLC v. Blount, Inc.*, NO. 1:07-CV-0409-CAP, 2009 WL 10668571, at *7 (N.D. Ga. May 7, 2009) (excluding evidence introduced "simply to demonstrate [one party's] wealth and size"); *McHale v. Crown Equip. Corp.*, No. 8:19-cv-707-VMC-SPF, 2021 WL 4527509, at *3 (M.D. Fla. Oct. 1, 2021) (prohibiting parties from making "quintessential 'David versus Goliath' arguments").

9. **MOTION *IN LIMINE* NO. 9: The Court should exclude evidence and argument as to Lockton's claim under O.C.G.A. § 13-6-11.**

USI has moved separately to strike and exclude Lockton's proffered untimely expert as to the reasonableness of the attorneys' fees Lockton seeks to recover at trial under O.C.G.A. § 13-6-11. [2020 Case, Doc. 218.] If the Court agrees and excludes Mr. Robbins from testifying at trial, USI requests that the Court prohibit Lockton from presenting any evidence and argument related to its claim for attorneys' fees and expenses of litigation under O.C.G.A. § 13-6-11 because, without an expert to testify to the question of reasonableness of Lockton's fees, Lockton's fee claim will be deficient as a matter of law.

In order to recover fees and expenses under O.C.G.A. § 13-6-11, Lockton must "prove the actual costs incurred and the reasonableness of those costs." *Davis v. S. Exposition Mgmt. Co.*, 232 Ga. App. 773, 775 (1998). "[Q]uestions of reasonableness and necessity of the expenses of litigation and attorney fees are

matters for expert opinion." *Am. Med. Transport Grp., Inc. v. Glo-An, Inc.*, 235 Ga. App. 464, 466 (1998). Indeed, Georgia courts have held that expert testimony "***must be presented***" on the issue of reasonableness. *U-Haul Co. of W. Ga. v. Ford*, 171 Ga. App. 744, 746 (1984) (emphasis added).

An expert offering an opinion as to the reasonableness of a party's attorneys' fees must be disclosed and furnish an expert report under Federal Rule of Civil Procedure 26(a)(2). *See, e.g.*, *Whitesell Corp. v. Electrolux Home Prods., Inc.*, CV 103-050, 2020 WL 7318271, at *1-2 (S.D. Ga. Dec. 11, 2020). That is true even when a party intends to call its own counsel to testify as to both the amount and reasonableness of attorneys' fees and costs. *Id.* at *2. Thus, when a party fails timely to disclose any expert on the question of reasonableness of attorneys' fees, the party may not present its claim under O.C.G.A. § 13-6-11 to a jury. *See id.* (granting summary judgment to defendant as to plaintiff's attorney fee claim for failure to disclose an expert under the operative case management order); *Trade AM Int'l, Inc. v. Cincinnati Ins. Co.*, No. 1:08-CV-3711-ECS, 2010 WL 11512189, at *2 (N.D. Ga. Oct. 25, 2010) (granting judgment as a matter of law to defendant on plaintiff's attorney fee claim after excluding plaintiff's proffered expert from testifying at trial).

As explained in USI's separate motion to exclude, the time to disclose experts on issues related to attorneys' fees concluded on September 30, 2022. Lockton's

purported disclosure of an expert to support its attorneys' fee claim in February 2023

undisputedly failed to meet that deadline. For all the reasons stated in USI's separate

motion, Lockton's expert should be excluded from giving affirmative opinions to

support Lockton's claim under O.C.G.A. § 13-6-11. Without an expert to testify to

the reasonableness of its fees, moreover, Lockton's claim under O.C.G.A. § 13-6-11

fails as a matter of law and should not be presented to the jury. *Whitesell*, 2020 WL

7318271, at *2; *Trade AM Int'l, Inc.*, 2010 WL 11512189, at *2. Any evidence

presented on the defective claim will be irrelevant to the issues to be determined by

the jury and will cause undue waste of time, confusion, and risk misleading the jury

as to Lockton's entitlement to recover fees. Accordingly, any such evidence should

be excluded under Federal Rules of Evidence 401, 402, and 403.

Respectfully submitted this 12th day of April, 2023.

**PARKER, HUDSON, RAINER &
DOBBS LLP**

/s/ Jared C. Miller
Nancy H. Baughan
Georgia Bar No. 042575
Jared C. Miller
Georgia Bar No. 142219
Julie A. Wood
Georgia Bar No. 023749
Anne Horn Baroody
Georgia Bar No. 475569
303 Peachtree Street, N.E., Suite 3600

Atlanta, Georgia 30308
Telephone:   404-523-5300
Facsimile:   404-522-8409
E-mail: nbaughan@phrd.com
       jmiller@phrd.com
       jwood@phrd.com
       abaroody@phrd.com

*Attorneys for USI Insurance Services LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

In compliance with N.D. Ga. LR 7.1(D) and 5.1(C)-(D), this memorandum of law has been prepared with a top margin of not less than one and one-half (1 ½) inches and a left margin of not less than one (1) inch. This Memorandum has been prepared in Times New Roman 14-point font type and is within the 25-page limit as set forth in the local rule.

This 12th day of April, 2023.

PARKER, HUDSON, RAINER & DOBBS LLP

/s/ Jared C. Miller
Jared C. Miller

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that I have this day served a copy of the within and foregoing **MEMORANDUM IN SUPPORT OF USI INSURANCE SERVICES LLC'S MOTIONS IN LIMINE** upon all parties to this matter by electronically filing a copy of same with the Court's CM/ECF system, which will automatically send an electronic copy to the following counsel of record:

**Hall, Gilligan, Roberts & Shanlever, LLP**

Warren R. Hall, Esq.
Elizabeth M. Newton, Esq.
Wayne M. Cartwright, Esq.
3340 Peachtree Road – Suite 1900
Atlanta, Georgia 30326
whall@hgrslaw.com
enewton@hgrslaw.com
wcartwright@hgrslaw.com

**Wargo & French LLP**

Joseph D. Wargo, Esq.
David M. Pernini, Esq.
Brandon Parrish, Esq.
999 Peachtree Street, NE, 26th Floor
Atlanta, Georgia 30309
jwargo@wargofrench.com
dpernini@wargofrench.com
bparrish@wfslaw.com

**Crowell & Moring LLP**

Christopher J. Banks, Esq.
3 Embarcadero Center
26th Floor
San Francisco, CA 94111
cbanks@crowell.com

Astor H. L. Heaven, III, Esq.
1001 Pennsylvania Ave., N.W.
Floor 10
Washington, DC 20004
aheaven@crowell.com

Sigourney R. Haylock, Esq.
40th Floor
515 South Flower Street
Los Angeles, CA 90071
shaylock@crowell.com

   This 12th day of April, 2023.

       /s/ Jared C. Miller
       Jared C. Miller