UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JAMESON TAYLOR ANDERSON, ROBERT DEAN ANDERSON, and ROGER MALDONADO,<br><br>　Plaintiffs and Counterclaim Defendants,<br><br>　　　　v.<br><br>USI INSURANCE SERVICES LLC,<br><br>　Defendant and Counterclaim Plaintiff. | <u>CONSOLIDATED CASES PURSUANT TO FED. R. CIV. P. 42</u><br><br>Civil Action File No.<br><br>1:19-cv-05582-VMC |
| USI INSURANCE SERVICES LLC,<br><br>　Plaintiff and Counterclaim Defendant,<br><br>　　　　v.<br><br>SOUTHEAST SERIES OF LOCKTON COMPANIES, LLC,<br><br>　Defendant and Counterclaim Plaintiff. | Civil Action File No.<br><br>1:20-cv-02490-VMC |

**<u>TAYLOR ANDERSON, DEAN ANDERSON, AND ROGER
MALDONADO'S MOTIONS IN LIMINE</u>**

Jameson Taylor Anderson ("Taylor Anderson"), Robert Dean Anderson ("Dean Anderson"), and Roger Maldonado ("Maldonado") (collectively, "The Former Employees") respectfully submit the following *Motions in Limine*.

## I.   <u>INTRODUCTION</u>

After the Court's ruling on summary judgment motions, few issues remain for trial on USI's claims against its Former Employees.  Already, the Court has determined that defendants Dean and Taylor Anderson breached various contractual and common law duties to their former employer, USI, and that defendant Roger Maldonado did not, leaving it to the jury to determine whether any of the Anderson's breaches caused USI damage.  The Court did not decide whether the Andersons or Maldonado breached provisions in their contracts not to solicit certain of USI's clients after their resignations, leaving that claim for the jury to decide.

Not only are the legal issues straightforward, but most of the facts are not in serious dispute.  The Former Employees resigned from USI on December 9, 2019. Dean Anderson and Roger Maldonado did not have clients or books of business at USI, but rather were salaried employees who serviced clients with aviation insurance needs within the ten-person USI Aviation Practice Group.  Taylor Anderson, an insurance salesperson ("Producer"), had a number of clients in his

1

book of business that required aviation insurance services at USI, and all of USI's damages models are based on its loss of some of his clients. Notably, though, most of Taylor Anderson's clients stayed with USI after his resignation; a mere 25 out of over 400 clients transitioned their aviation insurance business to Lockton, where the Former Employees now work. The primary question left for trial is ***why*** did the clients leave USI? Did these 25 clients decide to leave USI because of any improper action by the Former Employees, or simply because the Former Employees changed employers?

Yet USI's proposed evidence, which encompasses a staggering 860 exhibits and copious deposition testimony, belies an intent to flood the jury with cumulative evidence on issues already resolved by the Court. [Docs. 317-7 and 317-9.] Thus, the efficient, orderly, and just trial of this case warrants advance rulings by the Court on several evidentiary issues addressed herein.

## II.    LEGAL STANDARD

Motions *in limine* are vital tools to exclude prejudicial, irrelevant, or otherwise inadmissible evidence before trial to avert unnecessary confusion, delays, or the introduction of unfairly prejudicial material. *United States v. Roland*, No. 1:14-CR-291-SCJ, 2016 U.S. Dist. LEXIS 196981, at *1 (N.D. Ga. June 1, 2016); *Benjamin v. Experian Info. Sols., Inc.*, Civil Action No. 1:20-cv-2466-RWS, 2022 U.S. Dist.

LEXIS 97950, at *2 (N.D. Ga. Mar. 25, 2022) (motions *in limine* appropriate to exclude unduly prejudicial evidence). "The district court has wide discretion in determining the relevance of evidence produced at tria"| *Boyd v. Ala. Dep't of Corr.*, 296 F. App'x 907, 908 (11th Cir. 2008).

## III.   MOTIONS *IN LIMINE*

### 1.   The Court Should Exclude Evidence and Argument That the Former Employees Violated Covenants Prohibiting the Recruitment of Co-Workers at USI

USI's Amended Counterclaims against the Former Employees do not allege that the Former Employees' breached any covenants against recruiting their USI co-workers to leave USI's employment.  Because USI has not asserted a claim against the Former Employees for breach of the non-recruitment clauses in their agreements, USI should be precluded from arguing or introducing evidence that any actions of the Former Employees violated the non-recruitment covenants in their agreements on the grounds that such argument or evidence is not relevant under Fed. R. Evid. 402 and is otherwise not admissible under Fed. R. Evid. 403. Given the numerous contractual covenants being litigated at trial, the likelihood of confusion for the jury is high if USI is permitted to introduce evidence or argue about covenants that are unrelated to a pending claim.   The chance for confusion is even greater given the superficial similarity between the concepts of non-

3

solicitation of clients (pending as Count IV) and non-recruitment of coworkers (not a claim at all).

