# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| JAMESON TAYLOR ANDERSON, ROBERT DEAN ANDERSON, and ROGER MALDONADO, <br><br>     Plaintiffs and Counterclaim     Defendants, <br><br>             v. <br><br> USI INSURANCE SERVICES LLC, <br><br>     Defendant and Counterclaim     Plaintiff. | <u>CONSOLIDATED CASES PURSUANT TO FED. R. CIV. P. 42</u> <br><br> Civil Action File No. <br><br> 1:19-cv-05582-VMC |
| USI INSURANCE SERVICES LLC, <br><br>     Plaintiff and Counterclaim     Defendant, <br><br>             v. <br><br> SOUTHEAST SERIES OF LOCKTON COMPANIES, LLC, <br><br>     Defendant and Counterclaim     Plaintiff. | Civil Action File No. <br><br> 1:20-cv-02490-VMC |

## DEFENDANTS' OPPOSITION TO USI'S MOTIONS *IN LIMINE*

Jameson Taylor Anderson ("Taylor Anderson"), Robert Dean Anderson ("Dean Anderson"), and Roger Maldonado ("Maldonado") (collectively, "The Former Employees") and Southeast Series of Lockton Companies, LLC ("Lockton") respectfully submit the following opposition to USI Insurance Services, LLC's ("USI") Motions *in Limine*.

**1.     The Court Should Deny USI's Motion in Limine No. 1 as An Unjust Effort to Impose Strict Liability on The Former Employees.**

USI's first motion *in limine* asks the Court to preclude "hypothetical lay witness testimony" regarding "what witnesses might have done under different circumstances." Ironically, the only party that seeks to introduce hypothetical testimony from lay witnesses about what might have happened under different circumstances is USI.

Here, however, USI's motion should be denied. USI's claims are not strict liability claims. Instead, USI must prove what would have happened under different circumstances. That is because USI seeks to recover consequential damages in the form of lost profits for the Former Employees' alleged breaches of contract and Lockton's alleged interference with those contracts. The purpose of awarding damages for breach of contract is to "put [the plaintiff] in as good a position ***as if the defendant had fully performed the contract***." *PMS Constr. Co. v. DeKalb County,* 243 Ga. 870, 872 (1979) (emphasis added). Thus, it is USI's burden—not

Defendants'—to prove to the jury what would have happened if the alleged contractual breaches had not occurred. *See Georgia Power etc., Co. v. Fruit Growers Express Co.*, 55 Ga. App. 520, 527 (1937) ("The measure of damages in the case of a breach of contract is the amount which will compensate the injured person for the loss which a fulfillment of the contract would have prevented or the breach of it entailed. In other words, the person injured, is, so far as it is possible to do so by a monetary award, to be placed ***in the position he would have been in had the contract been performed***." (internal citations omitted) (emphasis added)).

Moreover, because USI seeks to recover lost profits as its measure of consequential damages, USI must prove what would have happened in this hypothetical scenario ***with reasonable certainty***. *Bearoff v. Craton*, 350 Ga. App. 826, 835 (2019). As explained by the Georgia Court of Appeals in *Authentic Architectural Millworks, Inc. v. SCM Grp. USA, Inc.*, "to recover lost profits one must show the probable gain with great specificity as well as expenses incurred in realizing such profits." 262 Ga. App. 826, 831 (2003) (citations omitted). Moreover, the party seeking recovery must prove the alleged lost profits are "directly traceable to the acts of the other party." *Id.*

Thus, USI must prove that it would have achieved its alleged lost profits if the alleged breaches here had not occurred. To do that, USI intends to present testimony

from its lay witnesses like Robert Allen, Robert Meyers and James Dunn, speculating, for example, on what would hypothetically have occurred if, for example, Dean and Taylor Anderson had given notice before resigning from USI. This is precisely the kind of speculative testimony that should be excluded from trial, if the logic of USI's motion is accepted.

In contrast, Defendants intend to introduce testimony from client witnesses about their actual, real-world reasons for moving their accounts from USI to Lockton, why they were dissatisfied with USI's services, the strength of their personal relationships with the Former Employees, what their options were once the Former Employees left USI, and whether the clients would have remained at USI after the Former Employees stopped working there.  Such evidence is directly relevant to the hypothetical question that the jury must decide; namely, whether USI has proved with reasonable certainty that the customers it claims it lost due to the Former Employees' alleged contractual breaches would have stayed at USI and generated the profits USI seeks if only the Former Employees had resigned from USI with 60 days' notice or without soliciting any customers' business.[1]  None of these questions are hypothetical, and none of this testimony requires the witnesses

---

[1]     The Former Employees deny they solicited any clients' business to leave USI and go to Lockton, and USI will not be able to prove this element of its claims for breach of nonsolicitation agreements at trial either.

to speculate.  Instead, the client witnesses will be testifying based on their personal knowledge about what actually happened and why they made the decisions they made.

