# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| JAMESON TAYLOR ANDERSON, | ) | |
| ROBERT DEAN ANDERSON, and | ) | |
| ROGER MALDONADO, | ) | <u>CONSOLIDATED CASES</u> |
| | ) | <u>PURSUANT TO FED. R. CIV. P. 42</u> |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 1:19-cv-05582-VMC |
| | ) | |
| USI INSURANCE SERVICES LLC, | ) | |
| | ) | |
| Defendant. | ) | |

---

| | | |
|---|---|---|
| USI INSURANCE SERVICES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SOUTHEAST SERIES OF | ) | Civil Action No.: 1:20-cv-02490-VMC |
| LOCKTON COMPANIES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>DEFENDANTS' OBJECTIONS TO THE COURT'S PROPOSED JURY INSTRUCTIONS AND VERDICT FORM</u>

Defendants hereby submit in Section I, below, their objections and proposed

additions to the Court's proposed jury instructions provided to counsel on Friday,

May 12, 2023.  Defendants further submit at Section II, below, their objections to the proposed verdict form and proposed revised verdict form.

## Section I – Objections to Proposed Jury Instructions.

1.      Page 18 (USI's Proposed Instruction No. 13).

Defendants object to the proposed instruction on the grounds that it is contrary to Georgia law as clearly and explicitly stated in the Georgia Restrictive Covenant Act ("RCA"), O.C.G.A. § 13-8-50 et seq.  Section 13-8-53(b) of the RCA permits only covenants prohibiting "soliciting" customers or prospects.  The statute does not permit covenants against "diverting" or "inducing" clients; nor does the statute permit covenants that prohibit "indirect" solicitation.  *Id*.

The RCA replaced the common law of Georgia and thus the permitted scope of solicitation covenants must be "limited strictly to the meaning of the language employed, and not extended beyond the plain and explicit terms of the statute." *Belt Power, LLC v. Reed*, 354 Ga. App. 289, 292 (2020).  *Gallagher Benefit Servs. v. Campbell*, 528 F. Supp. 3d 1326, 1338 (N.D. Ga. 2021) ("Since the Act is 'in derogation of the common law,' it 'must be limited strictly to the meaning of the language employed, and not extended beyond the plain and explicit terms of the statute.'"); *Lifebrite Labs., LLC v. Cooksey*, 2016 U.S. Dist. LEXIS 181823, *18 & n. 76 (N.D. Ga. 2016) (same).  With a statute such as the RCA, the Court is not

free to construe the law beyond the strict words employed by the legislature. Indeed, the RCA is clear that only solicitation covenants in compliance with § 13-8-53 can be enforced under Georgia law.  O.C.G.A. § 13-8-53(d).  For the Court to instruct the jury on enforcement beyond the scope of non-solicitation covenants under the RCA would constitute reversible error.

The "plain and explicit terms of the statute" permit covenants against solicitation.  As this Court has recognized repeatedly, solicitation means to "ask, plead, or urge something."  (See Court's Proposed Instruction at p. 16 (defining solicitation).  While the Court has suggested that the words "divert" and "induce" are similar to "solicit," there are important differences.  Neither "divert" nor "induce" require a "request" or "ask".  Divert means only to "turn aside" or "alter the course of things."  (Black's Law Dictionary, 5th Ed.)  Induce means to "to bring on or about, to affect, cause, to influence to an act or course of conduct."  (*Id.*) USI acknowledged during trial that the Former Employees were free to leave USI. Yet, clients testified that Taylor Anderson's decision to leave USI "altered the course of things," and for some clients his departure alone "brought about" their decision to leave USI.  Taylor Anderson's entirely lawful act of changing jobs cannot form the basis for USI's claim for breach of the non-solicit, but such conduct could satisfy the plain meaning of the words "divert" or "induce."

The RCA at § 13-8-53(b) does not allow covenants premised on "diverting" or "inducing" clients and the meaning of these two words is critically distinct from the meaning of "solicit."  The reference to such subsections (ii) and (iii) in the Court's proposed charge should be removed because it permits the jury to find a breach and award damages based on entirely lawful conduct.  Likewise, the Court should not offer a separate definition of "indirect" solicitation because the RCA does not extend to such a restriction.  Further, the Court's definition of "indirect" solicitation extends beyond "assisting others" which is the language permitted by section 53(b) of the RCA.