### 2.    The Court Should Exclude Evidence and Argument That USI Is Entitled to Restitution Or Disgorgement of Profits

"[D]isgorgement is not an available remedy for breach of contract under Georgia law." *AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1372 (11th Cir. 2021). Nor did USI pray for or otherwise plead a request for restitution or disgorgement anywhere in its operative complaint. Nevertheless, in January 2023—three years after this litigation commenced and long after the close of discovery—USI indicated for the first time that it seeks restitution in the form of disgorgement against Dean and Taylor Anderson for USI's breach of fiduciary duty and contractual duty of loyalty at Counts V and VI of the Counterclaims. [Doc. 317-1, p. 15.] Because no viable tort claim is pending against Taylor Anderson and disgorgement is not a permissible remedy for breach of contract claims under Georgia law, USI cannot pursue this remedy against Taylor Anderson. And while a single tort claim exists against Dean Anderson, USI should be precluded from pursuing this relief since it was never pleaded nor disclosed during discovery.

First, disgorgement is not an available remedy against Taylor Anderson because only the breach of contract claim at Count V remains against him. While

the prior judge's summary judgment order did not dismiss the fiduciary duty tort claim against Taylor Anderson, the court expressly acknowledged that no evidence supported finding that Taylor Anderson owed a fiduciary duty.  The Court held, "the fact that Taylor Anderson did not have sufficient authority at USI to be a fiduciary does not obviate his contractual duty of loyalty." [Doc. 286, p. 46]. The court seemed to believe that the contractual duty of loyalty claim obviated the need for a ruling on the tort claim.  This presumption was incorrect.  As shown below, the distinction between the tort claim and the contract claim matters.

Disgorgement is not an available remedy for claims premised on breach of contract. O.C.G.A. § 13-6-1 (breach "damages are given as compensation for *the injury sustained* as a result of the breach of a contract."). Thus, a fundamental difference between disgorgement and contractual or actual damages exists, in "that the former is measured by the defendant's gain, while the latter is measured by the plaintiff's loss." *AcryliCon USA, Ltd. Liab. Co. v. Silikal GmbH*, 985 F.3d 1350, 1368 (11th Cir. 2021). Thus, "disgorgement is not an available remedy for breach of contract under Georgia law." *AcryliCon USA*, 985 F.3d at 1372.  *See also Gallagher Ben. Servs. v. Campbell*, Civil Action No. 1:19-cv-00836-SDG, 2021 U.S. Dist. LEXIS 211103, at *5-6 (N.D. Ga. Aug. 13, 2021) (disgorgement not an available remedy for contractual duty of loyalty claim under Georgia law).

Because, as the prior judge recognized no evidence supports USI's fiduciary tort claim against Taylor Anderson, USI cannot seek disgorgement from him at trial.

Second, USI did not plead or give notice of a disgorgement theory until the pretrial order. USI's amended counterclaims against Taylor and Dean Anderson only seek "compensatory" and "punitive" damages for the fiduciary tort claims. [Doc. 134 at ¶ 161.] Indeed, the Amended Counterclaims never mention, much less demand, "restitution" or "disgorgement" of any kind on any claim. [*See id.*, Prayer For Relief]. USI's Rule 26(a)(1)(A)(iii) initial disclosures make no mention of restitution or disgorgement, and clearly focus only on recovering compensatory damages allegedly suffered by USI. [Doc. 52, p. 12.] USI's written discovery responses never asserted a claim for restitution or disgorgement and USI never provided any calculation of damages showing a claimed entitlement to disgorgement or restitution. USI never supplemented its disclosures or discovery responses to reflect a claim for restitution or disgorgement. See Fed. R. Civ. P. 26(e)(1)(A). And at deposition, USI's corporate representative designated to testify about damages testified that he was unaware of any damages sought by USI other than those stated in the Gunnersen expert report. (Doc. 217-1 [Allen Dep.], 159:23 – 164:25.) The Gunnersen report does not refer to restitution,

disgorgement or any other recovery beyond the value of/lost profits from the 25 clients (i.e. compensatory damages).