USI's cited case law makes clear that witness testimony based on personal knowledge that helps the jury address relevant hypothetical questions is admissible. *Sempra Energy v. Marsh USA, Inc.*, CV0705431SJOJCX, 2008 WL 11335050, at *13 (C.D. Cal. Oct. 15, 2008) ("[L]ay witnesses can testify regarding the lay witness's particularized knowledge . . . by virtue of his or her position in a particular business" to illuminate the question of whether the plaintiff would have obtained the insurance policy at issue); *see also Athridge v. Aetna Casualty & Surety Co.*, 474 F. Supp. 2d 102, 105 (D.D.C. 2007) (excluding testimony about what a witness would have done if present, but allowing testimony about what the witness generally did because it was relevant in determining whether the unlicensed, underage family should have believed he was authorized to use the witnesses' vehicle). Thus, the client witnesses should be permitted to testify about why they made the decision to move their business, their intentions upon learning of the Former Employees' departure, and the client witnesses' consideration of competing reasons for staying or leaving.  Client witnesses should also be allowed to testify about what they could do in terms of moving their business, and where appropriate, whether a breach of

contract affected their decisions.  This testimony is not speculative, because it is grounded in the clients' personal knowledge, their relevant state of mind, and whether the Defendants' alleged misconduct caused USI's damages.  *Brim v. Midland Credit Mgmt., Inc.*, 795 F. Supp. 2d 12555, 1268 (N.D. Ala. 2011) (finding testimony is appropriate where not "based solely on speculation").

Accordingly, USI's Motion *in Limine* No. 1 should be denied in its application to the client witnesses.  Such witnesses should properly be permitted to testify about what they could do, their actual states of mind, and the reasons why they moved their insurance business from USI.  Allowing such testimony will provide the jury with a clear understanding of the clients' actions and motives, which is essential for the jury to determine causation and, if necessary, the precise amount of damages to be allowed.  In contrast, granting USI's motion *in limine* would effectively impose strict liability on the Former Employees and Lockton—a result not countenanced by Georgia law or due process.

**2.    USI's Motion in Limine No. 2 Should be Denied Because It Is Impractical and Unjust.**

Whether the Former Employees wrongfully solicited the 25 former USI clients who moved their business to Lockton is a central issue for the jury to decide.  USI's request to prohibit any witness testimony that "embraces the ultimate legal question whether the Former Employees solicited, diverted, or induced the

termination of any USI Client Account" is overbroad, impractical, and would deprive the jury of critical lay testimony that would assist the jury in deciding the sole liability issue remaining against the Former Employees.

The agreements at issue do not prohibit the Former Employees from soliciting generally and only state that the Former Employees cannot "solicit services ***in competition with the Company to a Client Account.***"  (Dean Anderson Agmt. § 7.7, Doc. 7-2, p. 38; Roger Maldonado Agmt., § 4.5, *Id.* at p. 53; Taylor Anderson Agmt., § 7.5, *Id.* at p. 72.) (emphasis added).  Thus, the ultimate issue is whether a specific type of solicitation occurred with respect to a specific type of client, as those concepts are defined in the parties' contracts.

Georgia law is clear that only certain types of communications constitute solicitations.  *Akron Pest Control v. Radar Exterminating Co.*, 216 Ga. App. 495, 497 (1995) (according to its dictionary definition, solicitation means "to entreat, importune. . . to endeavor to obtain by asking or pleading . . . to urge . . . ."); *LifeBrite Laboratories, LLC v. Cooksey*, 1:15-CV-4309-TWT, 2016 WL 7840217, at *8 (N.D. Ga. Dec. 9, 2016) ("To solicit is to use some sort of salesmanship, to encourage and persuade another to do something."); *Vulcan Steel Structures, Inc. v. McCarty*, 329 Ga. App. 220, 223 (2014) ("The law is clear: solicitation requires some type of affirmative action[.]").  While fact witnesses should not opine on ultimate legal

questions, the term solicitation was used in the agreements, and so fact witnesses realistically must be able to use it.  Moreover, to ensure a fair trial, the fact witnesses must be permitted to testify about (1) the communications that USI contends constituted a "solicitation" and (2) the context surrounding those communications. Finally, USI has asserted claims for attorneys' fees and punitive damages that require it to establish Defendants acted in "bad faith" or with similar, subjective improper intent.  Thus, Defendants' understandings of what they did, why they did it, and whether they believed their conduct constituted solicitation is directly relevant to their states of mind put at issue by USI.