USI's cited authority does not support the proposed charge.  In *Wells Fargo Ins. Servs. USA v. Gupton*, 2013 U.S. Dist. LEXIS 190019, *7 (N.D. Ga. 2013), the court did not construe the covenants under the RCA.  There was "no challenge to the validity of the agreements at issue" and "the Court . . . accept[ed] them as valid." *Id*.  In *Interra Int'l., LLC v. Al Khafaji*, No. 1:16-CV-1523-MHC, 2019 U.S. Dist. LEXIS 239367 (N.D. Ga. Mar. 21, 2019), the court did not substantively address the verbs "induce" and "divert" and the court considered only whether

solicitation occurred (not the other verbs) when finding a jury issue precluding summary judgment.  *Id*. at *42-43.[1]

Only one case addresses the legality under the RCA of non-solicitation covenants containing restrictions based on additional verbs such as divert or induce.  In *Lifebrite Labs., LLC*, Judge Thrash considered a non-solicitation covenant that included additional verbs "induce" and "motivate."  2016 U.S. Dist. LEXIS 181823 at *3-4.  The court held that the non-solicitation covenants "are written overly broad" but that the court would "construe them narrowly."  *Id*. at *14.  The court granted defendant's motion for summary judgment examining only the issue of "solicitation" – ignoring the other inert verbs in the covenant.  "Given the complete lack of evidence to the contrary, Lifebrite's claim that Cooksey solicited its former clients must fail."  *Id*. at *21-22.  Here, the Court should follow the only court to address this question and likewise hold that restrictions on diverting or inducing the termination of client relationships are not actionable under the RCA, and the **only** issue for resolution is the presence or absence of solicitation.

---

[1]      The references to Judge Jones's prior orders in this case are not binding, Fed. R. Civ. P. 54(b), and are not supported by Georgia law. The remainder of USI's legal support predates the RCA and thus is not relevant to the inquiry under the plain language of the RCA.

An appropriate charge on the issue of solicitation should track the RCA, § 13-8-53(b), such as:

> USI alleges that each of Taylor Anderson, Dean Anderson and Roger Maldonado have breached the nonsolicitation provisions in their Employment Agreements with USI.  The Court has interpreted the language in those provisions and determined that the nonsolicitation provisions in the Former Employees' USI Employment Agreements prohibited each of them, for a period of two years after the end of their employment with USI from soliciting, or attempting to solicit, directly or by assisting others, any business from USI's customers with whom the Former Employee had material contact during his or her employment with USI for the purpose of providing competitive services.
>
> The Court's interpretation of these provisions is binding and you may not consider any other contract language contained in the nonsolicitation provisions of the Former Employees' USI employment agreements. You should not consider any other contract language contained in the nonsolicitation provisions of the Former Employees' USI employment agreements.

2.     The Court should instruct the jury that Georgia law permits the acceptance of business.

USI repeatedly introduced evidence suggesting that the Former Employees and Lockton should not have accepted business from clients who desired to move to Lockton.  USI expressly merged the concepts of solicitation and acceptance with the jury.  Counsel proposed to Taylor Anderson regarding when he was contacted by a client: "They contacted you so did you say to them **I'm bound by a non-solicit so you have to talk to USI**?"  (Trial transcript (rough draft), Day 4, p. 109 (emphasis supplied).)  Further, USI urged in the presence of the jury that "accepting business" is "absolutely relevant to the induce" - clearly a reference to the alternative contract language regarding inducing clients in the non-solicitation covenant.  (Trial transcript (rough draft), Day 7, p. 138.)  USI's counsel continued (over Lockton's objection):

> Q:     Lockton had a choice.  It could have said we won't accept the USI customers.  Yes?
>
> A:     In my mind no.
>
> Q:     Well you're aware of the term non-acceptance.  That's a term in the industry, yes?
>
> A:     No.  I have not heard of none acceptance.

Q:     You've never heard that a brokerage can say we don't accept
the customers or producer that we're hiring as a condition of
employment?

(Trial transcript (rough draft), Day 7, p. 139.)[2]

Georgia law is clear that a non-solicitation covenant cannot lawfully restrict

the acceptance of unsolicited business. *H&R Block E. Enters. v. Morris*, 606 F.3d

1285, 1293 (11th Cir. 2010) ("A non-solicitation covenant may not preclude the

employee from accepting unsolicited business from the employer's clients."