USI did not mention restitution or disgorgement as a theory of recovery until the proposed pretrial order in January of 2023. [Doc. 317-1, pp. 15-16] USI's last-minute attempt to pursue an entirely new recovery is not "substantially justified" or "harmless" and thus must be excluded from trial.  Fed. R. Civ. P. 37(c)(1).  In *City of Rome v. Hotels.com, L.P.*, 549 F. App'x 896, 905 (11th Cir. 2013), the Eleventh Circuit affirmed the exclusion of an undisclosed category of damages finding that the failure to supplement disclosures was neither "substantially justified" nor "harmless."  *Id*. at 904-05.  The court "reject[ed] this attempt to shirk [the party's] responsibility under Rule 26(a)."  *Id*. at 905.

Here, there is no justification for USI's failure to make disclosures or otherwise reveal its intent to pursue disgorgement.  And the failure to disclose was not harmless because the Andersons have been denied the opportunity to conduct discovery regarding the disgorgement claim of which they were unaware.  *Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d 1171, 1186 (11th Cir. 2013) ("prejudice 'is especially likely to exist if the amendment involves new theories of recovery or would require additional discovery.'") Therefore, USI should not be allowed to

present argument or evidence that it is entitled to disgorgement or other restitution from the Andersons, or otherwise seek any such relief at trial.

### 3. The Court Should Exclude Evidence and Argument That The December 9, 2019 Departure Email and Later Referral of Clients to Manoj Sharma Constituted Solicitation

Each of the Former Employees distributed an email to certain clients and other insurance industry contacts on their final day of employment with USI. The departure emails communicated two facts. First, the email communicated that the Former Employee was resigning from USI on December 9, 2019. Second, the email instructed the recipient to contact a specific person at USI with any questions about their insurance.

There is no dispute as to departure emails' content.  They make no mention of future employment, or whether the Former Employee is even staying in the insurance business. The emails do not reference Lockton. The emails do not request anything from the recipient; not a call, not an email, not a text, not lunch, not dinner, not a meeting. The emails make no request that any client consider transferring business away from USI. Indeed, the email reinforces that the client's insurance is serviced and provided by USI.

Further, when contacted by clients, the Former Employees provided contact information for Lockton representative Manoj Sharma *only after* such requests

from the clients.  (Re AIR USA, Doc. 210-1 [T. Anderson Dep.], 246:5-14; Doc.

221-1 [Kirlin Dep.], 53:4-15); (Re Fulcrum Concepts, Doc. 210-1, 254:3-14); (Re

Tenax, Doc. 210-1, 223:25 – 224:23).  As with the departure emails, this fact does

not evidence solicitation, and USI should be prohibited from arguing otherwise.

Georgia courts define "solicitation" according to its dictionary definition, "to

entreat, importune. . . to endeavor to obtain by asking or pleading . . . to urge…."

*Akron Pest Control v. Radar Exterminating Co.*, 216 Ga. App. 495, 497 (1995);

*see also Lifebrite Labs., LLC v. Cooksey*, No. 1:15-CV-4309-TWT, 2016 U.S.

Dist. LEXIS 181823, at *21 (N.D. Ga. Dec. 9, 2016) ("To solicit is to use some

sort of salesmanship, to encourage and persuade another to do something.")  Under

any definition used, in Georgia, "[t]he law is clear: solicitation requires some type

of affirmative action[.]"  *Vulcan Steel Structures, Inc. v. McCarty*, 329 Ga. App.

220, 223 (2014) (internal quotations omitted).  Such "affirmative action" must

amount to a request for "business from [the] employer's customers . . . for the

purposes of providing products or services that are competitive with those provided

by the employer's business."  O.C.G.A. § 13-8-53 (describing scope of permissible

nonsolicitation covenants). Solicitation cannot be proven by mere evidence that a

former employer's clients moved their business to follow an employee after

resignation. *Am. Control Sys., Inc. v. Boyce*, 303 Ga. App. 664, 671 (2010) (finding

no solicitation where clients move on their own); *Whimsical Expressions, Inc. v. Brown*, 275 Ga. App. 420, 423 (2005) ("although [employee] did work for former clients of [former employer] following his termination of employment, he did not solicit those clients, they came to him").