For example, USI contends that the Former Employees' intent is a proper issue for the jury to consider.  (Doc. 347-1, p. 9, FN. 1.).  The Former Employees must be allowed to offer evidence of their lack of intent, including testimony that the Former Employees believed that their actions did not violate their contractual obligations.  Further, because solicitation involves a third party, the jury should hear directly from the client witnesses whether the communication conveyed to them was a request or plea of some kind.  USI cannot, on the one hand, accuse the Former Employees of improperly soliciting USI clients, but, on the other hand, preclude the Former Employees from discussing the meaning of solicitation or providing context

to the alleged misconduct.  Such a result is both impractical and contrary to Georgia law.

In addition, because only certain types of solicitation are prohibited under the Former Employees' employment agreements, testimony about the abstract concept of solicitation should not be barred.  Solicitation to go see a movie with spouses, or play a match of tennis, or attend a concert would not violate the contract if it were not tied to providing insurance services.  Accordingly, the Former Employees should be permitted to elicit testimony that the alleged misconduct was not **solicitation to provide competing insurance services** under the contracts.

**3.      USI's Motion in Limine No. 3 Should Be Denied Because Tenax's Total Fees Are Proper Evidence of Damages.**

In its third motion *in limine*, USI seeks to prohibit evidence of certain payments for attorneys' fees made by Lockton to its client Tenax Aerospace Holdings, LLC ("Tenax"), unless the fees entries specifically identified USI's Vice President, Matthew Marchisotto's, false statement. As set forth in Lockton's counterclaim, however, Marchisotto's false statement that Tenax could not work with the Former Employees caused Lockton to indemnify Tenax for ***all*** fees incurred in dealing with the litigation between USI and the Former Employees, not merely those that mention Marchisotto's email.  Lockton's additional damages, stemming from USI's ongoing implication of Tenax in the litigation, naturally and probably

8

resulted from this indemnity, traceable to Marchisotto's email.  Thus, rather than being an issue of dismissed claims, as USI argues, Tenax's fees are relevant to, and evidence of, Lockton's damages.  The jury is entitled to hear evidence of all damages suffered by Lockton, and the Court should deny USI's motion.

While USI argues that the attorneys' fees are relevant only to dismissed claims, that argument misconstrues the Court's prior ruling.  Contrary to USI's suggestion, Lockton asserted only a single counterclaim of tortious interference in Count I, (*see* 2020 Case, Doc. 11 ¶¶ 40–48), but the Court analyzed this claim based on the viability of two discrete and independent acts of "wrongful conduct": (1) an admittedly false email sent by Marchisotto on January 16, 2020, to the private equity firm that owns Tenax; and (2) an April 29, 2020 letter sent by USI's counsel to all customers, including Tenax.  (2020 Case, Doc. 81 at 13–21).[2]  When addressing USI's motion to dismiss, the Court found that the April 2020 letters did not, on their own, amount to "wrongful conduct."  (*Id.* at 14–16).  The Court also did not dismiss Count I, as Marchisotto's email did amount to "wrongful conduct."  (*Id.* at 17–21).  But the Court did not address the total scope of recoverable damages, which was not at issue.

---

[2] As background, the "wrongful conduct" standard is discussed at length in Lockton's Consolidated Motions *in Limine*.  (Doc. 230 at 12–15).

9

Lockton is entitled to introduce evidence that, because of Marchisotto's email, Lockton agreed to indemnify Tenax for its continued involvement in this litigation to avoid Tenax deciding to move to another broker to escape legal expenses. Because Lockton was forced to enter this agreement as a result of USI's wrongful conduct, Lockton was damaged by ***all*** fees Tenax incurred in the litigation that were indemnified, regardless of the specific act to which Tenax responded. *See Artrac Corp. v. Austin Kelley Advert., Inc.,* 197 Ga. App. 772, 774–75 (1990) (stating that interference with contractual relations occurs whenever the defendant's conduct "makes the performance more difficult or expensive").

Proximate cause "encompasses *all* of the natural and probable consequences of an action, unless there is a sufficient and independent intervening cause." *See Principle Sols. Grp., LLC v. Ironshore Indem., Inc.*, 944 F.3d 886, 892 (11th Cir. 2019) (finding, under Georgia law of proximate causation, that causal chain was not broken between original fraudulent email and a subsequent series of phone calls and emails) (quotations omitted). Where there is a dispute over whether the harm was proximately caused by the initial act, a jury must decide the issue. *Johnson v. 3M*, 563 F. Supp. 3d 1253, 1327 (N.D. Ga. 2021) ("It is axiomatic that questions regarding proximate cause are undeniably a jury question[.]" (quotations omitted)).