(internal quotes omitted)); *Mercer Glob. Advisors Inc. v. Crowley*, No. 1:21-CV-

03932-JPB, 2023 U.S. Dist. LEXIS 43206, at *13 (N.D. Ga. Mar. 15, 2023)

(regarding covenant governed by RCA, "a nonsolicitation provision may not

contain a bar on the acceptance of business from unsolicited clients") (quoting

*Vulcan Steel Structures, Inc. v. McCarty*, 764 S.E.2d 458, 460 (Ga. Ct. App.

2014)).  Georgia law is settled on this issue and USI's evidence and argument that

the Former Employees and Lockton wrongfully accepted business is contrary to

established Georgia law and has confused the jury. As a result, this Court should

---

[2]     Other similar testimony abounds.  When a client asked for a contact at
Lockton, USI's counsel urged: "You didn't send him to USI?" and then reiterated
the leading question "You didn't send him to USI?"  (Trial transcript (rough draft),
Day 4, p. 112).  When another client desired to contact Lockton, USI's counsel
urged: "You didn't say to him you should contact USI first?" (Trial transcript
(rough draft), Day 4, p. 126.)

instruct the jury that Georgia law permits the Former Employees and Lockton to

accept business from unsolicited clients.  USI opened the door on this issue, and

should not benefit from posing a false legal premise to the jury.

Defendants urge the Court to give the following instruction regarding

acceptance:

A non-solicitation covenant may not preclude an employee from

accepting unsolicited business from their former employer's clients.

Here, the Former Employees were permitted to accept unsolicited

business from USI's clients.

*H&R Block E. Enters. v. Morris*, 606 F.3d 1285, 1293 (11th Cir.

2010)


3.    Page 20, USI's Requested Jury Instruction No. 15.

USI's summary of the tortious inference claim against Lockton for "employee

raiding" is vague.  Defendants request that the final bullet point on Page 20 read

as:

- Raiding USI's Aviation Practice Group by inducing all or a large
  percentage of USI personnel, on whom USI depends to function
  as an effective competitor.

This revised summary tracks the language of Georgia case law on the issue of "employee raiding" to support a tortious interference claim. *See Gresham & Assocs., Inc. v. Strianese*, 265 Ga. App. 559, 563 (2004) (affirming summary judgment where, even though a defendant hired away "most of [the plaintiff's] property insurance department, there [was] nothing in the record which could support a conclusion that [the defendant] destroyed or substantially injured [plaintiff's] ability to function as an effective competitor"); *E.D. Lacey Mills, Inc. v. Keith*, 183 Ga. App. 357, 363 (1987) (stating that tortious interference requires the "destruction or substantial injury by means of attracting away all or a large percentage of personnel upon whom [the plaintiff] must depend to function"); *see also Carroll Anesthesia Assocs., P.C. v. AnestheCare, Inc.*, 234 Ga. App 646, 648–49 (1998) (same).

### 4. Page 23 (USI's Requested Jury Instruction No. 17.)

The Court should exclude this instruction as a misstatement of Georgia law. Plaintiff's proposed instruction conflicts with well-established Georgia law on improper or wrongful conduct, is not supported by the cited authority, and conflates two separate elements for tortious interference. Georgia law is unequivocal that mere inducement to break a contract is *not* improper conduct. *See Stefano Arts v. Sui*, 301 Ga. App. 857, 863 (2010) ("Here, at most, Stefano Arts

can only show that Dr. Sui and DMUP may have persuaded Premier to terminate the Stefano Agreement, which alone is insufficient to show tortious interference.") The very law that USI cites reinforces this principle.  *See Kirkland v. Tamplin*, 285 Ga. App. 241, 244 (2007) ("Once again, the element of improper conduct is missing from this tort. '[P]laintiff must show more than the defendant simply persuaded a person to breach a contract.'" (quoting *Sommers Co. v. Moore*, 275 Ga. App. 604, 605–06 (2005)); *Walker v. Select Portfolio Services, Inc.*, No. 1:16-cv-3401-SCJ, 2017 WL 9516599, at \*2 (N.D. Ga. Aug. 10, 2017) (citing *Kirkland*, 285 Ga. App. at 244).  Indeed, Judge Jones cited *Kirkland* for this very point at summary judgment.  *USI Ins. Servs. LLC v. Se. Series of Lockton Cos., LLC*, No. 1:20-CV-2490-SCJ, 2022 WL 1715211, at \*13 (N.D. Ga. Mar. 29, 2022).