To establish an affirmative act of solicitation, a plaintiff must establish some form of encouragement or request made for the purpose of procuring a former employer's clients; it demands something more than a mere conversation with such clients. *See Lifebrite Labs.*, 2016 WL 7840217, at *8 ("[M]entioning that she was going to work for another lab cannot count as solicitation . . . . Merely informing someone as to a change in circumstances does not qualify"). Indeed, courts in this district have recognized repeatedly that merely informing clients of a resignation and change in employment—as the Former Employees did here—falls far short of a solicitation under Georgia law. *See Id.*

In *Lifebrite Labs., LLC v. Cooksey*, No. 1:15-CV-4309-TWT, 2016 U.S. Dist. LEXIS 181823 (N.D. Ga. Dec. 9, 2016), Judge Thrash considered virtually identical circumstances in which a departed employee "did no more than to tell the clients that she was no longer going to be servicing their accounts." *Id.* at *20-21. Holding that such a communication is not a solicitation as a matter of law, Judge Thrash held:

> Surely one does not solicit someone by merely having a conversation. Even mentioning that she was going to work for another lab cannot count as solicitation. To solicit is to use some sort of salesmanship, to encourage and persuade another to do something. Merely informing someone as to a change in circumstances does not qualify.

*Id.* at *21.

In *Mercer Glob. Advisors Inc. v. Crowley*, No. 1:21-CV-03932-JPB, 2023 U.S. Dist. LEXIS 43206 (N.D. Ga. Mar. 15, 2023), Judge Boulee considered evidence that a former employee "contacted forty-two clients and told them that he was now employed by [a new firm]" and "sent those clients his personal phone number," leading to seven clients moving their business. *Id.* at *15. On this evidence, Judge Boulee held summary judgment was warranted that no solicitation occurred, and quoted in full the above-referenced holding from Judge Thrash. *Id.*

Judge Grimberg also recognized that "[t]o solicit is to use some sort of salesmanship, to encourage and persuade another to do something." *Gallagher Benefit Servs. v. Campbell*, 528 F. Supp. 3d 1326, 1342 (N.D. Ga. 2021) (denying summary judgment on solicitation because evidence showed defendant attended "pitch" meetings with clients to ask for their business).

Because Georgia law is clear and the Former Employees' actions fail to meet the sonication threshold, USI should be barred from introducing evidence or argument that the departure email was a solicitation. Fed. R. Evid. 402 & 403. Nor

11

may USI attempt to argue around solicitation and focus the Court's, or the jury's, attention on other verbs such as "divert" or "induce." The Georgia Restrictive Covenant Act is clear that covenants may prohibit "solicitating or attempting to solicit," O.C.G.A. § 13-8-53(b), and that covenants beyond the bounds of the statute are "unlawful . . . void and unenforceable," O.C.G.A. § 13-8-53(d).

### 4. The Court Should Exclude Witness Lay Testimony Opining As to Whether Particular Actions Constituted Solicitation

USI should not be permitted to solicit testimony from witnesses regarding what amounts to a solicitation. A lay witness can offer his or her opinion only in limited circumstances. Fed. R. Evid. 701 (permitting a lay witness to testify as to opinions that are "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge..."). A lay witness may not offer an opinion which provides a legal conclusion. *See Ojeda v. Louisville Ladder, Inc.*, 410 F. App'x 213, 215 (11th Cir. 2010) (lay witness' legal conclusions "would be inadmissible at trial as improper lay witness testimony"); *see also*, *Cook v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1112 n.8 (11th Cir. 2005) ("courts must remain vigilant against the admission of legal conclusions").

Where a term is defined by law, a lay witness may not offer opinion as to whether certain actions or events fit the definition, as such opinion constitutes a

legal conclusion.  *See Sauer v. Publisher Servs., Inc.*, 1:14-CV-698-WSD, 2016 WL 4409209, at *4 (N.D. Ga. Aug. 19, 2016) (granting in-part a motion to exclude lay opinion as to whether certain transactions constituted "consignment" as defined by Georgia law because such opinion would be a legal conclusion).

Here, the term solicitation has been conclusively defined by Georgia courts. Thus, any opinion testimony offered by USI as to whether the Former Employees' communications and actions meet the definition of solicitation under Georgia law is an impermissible legal conclusion.  For this reason, this Court should prohibit USI from offering lay opinion as to whether the Former Employees "solicited" clients under Georgia law.