Here, USI's motion appears to argue that intervening events broke the causal chain between Marchisotto's email and the subsequent fees Tenax incurred. However, further actions ***by the same tortfeasor*** are not an independent, intervening cause as a matter of law, and based on Lockton's counterclaim, USI could undoubtedly foresee that Tenax would continue to incur legal fees (at Lockton's expense) after Marchisotto's misrepresentations.[3]  (*See* 2020 Case, Doc. 1 ¶ 39). Thus, all fees incurred by Tenax after being dragged into this litigation by USI are properly presented to the jury as evidence of Lockton's damages.  Moreover, USI has failed to show any prejudice by the introduction of such evidence that substantially outweighs the relevance under Rule 403.   *In re Seroquel Prods. Liability Litig.*, No. 6:06-md-1769-Orl-22DAB, 2009 WL 260989, at *1 (M.D. Fla. Feb. 4, 2009) (stating that a movant bears the burden of showing inadmissibility).

Finally, even if the additional fees were deemed not directly relevant to Lockton's interference claim against USI, it would still be relevant to Lockton's claim to attorneys' fees.  Because a claim for attorneys' fees under Georgia law

---

[3]     *See Retail Prop. Tr. v. McPhaul*, 359 Ga. App. 345, 352 (2021) ("[T]he well-established doctrine of intervening causes states that there can be no proximate cause where there has intervened… an independent act or omission of someone *other than the defendant*[.]" (citations omitted) (emphasis added)); *Blondell v. Courtney Station 300 LLC*, 362 Ga. App. 1, 8 (2021) ("For an independent act or event to eliminate other conduct as a proximate cause, it must be neither foreseeable… nor triggered by the defendant's act[.]").

requires proof of bad faith, stubborn litigiousness, or unnecessary trouble and expense, O.C.G.A. § 13-6-11, USI's actions toward Tenax (and Lockton's indemnification of other clients based on USI's similar conduct) are relevant to these issues, USI's intent, and its general course of dealing, and as such, it must be submitted to a jury. *See* Fed. R. Evid. 401.

## 4. USI's Motion in Limine No. 4 Should be Denied to Preserve Crucial Evidence About Defendants' Understanding of the Restrictive Covenants.

Defendants do not intend to present evidence or argument that the restrictive covenants in this trial are unenforceable. However, because USI (1) seeks its attorneys' fees for alleged bad faith or stubborn litigiousness under O.C.G.A. § 13-6-11; and (2) seeks to recover punitive damages for the tort claims asserted against Dean and Taylor Anderson and Lockton, USI has put Defendants' intentions and states of mind at issue in this trial. To prevail on these claims, USI must prove that Defendants acted in bad faith or worse. Consequently, Defendants' personal understandings of what the contractual provisions meant and whether they were enforceable—***even if their interpretations were wrong***—are admissible and directly relevant to the claims the jury must decide.

Any confusion that such testimony could create about the ultimate enforceability of the contractual provisions can be addressed by the Court's instructions, and, if necessary, through an additional clarifying instruction when

such testimony is offered.  But the testimony about Defendants' actual, good-faith beliefs and intentions must be allowed at trial to permit Defendants a fair opportunity to defend themselves against USI's claims, and USI's motion should therefore be denied.

O.C.G.A. § 13-6-11 requires USI to show that the Former Employees "acted in bad faith, ha[ve] been stubbornly litigious, or ha[ve] caused [USI] unnecessary trouble and expense."  "The 'bad faith' referred to in the statute must have arisen out of the transaction that spawned the lawsuit rather than out of the defendant's conduct in defending the case." *Salsbury Labs., Inc. v. Merieux Labs., Inc.*, 735 F. Supp. 1555, 1580 (M.D. Ga. 1989).  But, "bad faith damages are not recoverable where there exists a bona fide controversy." *Hightower v. GM Corp.*, 175 Ga. App. 112, 115 (1985) (applying prior statute OCGA § 20-1404).  Likewise, evidence of a "disputed claim" defeats a claim of stubborn litigiousness. *Gordon v. Ogden*, 154 Ga. App. 641, 642 (1980) (applying prior statute O.C.G.A § 20-1404).

The state of mind of the relevant Defendants is also relevant and critical to USI's claim for punitive damages. *E. Prop. Dev. Ltd. Liab. Co. v. Gill*, 558 F. App'x 882, 887 (11th Cir. 2014) (stating that, to recover punitive damages on tort claim, defendant must have had the "requisite bad state of mind" pursuant to O.C.G.A § 51-12-5.1.).