Instructing the jury that "inducing" a third party to "breach" can amount to "improper conduct" erroneously merges two separate, necessary elements to prove tortious interference: inducement and an independent wrongful act. *See Disaster Servs., Inc. v. ERC P'ship*, 228 Ga. App. 739, 740 (1997) (listing the distinct elements of tortious interference); *see also Fine v. Comm'n Trends, Inc.*, 305 Ga. App. 298, 309 (2010) (stating that the issue of persuasion may go to the *malice* element and citing separate law for the element of "wrongful means").  This merging of two elements is reflected in the title of the requested charge ("Improper

Conduct *and* Malice").  Moreover, to the extent Plaintiff's requested instruction

attempts to address the "wrongful conduct" element of a tortious interference

claim, it is duplicative of the final paragraphs of Defendants' Request to Charge

No. 25 (pgs. 22, 26).

5.   Page 25 (USI's Requested Jury Instruction No. 18.)

This instruction is inapplicable here and is a misleading statement on the

Georgia statute providing for "privileged communications" that will result in

substantial prejudice.  O.C.G.A. § 51-5-7.  Cases applying this statute in the

tortious interference context state *explicitly* that "the concept of 'good faith' is not

measured by a subjective standard so that a misunderstanding or misinterpretation

of the law excuses no one and provides no legal justification for unauthorized

interference."  *See Valdez v. Power Indus. Consultants*, 215 Ga. App. 444, 447

(1994); *Second Continental, Inc. v. Atlanta E-Z Builders, Inc.*, 237 Ga. App. 304,

305–07 (1999) (discussing *Valdez* and explaining that "[t]he rejection of the

subjective 'good faith' upon which defendants rely, is, as stated in the *Valdez*

decision, based on the principle that ignorance of the law excuses no one").

O.C.G.A. § 51-5-7(6) only covers "fair and honest reports."  *See AirTran*

*Airlines, Inc. v. Plain Dealer Pub. Co.*, 66 F. Supp. 2d 1355, 1360–61 (N.D. Ga.

1999) ("To be protected by the privilege, the facts must not be misstated, distorted

or arranged so as to convey a false or defamatory meaning."); *Horton v. Georgian Co.*, 175 Ga. 261, 165 S.E. 443, 449 (1932) ("[T]his privilege does not extend to reports which are not fair and honest, but which include additional matter in the way of statements or inferences of the publisher.")  There is no dispute over the falsity of the communication that this instruction is directed to (Matthew Marchisotto's e-mail to the owner of client Tenax), and that Marchisotto's e-mail misrepresented the effect of the Court's ruling to convince a client to leave Lockton.  Further, the case that USI cites for this instruction, *Fieldturf USA v. TenCate Thiolon Middle E.*, 945 F. Supp. 2d 1379, 1391–93 (N.D. Ga. 2013), applied this statute to claims of libel and slander, *not* tortious interference, which was considered separately.  The test cited in *Fieldturf* also requires far more proof than stated in USI's proposed instruction.  *See id.* at 1391 ("To earn the defense of privilege, [the defendant] must show 'good faith, an interest to be upheld, a statement properly limited in its scope, a proper occasion, and publication to proper persons.'" (quoting *Fine v. Comm'n Trends, Inc.*, 305 Ga.App. 298, 302 (2010))).  Therefore, this instruction should be excluded or, alternatively, it should be amended to remove any references to "intent" and to add the remaining elements under the "good faith" privilege defense.

6.      <u>Page 26 (Defendants' Request To Charge No. 25 (continued).)</u>

Defendants object to the exclusion from this instruction of the statement that "merely persuading a person to break a contract is not enough to prove tortious interference."  *See Stefano Arts v. Sui*, 301 Ga. App. 857, 863 (2010); *Kirkland v. Tamplin*, 285 Ga. App. 241, 244 (2007) ("Once again, the element of improper conduct is missing from this tort. '[P]laintiff must show more than the defendant simply persuaded a person to breach a contract.'" (quoting *Sommers Co. v. Moore*, 275 Ga. App. 604, 605–06 (2005)); *Walker v. Select Portfolio Services, Inc.*, No. 1:16-cv-3401-SCJ, 2017 WL 9516599, at *2 (N.D. Ga. Aug. 10, 2017).