> **5.    The Court Should Exclude Evidence and Argument That Former Employees Were Required to Provide "Transition Assistance"**

USI's witnesses have testified repeatedly that the purpose of the 60-day notice period was to allow USI time to develop and execute a transition plan with a departing producer whereby the departing producer would assist USI in introducing the producer's clients to new producers at USI and transitioning their business to the new producer.  (*See, e.g.,* Doc. 230-1 [Meyers Dep.] 112:21-115:1, 120:17-121:1.)  Some of USI's witnesses have contended that the departing producer is legally or ethically required to assist USI in transitioning their clients to a new producer (Doc. 217-1 [Allen Dep.] at 52:25-54:8;), while others have

reluctantly admitted that USI cannot actually compel the departing producer to provide such transition assistance (Doc. 245-1 [Hollifield Dep.] at 59:8-17).

In truth, USI's contracts with the Former Employees have no transition requirement. Nevertheless, Defendants anticipate that USI will attempt to introduce testimony asserting the Former Employees were required to provide transition assistance during their notice period. As explained in the preceding motion *in limine*, USI's witnesses may not offer legal opinions such as these in their testimony. *See Ojeda*, 410 F. App'x at 215 (legal conclusions inadmissible as "lay witness testimony"). Such testimony also lacks foundation and would be unduly prejudicial, misleading and confusing to the jury. Fed. R. Evid. 403 (undue prejudice), 602 (foundation). For these reasons, all evidence and argument that the Former Employees were required to assist USI in transitioning their clients to other USI producers before resigning should be excluded.

### 6. The Court Should Exclude Evidence and Argument That USI "Owned" the Clients and/or Accounts at Issue

USI's witnesses, and in particular its damages expert, Lorna Gunnersen, have testified that USI "owned" the "accounts" and "clients" at issue. (Doc. 256-2 [Gunnersen Dep.] at 54:17-55:2; *see also* Doc. 245-1 at 120:16-121:4). Consequently, Gunnersen testified it did not matter to her calculations whether a client left USI due to improper conduct by any Defendant or whether the client

decided to transition for some other reason.  (Doc. 256-2 at 54:17-55:2).  Per Gunnersen, because USI "owned" the "accounts or the clients," the client would still be included in her damages analysis if the client left USI and went to Lockton, regardless of the reason.  (*Id.*).  Gunnersen also testified that the purpose of the restrictive covenants at issue in this litigation was to prevent departing producers from "stealing" client accounts, which are "owned" by USI.  (Doc. 256-2 at 77:21-78:20, 82:23-83:23).

There is no legal basis for USI's assertion it "owned" any client accounts or clients, or that a client's decision to move its business from USI to Lockton constituted "theft." *See Am. Control Sys. v. Boyce*, 303 Ga. App. 664 (discussing client's freedom to move "on its own initiative" regardless restrictive covenants); *Burson v. Milton Hall Surgical Assocs., LLC*, 343 Ga. App. 159, 164 (2017) (finding covenants unreasonable and against public policy when it prohibited "the acceptance of business from unsolicited [clients].") Testimony that USI "owned" clients or client accounts is nothing more than improper (and incorrect) legal conclusions, and should be excluded as improper legal opinion, lacking foundation, and unduly prejudicial, misleading and confusing to the jury.  *Ojeda*, 410 F. App'x at 215 (legal conclusions inadmissible as "lay witness testimony"); Fed. R. Evid. 403 (undue prejudice), 602 (foundation).

**7.     The Court Should Exclude Evidence and Argument That
        Dean and Taylor Anderson Remained Employed By USI
        After December 9, 2019**

USI likely will attempt to present evidence and argue to the jury that Dean

Anderson's and Taylor Anderson's resignations from USI on December 9, 2019,

were void for a failure to give 60-days notice. This argument squarely conflicts

Georgia law, which states that the failure to give contractual notice does not render

a resignation void or ineffective. When one party to an employment relationship

desires to end the relationship and gives notice to the other party, the termination is

effective, even if the manner of the termination was not in accordance with the

parties' agreement. *Botterbusch v. Preussag Int'l Steel Corp.*, 271 Ga. App. 190,

194 (2004) ("[A] failure to comply with the notice requirement [of an employment

agreement] constitute[s] a procedural [breach which]… does not void the

termination[.]"); *Burritt v. Media Mktg. Servs.*, 204 Ga. App. 848, 849 (1992)

("This contract was not canceled according to its terms, although it was

undoubtedly canceled.") (citation omitted).  *See also Savannah Coll. of Art &

Design v. Nulph*, 265 Ga. 662 (1995) (explaining failure to follow contractual

procedures termination does not undermine the validity of the termination).