The law is clear that USI's claims for attorney fees and punitive damages requires an assessment of the Former Employees' conduct and state of mind prior to the Court's rulings on summary judgment. Indeed, the Court's own pre-summary judgment rulings largely shaped the Former Employees' and Lockton's behavior prior to summary judgment. For example, the Court refused to enforce the full scope of USI's covenants during the injunction phase of the case in late 2019 and early 2020. The Court largely denied USI's TRO motion in its Order dated January 6, 2020. The Court refused to enforce the nationwide geographic non-compete territory against Dean Anderson, and twice explicitly allowed Dean Anderson to work in Charlotte. *See* TRO, Doc. 31, p. 3 ("Dean Anderson is not enjoined from working for Lockton in Charlotte, North Carolina.") and Preliminary Injunction Order, Doc. 114, p. 5 (same).

The same is true with respect to the 60-day notice clause against the Andersons at Count I. The Court considered USI's request to bar the Andersons from working for Lockton, and properly rejected USI's position as unsupported by the governing legal authority. (Doc. 31, p. 2, ¶1.)

The Court expressly declined to enforce USI's covenants as written, and the Former Employees' relied on the Court's orders in determining what they could and could not do. The rulings and Former Employees' reliance on them are thus highly

relevant to their defense against USI's claims for attorneys' fees under O.C.G.A. § 13-6-11.  Lockton also relied on the Court's preliminary rulings when it allowed the Andersons to work for Lockton and permitted Dean Anderson to be employed, but only in Charlotte, North Carolina.  *See Chaney v. Harrison & Lynam, LLC*, 308 Ga. App. 808, 817–18 (2011) (finding party's demonstrated, good faith communications required dismissal of tortious interference for lack of malice).

USI's claims for attorney fees and punitive damages put at issue the Defendants' mindset prior to litigation and in the early stages of the case.  Judge Jones' ruling years later on summary judgment does not change the good faith manner in which the Defendants conducted themselves before litigation commenced and before the summary judgment decision was made.

As such, USI's attempt to bar any evidence or argument perceived as "inconsistent" with the Court's ruling in its March 29, 2022 Order (Doc. 286) is overreaching and would exclude pertinent, essential evidence.  While the Defendants acknowledge that certain issues have been decided by the Court and are not being relitigated at trial, the Court should deny USI's Motion *in Limine* No. 4 because it seeks to preclude evidence essential to the defense of USI's claims.

**5.     USI's Motion in Limine No. 5 Should Be Denied Because It Lacks Nuance and Restricts Fair Presentation of Dean Anderson's Health.**

USI's Motion *in Limine* No. 5 aims to confine evidence of Dean Anderson's medical leave of absence while employed at Lockton to statements characterizing his leave as "medical" or "for personal health reasons" without additional context. The Former Employees have proposed that USI enter into a stipulation that "Dean Anderson was on medical leave from April 7, 2020, until August 10, 2020, and during that time period he performed no work for Lockton.  USI does not assert that Dean Anderson engaged in any wrongdoing or conduct that was a breach of his agreements with USI during that time."  This stipulation, if agreed to, would limit the need to introduce details of Dean Anderson's health or medical condition while he was on leave of absence.

However, if USI refuses to enter the stipulation and contends at trial that Dean Anderson was working for Lockton or breaching his USI agreement between April 7-August 10, 2020, Defendants will need to present evidence of the severity of his medical condition.  In such a scenario, the details of Dean Anderson's health would be directly relevant to the question of whether he was secretly working for Lockton during his leave of absence and what, if any, damages USI suffered.  Consequently, USI's Motion *in Limine* No. 5 should be denied.

**6.      USI's Motion in Limine No. 6 Should Be Denied Because It Is Contrary to Settled Georgia Law and a Material, Disputed Issue.**

Because USI will not produce evidence at trial showing that any customer moved from USI to Lockton due to a solicitation by the Former Employees, USI seeks to exclude evidence and argument showing clients are free to choose with whom they conduct business.  USI cites no case law for this argument, presumably because it directly contradicts Georgia law.  Evidence and argument of a client's right to choose not only accords with well-settled law in Georgia, it is crucial to the issue of whether the Former Employees solicited USI clients or whether clients made independent, lawful decisions to leave USI.  The fact that this argument and testimony undermines USI's purported damages claim is not a basis for granting USI's motion *in limine*.  As such, USI's motion should be denied.

A client's freedom to choose where to conduct business is a cornerstone of Georgia law, not an argument concocted for trial, because a client that moves of its own free will cannot have been actively solicited by a former employee.  *See Gen. Assurance of Am., Inc. v. Overby-Seawell Co.*, 893 F. Supp. 2d 761, 775 (E.D. Va. 2012) (providing an extensive survey of Georgia law and finding no case law "in which a sales pitch made *after* the customer initiated contact and requested the pitch constitutes solicitation under Georgia law" (emphasis added)); *Burson v. Milton Hall Surgical Assocs., LLC*, 343 Ga. App. 159, 164 (2017) (finding covenants

17

unreasonable when it prohibited "the acceptance of business from unsolicited [clients]").  As stated by the Georgia Supreme Court, a "company cannot prevent [former employees] from merely accepting overtures from [former employer's] customers," because that would be an unreasonable restraint on trade.  *Orkin Exterminating Co. v. Walker*, 251 Ga. 536, 538 (1983).