Moreover, Defendants request that the following language be added to this instruction:

> Interference with a contractual right or relationship need not result in a breach of the contract to be actionable. It is sufficient if the invasion [impedes] performance of the duties under the contract or makes the performance more difficult or expensive.[3]

*Griffin v. Turner*, 350 Ga. App. 694, 698 (2019); *Artrac Corp. v. Austin Kelley Advertising*, 197 Ga.App. 772, 774–75 (1990).  This Court cited this very principle in considering USI's motion to dismiss and applied it at summary judgment.  *USI Ins. Servs. LLC v. Se. Series of Lockton Cos., LLC*, No. 1:20-cv-02490-SCJ, 2021

---

[3]      The cited case law uses the phrase "retards performance," but Defendants propose the Court use alternative language to convey the same principle.

WL 912258, at *6 (N.D. Ga. Mar. 10, 2021) (citing *Artrac*, 197 Ga. App. at 774–

75); *USI Ins. Servs. LLC v. Se. Series of Lockton Cos., LLC*, No. 1:20-cv-02490-

SCJ, 2022 WL 1715211, at *19 (N.D. Ga. Mar. 29, 2022).

    7.    <u>Page 28 (USI's Proposed Instruction No. 10.)</u>

The Court should reject this proposed instruction and instead provide

Defendants' Summary of the Case [Doc. 375-1] to the jury as an instruction.

In their Summary of the Case, Defendants crafted a short, objective, and

non-argumentative summary of the background facts and contentions of the

parties, without inserting any facts or argument that could give implicit favor to

either side. Defendants' proposed factual summary merely identifies the parties

and claims and provides an accurate, succinct, and non-argumentative synopsis of

the Court's holdings at summary judgment. In contrast, USI's proposed Instruction

No. 10 is unnecessarily argumentative and inaccurately states the Court's prior

holdings.

Therefore, Defendants ask that the Court provide the Defendants' Summary

of the Case to the jury again in lieu of USI's proposed instruction No. 10. To the

extent the Court finds USI's instruction is appropriate over Defendants' objections,

the instruction should, at a minimum, be modified as follows:

**USI's Proposed Instruction No. 10**
**Breach of Contract Defined**

The Court has determined that Taylor Anderson ~~breached his contract with USI by~~:

- o ~~Breached his contract with USI by F~~failing to provide 60 days' notice before his resignation;

- o ~~Working for a competitor prior to expiration of the notice period in his employment agreement with USI~~Breached his fiduciary duty and duty of loyalty by ~~W~~working for Lockton prior to February 7, 2020; and

- o Breached his fiduciary duty and duty of loyalty by ~~I~~informing multiple USI Client Accounts of his impending departure and plan to go to work for Lockton.

The Court has determined that Dean Anderson ~~breached his contract with USI by~~:

- o ~~Breached his contract with USI by F~~failing to provide 60 days' notice before his resignation;

- o ~~Competing with USI by acting in his same or similar capacity for Lockton in which he acted for USI and performing~~ Breached his contract with USI by ~~P~~performing the same or similar functions for Lockton ~~as those~~that he performed on behalf of USI up to April 2020;

- o ~~Carrying on a business in competition with USI, directly or indirectly, with respect to~~ <u>Breached his contract with USI by</u> ~~W~~<u>working with</u> USI's Client Accounts <u>within two years after his departure from USI</u>;

- o <u>Breached his fiduciary duty and duty of loyalty by</u> ~~W~~<u>w</u>orking for ~~a competitor prior to expiration of the notice period in his employment agreement with USI~~<u>Lockton prior to February 7, 2020</u>.

8.      Page 30, (USI's Proposed Instruction No. 19).

The full pattern instruction is quoted below.  USI's proposed revision to the pattern instruction is clearly designed to be biased to suggest to the jury that "you can award money for those damages" when the pattern instruction properly utilizes neutral language that neither encourages nor suggests that the jury lean one way or the other in its deliberations.

**Georgia Pattern Instruction 18.010:** "Damages are given as compensation for injury sustained. Damages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from the breach and such as the parties contemplated when the contract was made as the probable result of the breach."

**USI'S REQUESTED JURY INSTRUCTION NO. 19**
Damages – Contract

Damages are given as compensation for an injury sustained. ~~You can award money for those damages that~~Damages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from the breach~~es of contract~~ and such as the parties contemplated when the contract was made as the probable result of the breach~~es~~. [Revised in accordance with Pattern Instruction 18.010.]

9.    Page 31, (Defendants Request to Charge No. 14.)

The proposed charge is true, accurate, and correct.  But the concept of "remote or consequential damages" is undefined in the instructions.  Defendants urge that the jury be instructed that lost profits arising outside of the scope of the contract at issue are considered "remote and consequential" under Georgia law so that the jury applies the correct analytical framework to its determinations on the question of lost profits.