The court's holding in *Botterbusch* is instructive and directly on point.  In

*Botterbush*, an employee had an employment agreement that required the company

to provide him 270 days' notice before terminating him without cause.

*Botterbusch*, 271 Ga. App. at 191. Despite this agreement, the company terminated

him with no notice. *Id.* On appeal, the employee argued that the termination was

ineffective due to the lack of notice. The Georgia Court of Appeals rejected the

argument, holding that "[the company's] failure to comply with the 270-day notice

provision [in the agreement] did not void [his] termination." *Id.* at 194.  The failure

to follow procedural requirements was not fatal to the termination.

The Georgia Supreme Court reached a similar conclusion in *Nulph*. There,

the parties' employment agreement provided for a one-year employment term,

which was terminated early by the employer. *Nulph*, 265 Ga. at 662. Although the

employer failed to comply with the contractual requirements for terminating the

employee, the Court nonetheless deemed the termination effective. *Id.* at 662-63.

Finally, USI's argument is incompatible with Georgia's longstanding

employment-at-will law.  USI admitted the Andersons were employed for

indefinite terms (USI Resp. To P.'s SMFs (Doc. 265), p. 3).  Where there is no

defined length of employment, an employee is at-will and the employment

relationship may be ended ***at any time*** by ***either party***. *See* O.C.G.A. § 34-7-1

("An indefinite hiring may be terminated at will by either party.")  The existence of

a contractual notice clause does not alter either the Andersons' at-will status or the

corresponding right to terminate the agreement and work elsewhere. *See Parker v. Crider Poultry*, 275 Ga. 361, 362 (2002) (Georgia Supreme Court holding that an employment agreement for an indefinite term, that included a notice of termination requirement, was an at-will agreement and that a termination was valid).  *See also Burritt v. Media Mktg. Servs.*, 204 Ga. App. 848, 848 (1992) (while employee was entitled to 7 days notice of termination, she was at-will employee and her relief was to pursue breach of contract claim regarding notice).

Georgia law unequivocally prohibits USI's forced, continued employment theory, and argument and evidence of such must be excluded.

### 8. The Court Should Exclude Evidence and Argument That USI Is Entitled to Relief on Count I for Damages That Accrued Outside The 60-day Notice Period

Judge Jones held that Taylor and Dean Anderson breached the 60-day resignation notice clause in their agreements with USI.  USI seeks lost profit damages relating to the breach of the 60-day notice provision, but the claimed damages it seeks are improper and should be excluded.

First, Georgia law dictates that damages for a breached contractual notice clause are "limited to the actual contractual loss *during the notice period*." *Botterbusch*, 271 Ga. App. at 195 (emphasis added).  Indeed, courts around the country recognize that allowing a plaintiff to recover lost profits beyond the length

18

of the breached notice period would create "an improper windfall for [the]

plaintiff." *See Royal's Reconditioning Corp. v. Royal*, 293 Ill. App. 3d 1019, 1024

(1997) (collecting cases and holding that "[a]warding lost profits for a period

longer than [the contractual notice period] was an improper windfall for plaintiff");

*see also Trimed, Inc. v. Sherwood Medical Co.*, 977 F.2d 885, 893 (4th Cir.1992)

(lost profits would be limited to those incurred during the six months following the

breach of a product-supply contract's termination provision requiring six months'

notice); *Reliable Tire Distributors, Inc. v. Kelly Springfield Tire Co.*, 607 F.Supp.

361, 369 (E.D.Pa.1985) (plaintiff was only entitled to lost profits through the time

that a manufacturing contract would have otherwise terminated pursuant to a 90–

day notice provision.) "Where, as here, a contract contains a provision allowing

termination without cause upon due notice, but a party terminates without allowing

the notice period to expire, damages are limited to those that could potentially

accrue during the period of required notice." *Jackson Harmon Enterprises, LLC v.*

*Ins. Auto Auctions, Inc.*, No. 8:13CV3194, 2015 WL 2061997, at *9 (D. Neb. May

1, 2015) (citing *Children's Broadcasting Corp. v. Walt Disney Co.*, 245 F.3d 1008,

1019 n. 4 (8th Cir. 2001)).  This principle has been recognized as "the essence of

modern damages theory."  *Sierra Wine & Liquor Co. v. Heublein, Inc.*, 626 F.2d

129, 132 (9th Cir. 1980) (where contract was terminable upon reasonable notice,

plaintiff was made whole by an award of six months' lost profits; court rejected plaintiff's argument it was entitled to lost profits for an unspecified term.)