Thus, the mere acceptance of a former client's business is distinctly ***not solicitation***.  *See Am. Control Sys. v. Boyce*, 303 Ga. App. 664, 671 (2010) (finding no solicitation where clients moved "on [their] own initiative"); *see also Whimsical Expressions, Inc. v. Brown*, 275 Ga. App. 420, 423 (2005) ("[A]lthough [employee] did work for former clients of [former employer] following his termination of employment, he did not solicit those clients, they came to him.").  Judge Boulee of this Court recently held that an employee who merely tells clients about his new employment does not solicit those clients, even if the clients transfer their business later to follow the employee.  *Mercer Glob. Advisors Inc. v. Crowley*, No. 1:21-CV-03932-JPB, 2023 WL 2531727, at *6 (N.D. Ga. Mar. 15, 2023) (finding a covenant prohibiting "not only the solicitation of former clients but also acceptance of business from unsolicited former clients" unreasonable and unenforceable).

In sum, USI's motion to exclude references to a client's freedom to choose its insurance broker should be denied because USI's argument is contrary to Georgia

law, the evidence is directly relevant to key issues the jury must decide, and excluding such evidence and argument would unfairly deprive Defendants of an opportunity to defend themselves against USI's claims.

**7.    USI's Motion in Limine No. 7 Should Be Denied Because It Is Moot, Overbroad, and Misstates the Legal Standard.**

The Court should deny this motion *in limine*, as misstates the law of this Circuit, is overbroad, and is not targeted toward any particular evidence or argument. As noted above, the jury must determine liability for each of the claims between USI and Lockton in the 2020 case, which requires the jury to consider whether Lockton and USI's actions were "wrongful" in light of the Former Employees' restrictive covenants. Therefore, to the extent that USI asks for a blanket rule against any argument that implicitly invites jurors to assess what a reasonable person would do under the circumstances, USI's motion should be denied.

Importantly, the "Golden Rule" doctrine is also narrower than USI represents.[4]  Jurors cannot be asked to put themselves in the shoes of individual

---

[4]    Contrary to USI's motion, a Golden Rule argument is not universally prohibited in the Eleventh Circuit, and it may be used in some circumstances where liability is disputed. *Ermini v. Scott*, 937 F.3d 1329, 1340 (11th Cir. 2019) (noting that the Eleventh Circuit has "historically permitted golden-rule-ish statements in the liability context"); *Dunn v. Stewart*, 4:17-CV-0134-HLM, 2019 WL 2256199, at *2 (N.D. Ga. Mar. 14, 2019) (stating that "[g]olden rule arguments . . . are not necessarily improper for the purposes of liability").

parties in a way that would cause undue prejudice, but they ***can*** be asked to use their own common sense or personal judgment.  *See Pac. Emp'rs Ins. Co. v. Orren*, 160 F.2d 1011 (5th Cir. 1947) ("Certainly, jurors may use their common knowledge and experience in weighing the evidence in a case."); *accord United States v. Moreno*, 947 F.2d 7, 8 (1st Cir. 1991).  Counsel are free to ask the jurors to do so, drawing from common, real-life experiences and "mak[ing] effective use of themes, metaphors, and references to popular culture in their arguments to a jury."  *United States v. Davis*, No. 22-1002, 2023 WL 195159, at \*5 (3d Cir. Jan. 17, 2023) (quotations omitted).  For these reasons, the Court should deny USI's motion to the extent it would preclude arguments that ask jurors to use their common sense and judgment from their own experiences.

Moreover, Defendants have no intention of asking jurors to consider the case as if they were in a litigant's shoes rather than as impartial jurors in any prejudicial manner, and there is no reason for the Court to enter an *in limine* order that merely requires the parties to honor well-established rules of trial practice.  Therefore, USI's Motion *in Limine* No. 7 should also be denied as moot.

### 8.  USI's Motion in Limine No. 8 Should Be Denied Because Evidence About USI's Size Is Relevant to Claims Before the Jury.

Defendants acknowledge that invoking "David and Goliath" comparisons is ill-suited for this case.  But USI's Motion goes far beyond seeking to exclude

prejudicial testimony and evidence, and instead, attempts to suppress pivotal evidence at the heart of the issues.  While abstract comparisons of USI's size to the Former Employees may not be relevant, USI's size and resources are material aspects of this case in several respects.