There can be no dispute that the profits USI seeks arise outside of the contracts at issue; indeed, all lost profits sought by USI arise exclusively out of USI's relationships with its former clients.  Georgia law is clear that "consequential damages may include lost profits which might accrue collaterally as

a result of the contract's performance" such as the profits USI claims resulted from its client relationships. *AcryliCon USA, Ltd. Liab. Co. v. Silikal GmbH*, 985 F.3d 1350, 1369 (11th Cir. 2021) (internal quotes omitted). "Lost profits that are not part of the benefit of the bargain may be recovered as consequential damages. However, the profits of a commercial business are dependent on so many hazards and changes, that unless the anticipated profits are capable of ascertainment, and the loss of them traceable directly to the defendant's wrongful act, they are too speculative to afford a basis for the computation of damages." *Id*. at 1370. *See also*, *Triad Drywall, LLC v. Bldg. Materials Wholesale, Inc.*, 300 Ga. App. 745, 746, 686 S.E.2d 364, 365 (2009) ("But remote and consequential damages, such as the claim of lost profits in this case, must be 'traced solely to the breach' and must be capable of 'exact computation.'")

Because lost profits arising under USI's contract with its clients are consequential damages with respect to the contracts with the Former Employees, the jury should be informed as follows:

> The lost profits [and fair market value damages] USI seeks to recover in this case are called remote or consequential damages under Georgia law.

*AcryliCon* USA, *Ltd. Liab. Co. v. Silikal GmbH*, 985 F.3d 1350, 1369-70 (11th Cir. 2021).

10.   <u>Page 33, (USI's Requested Instruction No. 21.)</u>

Defendants object to this proposed charge because no cited or known legal authority supports an award of future compensation paid by a future employer to an employee as a remedy for a fiduciary breach.  The only case cited by USI, *McMillian v. McMillian*, 310 Ga. App. 735 (2011) provides no such authority.  The cited portions of *McMillian* address a motion to compel discovery, not an award of damages.  *Id*. at 738-39.  The court in *McMillian* decided nothing regarding disgorgement damages other than that discovery could be had regarding lost profits.  *Id*. at 139 ("we do not need to decide today whether the disgorgement remedy . . . would be appropriate in this one").

The cases cited in *McMillian* also provide no support for the relief sought by USI.  *Jennette v. Nat. Community Dev. Svcs*., 239 Ga. App. 221 (520 SE2d 231) (1999), involved an agent who diverted a business opportunity to himself.  In *Vinson v. E. W. Buschman Co*., 172 Ga. App. 306 (1984), the defendant set up and ran a competing business within his own employer's facility, while still employed by the employer.  *Id*. at 307-08.  Likewise, *Gaines v. Crompton & Knowles Corp*., 190 Ga. App. 863 (1989), involved a breach of the fiduciary duties that the seller

of a business owed to its buyer in connection with a covenant restricting the right of the seller to compete with the buyer. *Id*. at 864-65. Each of these cases involved an unlawful competing business, not merely employees earning compensation from a new employer. Neither *McMillian* nor the cases cited therein support the relief USI seeks.

If the Court allows an instruction for disgorgement and/or submits the issue of disgorgement to the jury, USI's claim for disgorgement must be limited to the scope of its statement in the Pretrial Order [Doc. 317-1, at p. 15]. *FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1089 (11th Cir. 2016) ("Thus, a pretrial order supersedes the pleadings, thereby eliminating any claims not preserved in the pretrial order.") (internal quotes omitted).

USI stated as follows regarding its claim for disgorgement: "Basis to Recover: The Andersons were paid significant signing bonuses and received monthly draws totaling this amount **during the first 60 days of their employment with Lockton**." *Id*. (emphasis supplied). As recognized by USI's statement of its claim, disgorgement as a possible remedy for breach of fiduciary duty is limited by the scope of the period of breach (the 60-day notice period) and, in any event, the scope of USI's claim can extend no further than its contours in the Pretrial Order [Doc. 384].

Defendants urge that the instruction be appended to include the following language:

> You may not award disgorgement for any compensation received after February 7, 2020.  USI's claim for disgorgement is limited to amounts received from USI during any period of time during which Taylor Anderson or Dean Anderson were in breach of their duties.