Yet here, USI's damages evidence is ***not*** limited to losses that occurred during the 60-day notice period. To the contrary, USI's expert confirmed at her deposition that she conducted ***no analysis*** of damages incurred during the sixty-day period.  (Gunnersen Dep., [Doc. 256-2], p. 202:16-20).  Such evidence cannot be admitted to support USI's claim for damages on Count I (USI's breach of notice period claim).  *See, e.g., Millennium Aviation Servs. v. Gen. Dynamics Co.*, 335 Fed. App'x 76, 78 (2d Cir. 2009) (applying Delaware law) ("Where a contract permits a party to terminate upon notice, and a party fails to provide the required notice, contract damages are limited to the notice period.")  USI should thus be barred from introducing damages evidence on Count I unless USI can show that it incurred those financial losses within the 60-day window after the Andersons resigned on December 9, 2019.

Second, damages incurred during the 60-day notice period are not recoverable "unless they can be traced solely to the breach of the contract." *Botterbusch*, 271 Ga. App. at 195.  See also O.C.G.A. § 13-6-8 (consequential damages for breach of contract must be traced solely to the breach).  *AcryliCon USA, Ltd. Liab. Co. v. Silikal GmbH*, 985 F.3d 1350, 1368 (11th Cir. 2021) (lost

profits are consequential damages under Georgia law unless profits are part of the breached contract).  Thus, USI must show that the "immediate termination solely caused" a loss in order to recover consequential damages.  *Botterbusch*, 271 Ga. App. at 195.  USI has not even attempted to meet this minimum standard.

Instead, USI argues that because a client moved its business during the 60-day period, damages are automatically recoverable.  This argument has been considered, and rejected, by the Georgia Court of Appeals.  In *Botterbusch*, the employer terminated Botterbusch without providing required notice of 270-days.  During the notice period, Botterbusch was rejected for another job "in large part" because of his immediate termination. *Botterbusch*, 271 Ga. App. at 195.  The fact that the loss occurred during the notice period did not control.  The Court held: "Botterbusch cannot show that his immediate termination solely caused this lost opportunity, precluding recovery of the alleged consequential damages."  *Id.* (damages precluded as a matter of law).  The mere timing of the loss is not sufficient to permit recovery.  Sole causation must also be proved.

USI should be restricted from arguing or introducing evidence for damages related to Count I unless the damages were both (1) incurred within 60-days of the resignations, and (2) the evidence shows that the loss was solely caused by the failure to give notice, which USI cannot do here.

### 9.   USI Must First Prove (1) the Breach Was the Sole Cause of the Damages and (2) the Damages Were Contemplated by the Parties at the Time the Contract Was Made Before Introducing Evidence of Argument of Alleged Lost Profits

USI intends to present evidence at trial that twenty-five clients moved a portion of their insurance business from Lockton to USI after the Former Employees joined Lockton.  USI seeks to recover alleged lost profits based on these clients moving their business to Lockton.  Lost profits from third parties are consequential damages under Georgia law.  *Acrylicon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1370 (11th Cir. 2021).  Consequential damages under Georgia law cannot be recovered unless they can be "traced solely to the breach of the contract."  O.C.G.A. § 13-6-8.  Further, "[d]amages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of its breach." O.C.G.A. § 13-6-2.  USI's damages evidence is wholly devoid of proof showing either of these requirements for breach of contract damages under Georgia law, and thus the deficient evidence should be excluded from trial.

The Georgia Supreme Court previously considered and rejected an employer's claim seeking similar damages attributed to departed employees.   In *Sanford-Brown Co. v. Patent Scaffolding Co.*, 199 Ga. 41 (1945), the plaintiff

employer sought to recover consequential damages from employees "based upon the refusal of certain employees to continue on the job and the inability of the plaintiff to replace them, and the inefficiency of those employees who did remain...." *Id.* at 43.  Damages resulting from the departed employees "are t**oo remote** to be the basis of a recovery. They are not such damages as could be **traced solely to the breach** of the contract, or as could be capable of exact computation; nor are they such as arose naturally and according to the usual course of things from such breach, or **such as the parties contemplated** as a probable result of said breach." *Id.* at 43-44 (emphasis supplied).  *See also, Savannah Coll. of Art & Design v. Nulph*, 265 Ga. 662, 662 (1995) ("procedural flaws in the manner in which the termination was carried out will not warrant damages to compensate for losses that naturally result from a justified termination"); *Botterbusch v. Preussag Int'l Steel Corp.*, 271 Ga. App. 190, 195 (2004) (damages arising during notice period not recoverable for breach of contractual notice period if not caused "solely" by the breach).