USI's size and resources bear directly on the corporate raiding claim against Lockton, and whether the departure of a mere five employees amounts to "a large percentage of personnel." *Carroll Anesthesia Assocs., P.C. v. Anesthecare*, 234 Ga. App. 646, 648 (1998) (corporate raiding claim requires a showing that the defendant "attract[ed] away all or a large percentage of personnel upon whom the employer must depend to function.").  Additionally, USI's size directly impacts USI's ability to effectively manage, service, and cultivate business after the employee's departure. *Gresham & Assocs. v. Strianese*, 265 Ga. App. 559, 563 (2004) (finding insufficient evidence of raiding when Plaintiff insurance company's executives testified that after the employees' departure it was "totally capable of handling property insurance and were totally capable of servicing and producing business.").

USI's size and breadth are also relevant to the claims against the Former Employees.  For example, USI claims that it suffered harm from Dean Anderson failing to provide 60-days advance notice of his resignation.  Yet USI employs over 10,000 employees according to its website.  USI's contention that it suffered

substantial harm from the prompt departure of a single employee in the Aviation Practice Group and a single Producer outside that group is a question the jury should consider in light of many factors, including USI's size and number of employees.

Finally, USI proudly promoted its size and scope of business when seeking to enforce a nationwide covenant against Dean Anderson.  USI should not be permitted to use its size and scope as a sword in support of its nationwide covenant, and yet be shielded from any other implications regarding its size with respect to other claims. Therefore, the court should deny USI's Motion *in Limine* No. 8.

**9.    USI's Motion in Limine No. 9 Should Be Denied Because the Evidence It Seeks to Preclude Is Properly Presented to the Jury.**

In yet another rehashing of USI's attempt to undermine Lockton's claim to attorneys' fees under O.C.G.A. § 13-6-11, USI argues that the Court should exclude *all evidence* relating to Lockton's fee claim, including testimony from Lockton's counsel and the fees themselves.  In doing so, USI improperly asks the Court to dismiss Lockton's claim based on a deadline from ***September 2022 that USI itself violated***.  *See Gold Cross EMS, Inc. v. Children's Hosp.*, 309 F.R.D. 699, 700 (S.D. Ga. 2015) (denying motion *in limine* because "the typical in limine practice of federal courts does not include the dismissal of claims").  This motion *in limine* is nothing more than pure gamesmanship, and in doing so, USI grossly mischaracterizes Georgia law.

Rather than provide the Court with a ***fourth*** rendition of the facts regarding the parties' fee experts, Lockton notes this dispute emerges from USI's decision to disclose an affirmative expert on attorneys' fees two days before the end of discovery, in clear violation of the local rules, and later insisting that Lockton should have disclosed an expert earlier if it intended to support its own claim. (Doc. 218-1). As set forth, in Lockton's prior brief, USI has suffered no prejudice in the timing of Lockton's identification of an attorneys' fees expert.[5]  (*See* Doc. 225 at 10–11). Indeed, USI deposed Lockton's expert on March 20, 2023, for more than four hours. Thus, the Court should permit USI's fee expert to testify, which would render this motion *in limine* moot.

Further, USI's contention that expert testimony and a Rule 26 report are necessary to support a fee claim under O.C.G.A. § 13-6-11 is simply wrong, as explained in Lockton's prior briefing.  (*See* Doc. 225).  "Georgia law expressly

---

[5]    Given that USI suffered no prejudice and its own late disclosure, it has repeatedly presented inconsistent positions to support its arguments.  This includes arguing that USI's originally belated identification of its fee expert was substantially justified and harmless because of the time left to depose its expert before trial, (Doc. 195), but that the 3-page affirmative opinion of Lockton's fee expert was *not* justified or harmless, despite USI having the same opportunity to depose Lockton's expert, (Doc. 218-1).  Similarly, USI argued that Lockton could not have asked for relief in a reply brief, (Doc. 227 at 2–3) while simultaneously arguing that USI should have the opportunity propound supplemental discovery and retain *another* fee expert one month before trial—in the very same reply brief, (*id.* at 7).