11.    Page 35, (USI Requested Instruction No. 14.)

The Defendants object to the erroneous reference in the proposed instruction that Dean Anderson was found to have breached a fiduciary duty or duty of loyalty by "informing multiple USI Client Accounts of [his] impending departure and plan to go to work for Lockton."  The Court made no such finding with respect to Dean Anderson in the summary judgment order.  MSJ Order, [Doc. 286], p. 45 (making such findings with respect to Taylor Anderson only).

12.    Page 38, (USI Requested Instruction No. 26.)

Defendants object that the proposed instruction is limited to only tort claims. As is clear from the cited "Restatement (Second) of Contracts § 352," this charge also should apply to breach of contract claims for lost profits.  Defendants propose

the following revised instruction for the first paragraph (underlined text is
proposed addition):

> ~~In tort actions, recovery may include loss of profits, provided~~ <u>USI seeks a
> recovery of alleged lost profits or fair market value damages as consequential
> damages on its claims against the Defendants.  Lost profits may only be recovered
> if</u> their loss is the proximate result of the defendant's wrong and they can be shown
> with reasonable certainty.  Profits which are remote, or speculative, contingent or
> uncertain are not recoverable.  [No proposed revisions with respect to the
> second/final paragraph of the instruction.]

### 13.   <u>Page 41, (USI Requested Instruction No. 27.)</u>

Defendants object that this instruction incorrectly indicates that an award of
punitive damages can be found even if there is no award of actual or nominal
damages.  The jury can only take up the issue of punitive damages if it has
awarded actual or nominal damages to USI on the tort claims against Taylor and
Dean Anderson.

Additionally, Defendants object to this proposed instruction on the grounds
that it fails to provide instruction on Lockton's tort claim against USI and because
it is redundant of the proposed instruction at page 42.

14.    <u>Page 42 (USI Requested Instruction No. 24.)</u>

Defendants object to the first sentence of the proposed instruction because it erroneously indicates that an award of punitive damages can be made without an underlying award of actual or nominal damages.  "A claim for punitive damages is derivative in nature and will not lie in the absence of a finding of compensatory damages on an underlying claim." *George v. Hercules Real Estate Servs.*, 339 Ga. App. 843, 849 (2016).

Further, the first sentence erroneously conflates a finding in favor of breach of fiduciary duty against the Former Employees with an award of punitive damages against Lockton or USI.  The first sentence of the proposed instruction thus should be revised as follows:

> If you award damages in favor of USI on its claim for breach of
> fiduciary duty against the Former Employees, or if you award
> damages in favor of USI on its claim for tortious interference
> against Lockton, then you can also consider whether or not to
> award punitive damages against the Former Employees or
> Lockton.  Likewise, if you award damages in favor of Lockton
> on its claim for tortious interference against USI, then you can

also consider whether or not to award punitive damages against

USI.  [no objection to the remainder the proposed instruction].


## Section II – Objections to Proposed Verdict Form
## and Suggested Revised Verdict Form

The Court's proposed verdict form wrongly aggregates all damages for all

claims into a single number to be apportioned among the Defendants.  None of the

Defendants is a joint tortfeasor, and thus none of the Defendants are jointly and

severally liable for any claims.  USI asserts different claims against each

Defendant, and it is for the jury to decide whether or not USI is entitled to recover

on any given claim.

The jury must award damages, if at all, for a specific breach of contract or

tort duty.  The Defendants assert and maintain distinct defenses to the various

claims asserted against them.  If damages are awarded only, or partially, as to

claims that are subsequently found to have been without merit, Defendants are

entitled to challenge the award as to that claim.  Aggregating the damages award

for over a dozen distinct claims, each with a different breaching conduct, facts, and

defenses will deprive the Defendants of an effective avenue for appellate or other

available relief.

USI's claim to recover consequential damages in the form of lost profits requires a showing that the lost profits were attributable solely to the breach of contract.  O.C.G.A. 13-6-8.  An aggregate award of damages unconnected to a specific breach effectively eliminates the causation requirement for consequential damages.  The claim for damages related to the 60-day notice clause is different from the claim that Dean Andeson violated his covenants through April 7, 2019, when he went out on medical leave.  Different time periods relate to the different claims, and different findings are required by the jury to support an award on such claims.  The Defendants are entitled to know the basis for the jury's award of damages, if any.  Defendants cannot evaluate causation or other avenues of defense/relief if the Court takes away from the jury the obligation to make determinations on a claim by claim basis that will support an award of damages.