USI cannot satisfy the elements to recover lost profits as consequential damages under Georgia law.  USI seeks to introduce damages evidence, but without any proof of sole causation, and without any proof that the parties contemplated lost profits as a probable result of the breach.  The jury should not be

presented with supposed evidence of damages that fail, as a matter of law, to satisfy the requirements of Georgia law.  In short, proof of loss without sole causation or contemplation by the parties is simply not relevant under Fed. R. Evid. 401, and should be excluded under Fed. R. Evid. 402. Or, alternatively, this evidence should be excluded under Fed. R. Evid. 403 because of the danger of confusing the issues and misleading the jury.

> **10.     The Court Should Exclude Evidence and Argument That the Former Employees Were Not Entitled to Compete Immediately with USI Upon Resignation.**

In support of its fiduciary duty and loyalty claims at Counts V and VI, USI may argue that Taylor and Dean Anderson were not entitled to compete with USI after their resignation on December 9, 2019.  As argued above, failure to give notice is a procedural violation, and does not negate the validity of the resignation itself. *Botterbusch v. Preussag Int'l Steel Corp.*, 271 Ga. App. 190, 194 (2004) ("failure to comply with the notice requirement constituted a procedural, rather than substantive, flaw in the termination').  And "[a] procedural breach does not void the termination." Id. at 194.  Thus, it is settled law in Georgia that a failure to give notice does not void a resignation or continue the employment relationship.

Having resigned their employment with USI on December 9, 2019, Taylor and Dean Anderson were by law entitled to compete immediately.  *Hanson Staple*

*Co. v. Eckelberry*, 297 Ga. App. 356, 358-59 (2009) (fiduciary duty allows employee, "upon termination of employment [to] immediately compete"). Because Georgia law is clear on this issue, USI should be restrained from arguing or presenting evidence in support of its theory that the Andersons' activities after resignation were in breach of a fiduciary duty or duty of loyalty owed to USI. Such argument and evidence would be contrary to Georgia law, irrelevant under Fed. R. Evid. 401 and otherwise inadmissible under Fed. R. Evid. 402 and Fed. R. Evid. 403.

### 11.    The Former Employees Join Lockton's Motions *in Limine*

The Former Employees join and support Lockton's Motions *in Limine*. The topics discussed in Lockton's motions are relevant and pertinent to both cases. The Former Employees joining Lockton's motions promotes efficiency and will streamline the pre-trial conference and arguments before the Court.

Respectfully submitted this 12th day of April, 2023.[1]

HALL, GILLIGAN, ROBERTS & SHANLEVER LLP

CROWELL & MORING LLP

*/s/ Warren H. Hall, Jr.*
Warren H. Hall, Jr.

*s/ Christopher J. Banks*
Christopher J. Banks, Admitted *Pro Hac Vice*

---

[1]    Pursuant to Local Rule 7.1(D), counsel certifies that the foregoing Certificate of Service has been prepared in Times New Roman font, 14-point type, which is one of the font and point selections approved by the Court in Local Rule 5.1(B).

Georgia Bar No. 319405
Wayne M. Cartwright
Georgia Bar No. 257328
Kristina K. Griffin
Georgia Bar No. 808069
whall@hgrslaw.com
wcartwright@hgrslaw.com
kgriffin@hgrslaw.com

3340 Peachtree Road NE – Suite 1900
Atlanta, Georgia 30326-1082
T: (404) 442-8776
F: (866) 864-9612

3 Embarcadero Center
26th Floor
San Francisco, CA 94111
cbanks@crowell.com

Astor H. L. Heaven, III Admitted *Pro Hac Vice*
1001 Pennsylvania Ave., N.W.
Floor 10
Washington, DC 20004
aheaven@crowell.com

Sigourney R. Haylock Admitted *Pro Hac Vice*
40th Floor
515 South Flower Street
Los Angeles, CA 90071
shaylock@crowell.com

*Counsel for Taylor Anderson, Dean Anderson, and Roger Maldonado*