contemplates that an attorney can testify to support a claim for attorneys' fees under O.C.G.A. § 13-6-11, and it is allowed." *Strategic Decisions, LLC v. Martin Luther King Jr. Ctr. for Nonviolent Soc. Change, Inc.*, No. 1:13-cv-2510-WSD, 2015 WL 4727143, at *9 (N.D. Ga. Aug. 10, 2015); *see McSweeney v. Kahn*, 347 F. App'x 437, 442 (11th Cir. 2009) (affirming decision to allow plaintiff's counsel to testify to attorneys' fees amount, even though counsel "was not on the witness list and . . . was not offered as an expert"). The clear consensus in state and federal courts allows Lockton's counsel to testify to both the amount and reasonableness of its fees. *See Tindall v. H & S Homes, LLC*, No. 5:10-CV-044(CAR), 2012 WL 3637745 (M.D. Ga. Aug. 22, 2012) (permitting plaintiff's counsel to testify as an expert at trial, despite failure to include a Rule 26 designation and expert report); *McGinnis v. Am. Home Mortg. Serv. Inc.*, No. 5:11-CV-284(CAR), 2013 WL 12221707 (M.D. Ga. Aug. 9, 2013) ("An attorney's testimony about the reasonableness of fees and litigation costs is not an unusual practice, thereby eliminating any plausibility that this is, as Defendant refers, a 'surprise tactic.'"); *see also 4WD Parts Ctr., Inc. v. Mackendrick*, 260 Ga. App. 340, 345 (2003) (upholding award of fees where plaintiff's attorney offered evidence at trial concerning attorney's fees); *Altamaha Convalescent Ctr., Inc. v. Godwin*, 137 Ga. App. 394, 397 (1976) (noting that "the plaintiff's attorney could himself testify as to reasonable fees").

USI provides no contrary authority. The cases USI cites include a federal case where a party opposing a fee claim received no notice of any witness in support until the week before trial and no evidence of fees (which totaled more than $2 million) until the morning of trial. *See Trade AM Int'l, Inc. v. Cincinnati Ins. Co.*, No. 1:08-CV-3711-ECS, 2010 WL 11512189, at *1 (N.D. Ga. Oct. 25, 2010). Conversely, USI received Mr. Robbins' report in February 2022 and has already deposed him. USI also cites a Georgia case stating that expert opinion "must be presented" to support a ***contingency*** fee award, which is not the case here. *See U-Haul Co. of W. Ga. v. Ford*, 171 Ga. App. 744, 746 (1984).[6] Accordingly, the Court should deny this motion as frivolous along with USI's prior motion to strike the affirmative opinion of Richard Robbins and allow Lockton to present all relevant evidence in support of its fee claim at trial.

Respectfully submitted this 19th day of April, 2023.[7]

---

[6]    To the extent this case might read to imply, incorrectly, that expert opinion is *always* required, more current case law, as cited above, holds to the contrary. *See Brock Built, LLC v. Blake*, 316 Ga. App. 710, 815 (2012) (affirming award of attorneys' fees where counsel testified as to reasonableness of contingency fee but remanding for recalculation based on prevailing claims); *see also* John D. Hadden & Jarome E. Gautreaux, *Ga. Law of Torts – Trial Preparation & Practice* §§ 3:29, 7:11 (2023 ed.) (stating that "an attorney may testify to, or state in his place, the reasonableness of his contingent attorney fees").

[7]    Pursuant to Local Rule 7.1(D), counsel certifies that the foregoing Certificate of Service has been prepared in Times New Roman font, 14-point type.

**HALL, GILLIGAN, ROBERTS & SHANLEVER LLP**

*/s/ Warren H. Hall, Jr.*
Warren H. Hall, Jr.
Georgia Bar No. 319405
Wayne M. Cartwright
Georgia Bar No. 257328
Kristina K. Griffin
Georgia Bar No. 808069
whall@hgrslaw.com
wcartwright@hgrslaw.com
kgriffin@hgrslaw.com

3340 Peachtree Road NE – Suite 1900
Atlanta, Georgia 30326-1082
T: (404) 442-8776
F: (866) 864-9612

*Attorneys for Taylor Anderson, Dean Anderson, and Roger Maldonado*

**CROWELL & MORING LLP**

*s/ Christopher J. Banks*
Christopher J. Banks, Admitted *Pro Hac Vice*
3 Embarcadero Center
26th Floor
San Francisco, CA 94111
cbanks@crowell.com
T: (415) 986-2800
F: (415) 986-2827

Astor H. L. Heaven, III Admitted *Pro Hac Vice*
1001 Pennsylvania Ave., N.W.

**WARGO, FRENCH & SINGER LLP**

*/s/ David M. Pernini*
Joseph D. Wargo
Georgia Bar No. 738764
David M. Pernini
Georgia Bar No. 572399
Brandon Parrish
Georgia Bar No. 388223
999 Peachtree Street, NE
Suite 1120
Atlanta, Georgia 30309
Telephone: (404) 853-1500
Fax: (404) 853-1501
jwargo@wfslaw.com
dpernini@wfslaw.com
bparrish@wfslaw.com

*Attorneys for Southeast Series of Lockton Companies, LLC*

---

which is one of the font and point selections approved by the Court in Local Rule 5.1(B).

Floor 10
Washington, DC 20004
aheaven@crowell.com

Sigourney R. Haylock Admitted *Pro Hac Vice*
40th Floor
515 South Flower Street
Los Angeles, CA 90071
shaylock@crowell.com


*Attorneys for Taylor Anderson, Dean Anderson,*
*and Roger Maldonado*