Defendants object to the Court not requiring the jury to identify the specific clients, if any, that they find to have been solicited.  Any finding of solicitation is subject to likely appeal on the grounds, among others, that the evidence was insufficient to support a finding of solicitation.  A blanket finding of solicitation as under the currently proposed verdict form does not allow review of the evidence supporting, or that fails to support, a finding of solicitation.  For example, a finding of solicitation related to a small client generating a small revenue amount would

not support an award of damages unconnected to that small client's revenues or alleged profits.  Without a client by client finding, Defendants will be undermined in their ability to assess and challenge any award against them.

USI's claim for attorney fees and expenses under O.C.G.A. § 13-6-11 requires that USI recover some amount of damages on the claim for which fees and expenses are sought.  Whether USI is eligible to possibly recover fees and expenses on a particular claim cannot be determined unless the jury awards damages, or not, for each specific claim.  Under the current verdict format, the jury could award zero damages on every claim but one; yet the jury could still attempt to award attorney fees with respect to all claims, against all defendants.  With the current aggregated model, it would be impossible to know whether such a decision was just, fair, and valid under Georgia law.

Likewise, USI is not entitled to recover attorney fees or expenses under O.C.G.A. § 13-6-11 for any claim for which a bona fide dispute existed between the parties.  The existence, or lack thereof, of a bona fide dispute can only be determined on a claim by claim basis.  For example, the Court expressly permitted Dean Anderson to work in Charlotte according to the terms of the TRO.  Dean Anderson contends that the Court's ruling on the TRO establishes that a bona fide dispute existed between the parties regarding the scope and enforceability of the

non-compete covenant, and thus USI cannot recover fees related to Count II.  A similar argument is available to Dean Anderson related to Count III related to the client non-compete covenant.  Similarly, there can be no contesting that the Defendants genuinely dispute that they engaged in any conduct that constituted a solicitation under Georgia law.  Indeed, the Court itself found the issue genuinely in dispute, requiring a jury to resolve.  The Former Employees lose their ability to establish the existence of a bona fide controversy regarding their claim if the jury's determination regarding the recovery of fees and expenses is rendered as only a single decision with respect to each of the Former Employees.

For the foregoing reasons and as shown in the Defendants' Revised Proposed Verdict Form, attached hereto as Attachment 1, Defendants object to the Court's proposed form and request that it be amended consistent herewith.

Respectfully submitted this 15th day of May, 2023.

**HALL, GILLIGAN, ROBERTS & SHANLEVER LLP**

/s/ *Warren H. Hall, Jr.*
Warren H. Hall, Jr.
Georgia Bar No. 319405
Wayne M. Cartwright
Georgia Bar No. 257328
Kristina K. Griffin
Georgia Bar No. 808069
whall@hgrslaw.com
wcartwright@hgrslaw.com

**WARGO, FRENCH & SINGER LLP**

/s/ *David M. Pernini*
Joseph D. Wargo
Georgia Bar No. 738764
David M. Pernini
Georgia Bar No. 572399
Brandon Parrish
Georgia Bar No. 388223
999 Peachtree Street, NE
Suite 1120

kgriffin@hgrslaw.com

3340 Peachtree Road NE – Suite 1900
Atlanta, Georgia 30326-1082
T: (404) 442-8776
F: (866) 864-9612

*Attorneys for Taylor Anderson, Dean Anderson, and Roger Maldonado*

**CROWELL & MORING LLP**

*s/ Christopher J. Banks*
Christopher J. Banks, Admitted *Pro Hac Vice*
3 Embarcadero Center
26th Floor
San Francisco, CA 94111
cbanks@crowell.com
T: (415) 986-2800
F: (415) 986-2827

Astor H. L. Heaven, III Admitted *Pro Hac Vice*
1001 Pennsylvania Ave., N.W.
Floor 10
Washington, DC 20004
aheaven@crowell.com

Sigourney R. Haylock Admitted *Pro Hac Vice*
40th Floor
515 South Flower Street
Los Angeles, CA 90071
shaylock@crowell.com

*Attorneys for Taylor Anderson, Dean Anderson, and Roger Maldonado*

Atlanta, Georgia 30309
Telephone: (404) 853-1500
Fax: (404) 853-1501
jwargo@wfslaw.com
dpernini@wfslaw.com
bparrish@wfslaw.com

*Attorneys for Southeast Series of Lockton Companies, LLC*

## **RULE 7.1.D CERTIFICATE**

*/s/ Warren R. Hall, Jr.*
WARREN R. HALL, JR.